UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS, and CITIZENS FOR REHOBOTH BEACH, a political action committee,

Plaintiffs,

v.

CITY OF REHOBOTH BEACH, DELAWARE, and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware,

Defendants.

Case No.

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

The facts supporting plaintiffs' motion are set forth in the Verified Complaint filed contemporaneously herewith and in the affidavits attached hereto as Exhibits 1, 2, 3 and 4. In sum:

- The City of Rehoboth, Delaware ("City") has scheduled a municipal election for August 13, 2005 and the individual plaintiffs are running for Mayor and two City Commissioner seats. (Verified Comp. ¶ 1, 2, 3, 5).

- To gain name recognition, the plaintiffs decided to erect campaign signs. (Verified Comp. ¶ 9, 21).

- Gregory Ferrese, the City Manager, advised representatives of plaintiffs that they could erect political campaign signs on all public property in the City except for areas where there had been recent plantings. (Verified Comp. ¶ 9; Cargnino Aff. ¶ 7).

- Mr. Ferrese further advised plaintiffs' representatives that the City would not remove campaign signs posted in public areas. (Cargnino Aff. ¶ 6).

- Relying on these representations, plaintiffs erected approximately 100 campaign signs in the City. The signs were placed on private and public property. (Verified Comp. ¶ 9).

- Within hours of erecting the signs, City employees removed many of plaintiffs' campaign signs from private and public property. Plaintiffs campaign signs were the only signs removed. Campaign signs for other candidates, including each of the plaintiffs' opponents, as well as many other commercial and community signs were not removed by the City. (Verified Comp. ¶ 9-12; Hill Aff. ¶ 5, Exs. A - R).

- Shortly after their removal, the signs were located in a City owned vehicle. The police officer investigating the removal spoke to Mr. Ferrese and was advised that the campaign signs should not have been removed by the City. (Verified Comp. ¶ 13-14).

- Plaintiffs immediately replaced some of their campaign signs. Within hours of this replacement, the City had again removed plaintiffs' campaign signs from public property. Again, the campaign signs of other candidates and other general commercial signs were not removed from public property. (Verified Comp. ¶ 13-14; Hill Aff. ¶ 5, Exs. A - R).

- When plaintiffs asked the City employee who told him to remove the signs, plaintiffs were advised that Mr. Ferrese had given the instruction. (Verified Comp. ¶ 14).

- The August 13 election is just days away. The City has advised plaintiffs that any campaign signs they erect on public property will be removed. (Verified Comp. ¶ 17).

Defendants rely on a constitutionally invalid City ordinance and their discriminatory enforcement thereof as support for their contention that the City can remove plaintiffs' campaign signs. As set forth below, such reliance is misplaced and a temporary restraining order must issue to stop any further violations of plaintiffs' constitutional rights.

## I. The Applicable Standard

A district court must consider four factors when ruling on a motion for temporary injunctive relief: (1) the likelihood that the applicant will prevail on the merits; (2) the extent of irreparable injury to the applicant as a result of the conduct complained of; (3) the extent of irreparable harm to the defendant if temporary injunctive relief is granted; and (4) the public interest. Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002). Here, each factor weighs in favor of granting the requested relief.

## II. City Ordinance § 74-16 Is Facially Invalid And Has Been Applied In An Unconstitutional Manner

City Ordinance § 74-16 ("Ordinance") provides that "No person shall, keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city." Defendants contend the Ordinance permits them to remove plaintiffs' campaign signs. Defendants are incorrect.

### A. Freedom Of Speech

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I. "[S]igns are a form of expression protected by the Free Speech Clause . . . . " City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994).

Pursuant to the Fourteenth Amendment, city ordinances are subject to the First Amendment's limitation on governmental authority. Lovell v. Griffin, 303 U.S. 444, 450 (1938).

Notwithstanding the foregoing, cities can adopt ordinances regulating the exercise of speech. When a city exercises this authority, the issue becomes whether the ordinance is constitutional. The constitutional analysis of a free speech restriction begins with a determination of whether the ordinance is content-neutral or content-based. Rappa v. New Castle County, 18 F.3d 1043, 1053 (3d Cir. 1994).

**B. The Ordinance Is Content-Based**

An ordinance is content-neutral if its language does not permit one party's views to be preferred at the expense of another's. White House Vigil for the ERA Comm. v. Clark, 746 F.2d 1518, 1527 (D.C. Cir. 1984). Thus, if an ordinance differentiates between speakers for reasons unrelated to why it was adopted, the ordinance is content-based. Whitton v. City of Gladstone, 54 F.3d 1400, 1407 (8th Cir. 1995).

