**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROBERT SOKOLOVE, DAVID MCCARTHY, )
WILLIAM SHIELDS, and CITIZENS FOR )
REHOBOTH BEACH, a political action committee,)
)
      Plaintiffs, )
)
      v. )      Case No. 05-514(KAJ)
)
CITY OF REHOBOTH BEACH, DELAWARE, )
and GREGORY FERRESE, individually and as )
Manager of the City of Rehoboth Beach, Delaware, )
)
      Defendants. )

**DEFENDANTS' MEMORANDUM IN OPPOSITION TO
PLAINTIFFS' MOTION FOR TEMPORARY RESTRAING ORDER**

**I.**    **The Applicable Standard**

    Preliminary injunctive relief is "an extraordinary and drastic remedy, one that

should not be granted unless the movant, by a clear showing, carries the burden of

persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997).  In considering a motion

for preliminary injunctive relief the court must look at four factors: (1) the likelihood of

success on the merits; (2) the extent of irreparable injury from the conduct complained of;

(3) the extent of irreparable harm to the defendants if a preliminary injunctive order

issues; and (4) the public interest.  *Clean Ocean Action v. York*, 57 F.3d 328, 331 (3d Cir.

1995).  In any event, a court may not grant injunctive relief unless the plaintiff is able to

demonstrate the likelihood of success on the merits.  *Adams v. Freedom Forge*

*Corporation*, 204 F.3d 475, 484 (3d Cir. 2000).

## II.    City of Rehoboth Ordinance § 74-16 is Facially Valid and Has Been Applied in a Constitutional Manner

The plaintiffs' have not met their burden of demonstrating a likelihood of success because they have erroneously applied a heightened standard of scrutiny to City of Rehoboth Ordinance § 74-16 ("Ordinance §74-16") normally reserved for content-based legislation. *Perry Education Assoc'n. v. Perry Local Educators' Assoc'n*, 460 U.S. 37, 45 ("For the state to enforce a content-based exclusion it must show that its regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end."). But because Ordinance § 74-16 is content-neutral, and merely restricts the quantity of speech by regulating the time, place or manner of the speech, a very different test applies. *See, e.g., Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Members of City Council v. Taxpayers for Vincent*, 466 U.S. 789, 804-05 (1984). Regardless of whether signs prohibited under Ordinance § 74-16 are political in nature, "[e]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions [1] 'are justified without reference to the content of the regulated speech, [2] that they are narrowly tailored to serve a significant governmental interest, and [3] that they leave open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791 (1989) (citation omitted); *see American Future Systems, Inc. v. Pennsylvania State University*, 688 F.2d 907, 915 (3d Cir. 1982) (citing *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647-48 (1981) ("It is undisputed that even speech entitled to the highest First Amendment protection may be subject to reasonable time, place, and manner regulations").

2

A.    *Ordinance § 74-16 Does Not Regulate the Content of Speech*

Ordinance § 74-16 is a facially content-neutral statute because it regulates "without reference to the content of the regulated speech." *See Frumer v. Cheltenham Township*, 709 F.2d 874, 876 (3d Cir. 1983). Ordinance § 74-16 provides that:

> "No person shall keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city."

"The principle inquiry in determining content neutrality, in speech cases generally and in time, place, or manner cases in particular, is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791 (citation omitted). Thus, if the governmental regulation is "justified without reference to the content of the regulated speech," that regulation will be deemed content neutral, even if it incidentally impacts some forms of speech. *McCormack v. Township of Clinton*, 872 F. Supp. 1320, 1322 (D. N.J. 1994) (citing *Ward*, 491 U.S. at 791). Ordinance § 74-16 does not discriminate among the types of speech or the content of the messages which might be found on prohibited signs. *See Taxpayers for Vincent*, 466 U.S. at 804-05 (ordinance prohibiting the posting of signs on public property "is neutral - indeed it is silent - concerning any speaker's point of view."); *Frumer*, 709 F.2d at 877. In addition, the ordinance does not distinguish between permissible and impermissible signs by reference to their content. *See Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 516 (1981). Instead, Ordinance § 74-16 prohibits *all* private signs on public property regardless of their content. *See Gannett Satellite Information Network, Inc. v. Township of Pennsauken*, 709 F. Supp. 530, 536 (D. N.J. 1989) ("Because the ordinance at issue in this case applies to all honor boxes, it is content neutral."); *Gannett Satellite*

3

*Information Network, Inc. v. Berger*, 716 F. Supp. 140, 150, *aff'd* in part, *rev'd* in part, 894 F.2d 61, ("All commercial newspapers are prohibited from using newsracks as a manner of distribution. The prohibition, therefore, is content-neutral.").