The Ordinance is content based as it differentiates between speakers and permits one party's views to be expressed at the expense of another. Specifically, the Ordinance precludes "private" advertisements, posters or signs on public property or rights-of-way within the City while implicitly permitting public - i.e., governmental - advertisements, posters and signs. Thus, while the City is free to erect whatever sign it may desire on public property and rights-of-way -

e.g., "Rehoboth - Where Good Government Reigns" - private citizens have no such right.[1] Favoring governmental speech over private speech in this manner renders the Ordinance a content-based regulation. City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429 (1993) (ordinance which prohibited distribution of commercial handbills (materials distributed by one type of speaker) but permitted distribution of newspapers (materials distributed by a different type of speaker) was content-based); Metromedia, Inc. v. City of San Diego, 453 U.S. 490, 513-17 (1981) (ordinance which afforded purveyors of commercial speech a greater degree of protection than purveyors of non-commercial speech was a content-based restriction).

### C. The Ordinance Neither Serves A Compelling Interest Nor Is It Narrowly Drawn

When, as in this case, an ordinance is content-based, a city is required to show that the ordinance is necessary to serve a compelling interest and that it is narrowly drawn to achieve that end. Rappa, 18 F.3d at 1053. Content-based restrictions are presumptively invalid and, accordingly, courts apply the strictest scrutiny when determining whether this test has been met. R.A.V. v. City of St. Paul, Minnesota, 505 U.S. 377, 382 (1992) ("Content based restrictions are presumptively invalid"); Ward v. Rock Against Racism, 491 U.S. 781, 798 n. 6 (1989) ("content based restrictions on political speech 'must be subject to the most exacting scrutiny'") (citation

---

[1] The City has placed its own signs and advertisements, some of which are simply commercial in nature, throughout the City. (Hill Aff. Ex. G (City sign located in middle of Rehoboth Avenue advertising City Convention Center and upcoming event at the center). The City clearly does not believe the Ordinance limits its ability to erect signs and advertisements.

omitted); Burson v. Freeman, 504 U.S. 191, 211 (1992) ("it is the rare case . . . in which a law survives strict scrutiny").

### 1. The Ordinance Does Not Serve A Compelling Purpose

The Ordinance precludes private speech while at the same time permitting governmental speech, a standard which contravenes the First Amendment's fundamental objective of ensuring that government does not enact laws which preclude private citizens from speaking out against the government. There is no interest, let alone a compelling interest, which justifies such a scheme.

The City likely will contend that it has an interest in managing traffic and maintaining its aesthetic quality and that the Ordinance was adopted to meet these objectives. Interests of this nature do not meet the compelling interest standard. Whitton, 54 F.3d at 1408 ("a municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling"). Moreover, if the City was truly interested in such objectives, then it should have adopted an ordinance which precludes all signs - both private and public - from City property and rights-of-way and would not have chosen to place its own signs in such areas. Lawson v. City of Kankakee, 81 F. Supp.2d 930, 934 (C.D.Ill. 2000) ("If the City were so worried that signs on terraces looked bad, it would not have chosen to place a sign there itself"). The City has neither adopted an all encompassing ordinance nor acted in a manner which demonstrates it has an interest in promoting these ideals. (Hill Aff. ¶ 5, Exs. A - R). Rather, the City has determined what it considers to be acceptable or appropriate signage and then now seeks to exclude the rest. The City has no interest which justifies this content-based approach.

### 2. The Ordinance Is Not Narrowly Tailored

If, as the City is likely to contend, it adopted the Ordinance out of concerns regarding traffic and aesthetics, the Ordinance is in no manner narrowly tailored. Instead of addressing the concern with a fine stroke - e.g., limiting the size or number of signs, requiring that they be made from certain materials, designs or colors, requiring the removal of signs if they fall into disrepair, etc. - the Ordinance paints with a broad brush - prohibiting any private citizen from erecting any sign at all. Such an approach renders the Ordinance unconstitutional.[2]

### D. The Ordinance Has Been Enforced In A Discriminatory Fashion

Assuming, arguendo, that the Ordinance is not a facially unconstitutional content-based restriction on speech, defendants still must be enjoined because the Ordinance has been applied in a discriminatory fashion.