Furthermore, any allegedly "implicit" exceptions contained in Ordinance § 74-16 do not render the ordinance content-based. Although plaintiffs argue that Ordinance § 74-16 is content-based because it "implicitly permit[s] public - i.e., governmental - advertisements, posters and signs," they fail to cite any case that has specifically held that permitting governmental signs while prohibiting private signs in public rights-of-way represents content-based discrimination. Indeed, the Third Circuit in *Rappa v. New Castle County* indicated that certain governmental signs and several of the signs plaintiffs claim violate Ordinance § 74-16 "but were left standing" (". . . (iii) commercial signs advertising, among other things, real property for sale, work performed by contractors and the City's own convention center; (iv) promotional signs for various community organizations; and (v) signs identifying the names of various neighborhoods within the City") receive constitutional protection. 18 F.3d 1043 (3d Cir. 1994). The Third Circuit in *Rappa* applied a "significantly related to" test to exceptions contained in a Delaware statute that prohibited all signs in public right-of-ways. *Id.* at 1065. Generally speaking, the significantly related to test requires that exceptions to a general ban on speech be significantly related to a particular locality. *Id.* The requirement that a sign be significantly related to the property can be met in either of two ways: "(1) first, the state can show that a sign is particularly important to travelers on the nearby road - for example, a directional sign, or a sign conveying the nearest location of food, or (2) second, the state can show that a sign better conveys its information in its particular

location than it could anywhere else - for example, an address sign performs its function better when it is actually on the property with that address than if it is anywhere else." *Id.* at 1068. Accordingly, the court found exceptions for (1) directional or warning signs and official signs or notices, (2) danger and precautionary signs that relate to the premises, and (3) signs or notices of a railroad, other transportation, transmission, or communication company that are necessary for the direction, information, or safety of the public were constitutional under the significantly related to test and "probably could survive even a compelling state interest test." *Id.* at 1066. With respect to signs advertising the sale or lease of the real property on which they are located, the court held they were directly related to such real property and were probably supported by an important state interest. *Id.* at 1066-67. Likewise, the exception for beautification/landscape planting sponsorship signs probably also met the requirement that signs be significantly related to the locality and are acceptable so long as there is a substantial state interest in them. *Id.* at 1067-68. Moreover, exceptions for signs advertising activities conducted on the premises are not even content based exceptions: "the onsite exception does not preclude any particular message from being voiced in any place; it merely establishes the appropriate relationship between the location and the use of an outdoor sign to convey a message." *Id.* For example, "[a]n Exxon sign could be placed on an Exxon station but not at Rappa's campaign headquarters; conversely, a 'Rappa for Congress' sign could be placed on Rappa's campaign headquarters but not at an Exxon station." *Id.* Finally, "[a]n exception which merely allowed signs directing people to local towns, historical sites, or attractions would probably be acceptable-- because the main function of roads is to enable people to travel to where they want to go,

signs telling people where they are or directing them to particular sites are especially important along those roads." *Id.* at 1068.

**B.     *Ordinance § 74-16 Serves Significant Government Interests***

It is clearly within the City of Rehoboth's powers to regulate the posting of private signs on public property. As the Supreme Court of the United States recognized in *City of Ladue v. Gilleo*:

> "[w]hile signs are a form of expression protected by the Free Speech Clause, they pose distinctive problems that are subject to municipalities' police powers. Unlike oral speech, signs take up space and may obstruct views, distract motorists, displace alternative uses for land, and pose other problems that legitimately call for regulation." 512 U.S. 43, 48 (1994).

Accordingly, not only is Ordinance § 74-16 a valid exercise of the City of Rehoboth's municipal power, it also serves significant governmental interests in traffic safety and community aesthetics. The Supreme Court of the United States and other federal courts have recognized that these concerns are legitimate and substantial government interests. *See Taxpayers for Vincent*, 466 U.S. at 806-07 ("Municipalities have a weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression . . . [t]he visual assault on the citizens of Los Angeles presented by an accumulation of signs posted on public property - constitutes a significant substantial evil within the City's power to prohibit."); *Heffron*, 452 U.S. 640, 647-48 ("As a general matter, it is clear that a State's interest in protecting the 'safety and convenience' of persons using a public forum is a valid governmental objective."); *Metromedia*, 453 U.S. at 507-08 ("Nor can there be substantial doubt that the twin goals that the ordinance seeks to further - traffic safety and the appearance of the city - are substantial governmental goals."); *Frumer*, 545 F. Supp. at 1295 ("Traffic safety and community aesthetics have been held

to be significant government interests which can justify reasonable time, place, and manner regulations of speech protected by the First Amendment."); *McCormack*, 872 F. Supp. at 1325 ("the Township of Clinton may exercise its police power to promulgate and to enforce regulations that vindicate its citizens' aesthetic and safety interests by minimizing clutter, obstructing views and various traffic hazards.").