The City removed plaintiffs' campaign signs from private and public property located within the City. The City removed these signs notwithstanding the fact Mr. Ferrese advised

---

2 Defendants most likely will contend that Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984) where the Supreme Court held that an ordinance prohibiting the posting of signs on public property was not unconstitutional controls this case. Defendants are incorrect. The ordinance in Vincent precluded anyone from erecting signs on certain public property whereas the Ordinance only restricts the activities of "private" parties. This distinction is meaningful as it renders the Ordinance content-based, whereas the ordinance in Vincent was content neutral. 466 U.S. at 804 ("The text of the ordinance is neutral . . . ."). Moreover, unlike in Vincent where the ordinance at issue was applied in an even handed manner, id., the City has selectively enforced the Ordinance just against plaintiffs.

plaintiffs' representatives that they could erect signs on virtually any City property and that such signs would not be removed. (Verified Comp. ¶ 9; Cargnino Aff. ¶ 6, 7). The removal of plaintiffs' campaign signs is even more surprising given that historically the City has not enforced the Ordinance. As set forth in the affidavit of Joseph Hill, the City did not remove his campaign signs in 2002 even though he erected such signs on public property and, except for one occasion, the City has never removed any of the thousands of realty signs Mr. Hill has erected on public property over the past forty years. (Hill Aff. ¶ 3, 4).

While the foregoing facts render the City's recent, selective enforcement of the Ordinance unconstitutional, the record demonstrates the City has engaged in even worse selective enforcement of the Ordinance. Specifically, while plaintiffs' campaign signs were removed from public property, other signs which violate the Ordinance were left standing. Examples include: (i) the campaign signs of incumbent Mayor Cooper, plaintiff Sokolove's opponent in the upcoming election; (ii) campaign signs of other candidates supported by the current City administration; (iii) commercial signs advertising, among other things, real property for sale, work performed by contractors and the City's own convention center; (iv) promotional signs for various community organizations; and (v) signs identifying the names of various neighborhoods within the City. (Hill Aff. ¶ 5, Exs. A - R). All of these signs violate the Ordinance yet none were removed by the City. (Hill Aff. ¶ 5, 6, Exs. A - R). Selective enforcement of this nature is not constitutional. Lawson, 81 F. Supp. 2d at 935-36 (city engaged in unconstitutional selective enforcement of ordinance when it removed plaintiff's sign from public property but left standing signs of realtors and churches located in same area).

## III. Plaintiffs Are Suffering Irreparable Harm

Plaintiffs have lost their First Amendment right to disseminate their campaign signs. This loss constitutes irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"). Plaintiffs' irreparable harm is only heightened by the fact the August 13 election is just days away and, thus, the City's conduct has prevented the plaintiffs from carrying out their campaign strategies.

## IV. Defendants Will Suffer No Irreparable Harm If Injunctive Relief Is Granted

Plaintiffs temporary restraining order seeks to preclude defendants from removing plaintiffs' campaign signs from private and public property within the City. Precluding defendants from engaging in such activity will not impose any harm, let alone any irreparable harm, on defendants.

## V. The Public Interest Weighs In Favor Of An Injunction

The electorate has an interest in being fully informed and knowledgeable about candidates for office. See Eu v. San Francisco County Democratic Central Committee, 489 U.S. 214, 228 (1989) ("State has a legitimate interest in fostering an informed electorate"). Unless the defendants are enjoined, the electorate may not have an opportunity to know the individual plaintiffs are running for office, let alone what their positions are on the pertinent issues.

The public also has an interest is seeing that constitutional violations are remedied. Doe v. Miller, 216 F.R.D. 462, 471 (S.D. Iowa 2003) ("it is always in the public interest to prevent a violation of a party's constitutional rights") (citations omitted). Plaintiffs have been denied their

right to engage in free speech and unless defendants are enjoined, plaintiffs' circumstances will not change.

**Conclusion**

Plaintiffs have a reasonable likelihood of success on their claim the Ordinance is unconstitutional on its face and as applied to plaintiffs. Plaintiffs are suffering and will continue to suffer irreparable harm if a temporary restraining order is not issued. Defendants will suffer no irreparable harm is a restraining order does issue. The public interest weighs in favor of an injunction.

For the foregoing reasons, plaintiffs respectfully request that the Court enter an Order in the form attached hereto as Exhibit 5 temporarily restraining defendants from removing plaintiffs' campaign signs from private property, public property or public rights-of-way located within the City.

Shawn P. Tucker, Esq. (#3326)
Todd C. Schiltz. Esq. (#3253)
Wolf Block Schorr and Solis-Cohen LLP
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312
Attorneys for Plaintiffs

July 21, 2005