Streets cluttered with signs detract from the appearance of the community. In addition, signs along the roadside may distract drivers and/or obstruct a driver's view. An obstruction of the driver's view constitutes a safety hazard to both the driver and pedestrians. Furthermore, Ordinance § 74-16 is narrowly tailored to serve the interests it is designed to further. *See Taxpayers for Vincent*, 466 U.S. at 808 ("By banning these signs, the City did no more than eliminate the exact source of evil it sought to remedy."). Clearly, prohibiting private signs on public property reduces unattractive visual clutter and distractions for drivers.

**C.    *Ordinance § 74-16 Leaves Open Ample Alternative Channels For Communication***

Finally, Ordinance § 74-16 is a reasonable time, place or manner restriction because it merely restricts the places where plaintiffs are permitted to campaign. In so doing, the ordinance leaves open ample alternative channels for communication of plaintiffs' information. The ordinance does not absolutely ban political signs. Plaintiffs remain free to post their signs on private property with the consent of the owners thereof. Plaintiffs may also campaign through direct mail, radio, television, newspapers, bumper stickers, or door-to-door campaigning. Furthermore, plaintiffs are not prohibited from engaging in all campaigning activities within public right-of-ways. "For example,

plaintiffs may campaign, distribute leaflets, bumper stickers, and other literature as they walk within the rights-of-way." *Frumer*, 545 F. Supp. at 1296.

The Supreme Court of the United States' decision in *Taxpayers for Vincent*, 466 U.S. 789, and the Third Circuit's decision in *Frumer*, 709 F.2d 874, which is binding on this Court, govern the outcome of this case. Plaintiffs in *Taxpayers for Vincent* brought a First Amendment challenge to a Los Angeles city ordinance prohibiting the posting of signs, including political signs, on public property. 466 U.S. at 791-92. The Supreme Court upheld the ordinance, finding that the ordinance was content-neutral ("[t]he text of the ordinance is neutral - indeed it is silent - concerning any speaker's point of view"), *Id.* at 804, and that the city's aesthetic interest in avoiding visual clutter constituted a sufficient governmental interest. *Id.* at 816-17. The ordinance also permitted ample alternative modes of communication. *Id.* at 812.

In *Frumer*, the Third Circuit held constitutional an ordinance similar to Ordinance § 74-16. 709 F.2d 874. The ordinance in *Frumer* provided that: "[n]o temporary sign shall be affixed to utility poles, street signs or any other structures within the rights-of-way of public streets or highways within the Township of Cheltenham." *Id.* at 875. The Third Circuit affirmed the district court's denial of plaintiffs' motion for a preliminary injunction against the enforcement of the ordinance. *Id.* The Third Circuit found the ordinance "certainly facially content-neutral" because it did not "discriminate among the types of speech or the content of the messages which might be found on temporary signs." *Id.* at 877. Furthermore, the ordinance served significant government interests in traffic safety and community aesthetics since the Supreme Court of the United States has never required these interests be supported by empirical data and "the Board of

8

Commissioners cannot be said to have acted unreasonably in hoping that the ordinance would promote traffic safety and community aesthetics." *Id.* at 877-78. Finally, ample alternative forms of communication existed "which are at least arguably as effective as signs and which require little more effort or money." *Id.* at 878.

Accordingly, Ordinance § 74-16 is a permissible content-neutral time, place or manner regulation of plaintiffs' speech because it is (1) "justified without reference to the content of the regulated speech," (2) narrowly tailored to serve significant government interests, and (3) leaves open ample alternative channels for plaintiffs' speech. For the foregoing reasons, this Court should deny plaintiffs' motion for a temporary restraining order since plaintiffs have failed to demonstrate a likelihood of success on the merits.

**D.      *Ordinance § 74-16 Has Been Applied in a Non-Discriminatory Fashion***

Plaintiffs argue that even if Ordinance § 74-16 is a permissible content-neutral time, place and manner regulation, the City of Rehoboth is enjoined from enforcing it because it has been "applied in a discriminatory fashion." This argument also fails.

The City has enforced Ordinance § 74-16 in a neutral manner. The City has not discriminated by selectively enforcing Ordinance § 74-16 against plaintiffs. The City removes all signs, not just political signs that are improperly on the right-of-way or City property. *See* Transcript of Deposition of Alexander Walter Onizuk at 38-39, 42 ("Nobody told me to remove any political signs. They just told me to pick up signs.") (hereinafter "Onizuk at ___"). The City did not remove only plaintiffs' campaign signs -- the City also removed campaign signs for incumbent Mayor Cooper. Ozinuk at 44. Through July 19, the City removed a total of 19 signs for plaintiff Sokolove and 3 signs for Mayor Cooper. Plaintiffs' Exhibit 6. Walter Onizuk, a Code Enforcement Officer for

the City, testified that on July 7, 2005 he removed political campaign signs located in the public right-of-way. Onizuk at 45. The public right-of-way includes land from the sidewalk to the curb where there is a sidewalk, land between the curb and a continued line from a sidewalk where the sidewalk discontinues, and land between the street and the back side of the utility pole. Onizuk at 16; 84 Transcript of Deposition of David Murphy at 13-14, 22-24. With respect to plaintiff Sokolove's signs, Mr. Onizuk removed signs from the public right-of-way on Lake Avenue. Onizuk at 85-92. No one directed Mr. Onizuk to remove these political campaign signs. Onizuk at 101. After removing these signs, Mr. Onizuk spoke to his supervisor, David Murphy, who advised that it was correct to remove signs from the public right-of-way. Onizuk at 46 & 70. On July 9, 2005, Mr. Onizuk again removed Sokolove signs from the public right-of-way on Lake Avenue. On July 15, 2005, Mr. Onizuk removed 5 Sokolove signs – 1 in Gerar Park, which was the only political sign in the park; 1 in the road divider across from Gerar Park; 1 on Norfolk Street between the curb and the sidewalk; 1 in a landscape island that extends into the roadway near Bad Hair Day; and 1 in front of a telephone pole at a residential property near Bad Hair Day. Onizuk at 93-100. The City did not remove any Sokolove signs from private property. Onizuk at 84-85, 88-89, 92, 94. This is consistent with the City's policy. Murphy at 10. Onizuk testified repeatedly that only signs located in the right-of-way, whether they were signs for Sokolove or Mayor Cooper or non-political signs, are removed. Onizuk uniformly removed signs located in the right-of-way. Onizuk at 102.

Moreover, signs for political candidates historically have not been placed on City-owned property or right-of-ways. Richard Sargent, a current City Commissioner, states that he has "tried to always place my campaign signs on private property. . ." and that

since 1995, his first year running for City office, he has observed that "generally candidates for City offices have not placed their campaign signs on the City-owned property or right-of-ways." Affidavit of Richard Sargent at ¶¶ 4 & 5 (attached hereto as Exhibit 1). Similarly, J. Patrick Gossett, a current City Commissioner, was aware during his 2004 campaign that "signs were prohibited from being placed in the public right of way of the City." Affidavit if J. Patrick Gossett at ¶ 3 (attached hereto as Exhibit 2). In fact, he "personally removed two of my campaign signs that had been mistakenly placed on City property by individuals who were campaigning for my election." *Id.* at ¶ 4. Charles William Bahan, who in 1996 ran for Mayor against the incumbent Mayor Cooper, "never placed any of my political campaign signs in the public right of way for the City." Affidavit of Charles William Bahan at ¶¶ 4 & 5 (attached hereto as Exhibit 3). Mr. Bahan states further, "Since 1982, I have observed little, if any, political signs placed in the City's public right of way." *Id.* at ¶ 6.

The City does not only enforce Ordinance § 74-16 against political signs. The City enforces Ordinance § 74-16 all the time. Ozinuk at 71 & 103. The City removes contractor signs that violate Ordinance § 74-16. Ozinuk at 68 & 103. The City removes realty signs that violate Ordinance § 74-16. Ozinuk at 72 & 103. The City removes auction signs that violate Ordinance § 74-16. Exhibit 1 to Sokolove Deposition (photos of signs removed and placed in City pickup bed). The City removes rental signs that violate Ordinance § 74-16. Ozinuk at 103.

The Plaintiffs allege that a number of governmental signs located in the public right of way prove that the City has engaged in selective enforcement. *See* Exhibit G (Directional and Informational Sign to City owned Convention Center), Exhibit J (Sign

for Tot Lot and No Pets Permitted at Lake Gerar Park), and Exhibit N (Tree City U.S.A and No Swimming, Wading, Ice Skating Signs in Lake Gerar Park) to Affidavit of Joseph Hill, Exhibit 2 to the Plaintiffs' Memorandum in Support of Motion for Temporary Restraining Order. This argument has no merit. These governmental signs are legitimate, official signs that significantly related to the land, directional, and safety signs.

In sum, plaintiffs have failed to meet their burden of demonstrating a likelihood of success on the merits; not only is Ordinance § 74-16 a valid content-neutral time, place and manner restriction, it has been applied in a constitutional, non-discriminatory fashion.

OBERLY, JENNINGS & RHODUNDA, P.A.

Dated: July 26, 2005

_/s/ William J. Rhodunda, Jr._
William J. Rhodunda, Jr. (No. 2774)
Karen V. Sullivan (No. 3872)
800 Delaware Avenue, Suite 901
P.O. Box 2054
Wilmington, DE  19899
(302) 576-2000
Attorney for Defendants

and

Walter W. Speakman, Jr.
Brown Shiels Beauregard & Chasanov
108 East Water Street
P.O. Drawer F
Dover, DE  19903
(302) 734-4766