Sokolove - cross

1   Q.      There is a plaintiffs' memorandum in support of your

2   motion for a temporary restraining order filed with the

3   Court.  And in that, there was an affidavit from Mr. Joseph

4   Hill who I understand is one of your campaign supporters; is

5   that correct?

6   A.      He is working on my behalf, yes, sir.

7   Q.      In his affidavit, he specifically indicates with

8   respect to City streets with curbs and sidewalks, the City

9   owns the real property located between the curb and the

10  area to the sidewalk.  We read that to you yesterday; right?

11  A.      Yes.

12  Q.      Oh.  So do you agree with Mr. Hill's statement based

13  upon his experience as a realtor since 1965 that that

14  property is owned by the City?

15  A.      Actually, I'm not sure what he is saying is

16  correct.  In fact, in speaking to Mr. Hill, he said to me

17  that on a property-by-property basis, you have to go out

18  and look at the survey to understand where the line is.  I

19  think he was saying as a general prospect, that that may

20  be, you know, the general rule around the town, but on a

21  property-by-property basis, that may or may not be the

22  case.  You have to look at the survey to understand where

23  the property line is.

24  Q.      Well, this is an affidavit that you prepared for this

25  judge to look at to make a decision on.  Does it say in this

Sokolove - cross

1    affidavit this idea you have to do a property-by-property

2    analysis?

3                    MR. SCHILTZ:  Objection, Your Honor.  The

4    witness didn't prepare this.  There is no foundation for

5    that.

6                    THE COURT:  All right.  Overruled.  Your

7    comments are on the record.

8                    Go ahead.  I will ask to you reformulate it

9    without the editorial comment.

10                   MR. RHODUNDA:  I'm sorry, Your Honor.  Thank

11   you.  I'm sorry.

12                   THE COURT:  And you know what?  Why don't we

13   do this?  In fact, you mentioned the affidavits a couple

14   times in proceedings.  I heard Mr. Rhodunda indicate a

15   willingness to have the affidavits made part of the record

16   as substantive evidence for this hearing.  Did I understand

17   that?

18                   MR. RHODUNDA:  That's correct, Your Honor.  Yes.

19                   THE COURT:  Is that something you would like as

20   well?

21                   MR. SCHILTZ:  No.

22                   THE COURT:  You don't want your own affidavits

23   in?

24                   MR. SCHILTZ:  I don't want the opponents'

25   affidavits in, Your Honor.  He has got affidavits from the

Sokolove - cross

1    City Commissioner which he attached to his pleadings.

2                 THE COURT:  All right.  Good enough.

3                 MR. SCHILTZ:  I assume that if I wanted mine in

4    that --

5                 THE COURT:  I assume you are right.  So your

6    "no" is done.

7                 MR. RHODUNDA:  Well, we'll deal with our

8    affidavits later but presumably it's part of our filing with

9    the Court in support of our memorandum, just as the

10   plaintiffs filed a memorandum with attached affidavits, we

11   believe those affidavits should be part of this record as

12   well as the affidavits they supported with regard to their

13   memorandum.

14                MR. SCHILTZ:  When we get there, I'll object on

15   hearsay grounds, Your Honor.

16                THE COURT:  Go ahead with your

17   cross-examination.

18                MR. RHODUNDA:  Thank you.

19   BY MR. RHODUNDA:

20   Q.    Mr. Sokolove, is it your opinion that the City does

21   not own the property between the sidewalk and the curb?

22   A.    Sir, honestly, I don't have -- first of all, I'm

23   not sure if you are asking as a legal matter or factual.  I

24   don't know the answer to that question.  And what I am told

25   by people who have been in the City for years, way, way

Sokolove - cross

1   longer than I, that on any given street you can have, you

2   can have all kinds of outcomes.  Whether the City chooses to

3   enforce something may be one matter, who actually owns the

4   land may be another.  But I'm not qualified to give you an

5   opinion on that.  I don't know.  I don't know.  I'm not sure

6   anybody does.

7   Q.      Well, Mr. Hill gave that opinion; is that correct?

8   A.      I can look at Mr. Hill's affidavit and perhaps I

9   would agree with your characterization of it.  I didn't

10  prepare.  I don't know what he meant by it.  I've spoken to

11  him since then and I guess he will be a witness and you can

12  ask him what he meant by it.

13  Q.      Now, the City removed at least one of your signs from

14  a City park; is that correct?

15  A.      That's correct.

16  Q.      And that was Gerar Park; is that correct?

17  A.      Lake Gerar, right.

18  Q.      Lake Gerar Park.  Did you see any political signs in

19  Lake Gerar Park?

20  A.      I saw a lot of other signs but not political signs.

21  Q.      So you saw no other political signs on Lake Gerar

22  Park; is that correct?

23  A.      I saw no other political signs, correct.

24  Q.      And I noticed in one of your prior pleadings you

25  actually showed a sign that showed "no swimming" and I

Sokolove - cross

1    believe that was posted in Lake Gerar Park.  Do you recall

2    that as part of your submission to the Court?

3    A.    The one I recall is there was a sign for the City

4    where they're selling -- right next to my sign, was

5    literally right next to where I placed my sign in the park,

6    there was a commercial sign for the City selling parking

7    stickers and that was right up on the pole in the park.  So

8    I put my sign right near it so as to not appear to be

9    further littering the park.  I wanted to try to be

10   consistent with what the City was doing with their own

11   commercial sign.

12   Q.    So in your opinion, the City identifying where you

13   can buy parking stickers to park in the City of Rehoboth is

14   a commercial enterprise?

15          MR. SCHILTZ:  Objection, Your Honor.  The

16   witness is not being offered as an expert.

17          THE COURT:  Overruled.

18   A.    Honestly, I mean that's -- the City makes a lot of

19   money for their parking stickers, so it's a commercial

20   venture being done on behalf of the City.  It's their sign,

21   I acknowledge that.

22   BY MR. RHODUNDA:

23   Q.    Mr. Sokolove, there is a little median area right

24   across from Lake Gerar Park where yesterday you testified I

25   believe three of your signs were removed from that little

Sokolove - cross

1   median area?

2   A.      Yes, sir.

3   Q.      And I believe you call that a small park because it

4   separates several different rows in triangular fashion; is

5   that correct?

6   A.      Yes, sir, that's correct.

7   Q.      Did you see any other political signs in that median

8   area?

9   A.      No, I was the only one who put them there.

10  Q.      I'd like to turn to Plaintiffs' Exhibits 1 and 2

11  which I believe are the interrogatory responses that we

12  received last night after the deposition, after your

13  deposition was completed.  Do you have those in front of

14  you?

15  A.      Yes, sir.

16  Q.      As you know from Mr. Onizuk's testimony, he contends

17  that he took no signs from private property; isn't that

18  correct?

19  A.      That's what I understand him to be saying.

20  Q.      And that the only signs he testified to, and you were

21  there, was that the signs were on a public property; is that

22  right?

23  A.      I think his version of what is public and private may

24  differ from mine.

25  Q.      Okay.  On Plaintiffs' No. 1-I --

Sokolove - cross

1   A.      Yes, sir.

2   Q.      -- you have 59 Lake Avenue, four signs removed, one

3   from a flower pot one from a flower pot, two from flower

4   beds.  He denied taking those; is that correct?

5   A.      I'm not certain.  I was confused by his testimony.  I

6   think he denied taking -- he described where one of them was

7   and it matches exactly what I call the flower box.

8   Q.      Let me ask you, did you see him take these signs?

9   A.      I know exactly where I placed them and --

10  Q.      But did he?

11  A.      He admitted he took them.

12  Q.      Did you see a City employee take those four signs?

13  A.      My valet guys standing right next to him did.

14  Q.      And who is your valet guy?

15  A.      An individual by the name of Frankie or Francois Nota

16  (phonetic).

17  Q.      So his testimony then is inconsistent with the

18  statement to the police by Mr. Bainter (phonetic); is that

19  correct?

20  A.      No, sir.

21  Q.      Mr. Bainter indicates that the only signs taken from

22  your property were on the far ends of the property, not the

23  ones in the flower beds and in front of your business; is

24  that correct?

25  A.      No, that is not correct, sir.  The far end of the

Sokolove - cross

1    property, I have a flower pot at one end and a flower box at

2    the other end of the property.  Those are exactly the two

3    boxes that I'm talking about and I think that Mr. Bainter

4    was referring to.

5                MR. SCHILTZ:  Your Honor?

6                THE COURT:  Hold on.

7                Go ahead.

8                MR. SCHILTZ:  It appears Mr. Rhodunda is reading

9    from a document and cross-examining the witness.  Does he

10   want to provide the witness with a copy of the report or

11   provide me with a copy of the reports which I don't have?

12               THE COURT:  He is cross-examining your witness

13   with someone's statement.  That is permissible.  So if

14   you're objecting to the cross-examination, it's overruled.

15               Go ahead, Mr. Rhodunda.

16   BY MR. RHODUNDA:

17   Q.    Now, Mr. Bainter specifically told the police that a

18   sign was taken from east and west property lines; is that

19   correct?

20               MR. SCHILTZ:  Your Honor, I'm objecting to lack

21   of foundation.  I'm not sure he established a foundation

22   Mr. Bainter said that.  This witness hasn't testified to it,

23   no one else has.

24               MR. RHODUNDA:  He hasn't introduced a document

25   that suggests otherwise.  How can he cross-examine the

Sokolove - cross

1   witness with respect to these matters?

2           MR. RHODUNDA:  We reviewed all of this in detail

3   yesterday at the deposition and we talked all about the

4   signs, and I can go through blow by blow if that is what the

5   Court would like.

6           THE COURT:  No, now the objection is lack of

7   foundation.  And your response to that is what?  Do you have

8   a report?

9           MR. RHODUNDA:  I have a police report in

10  front of me, yes.  And we, in regard to the defendants'

11  introduction of the one-page report, would introduce the

12  entire police report as an exhibit because it's a public

13  record.

14          THE COURT:  All right.  Your position on the

15  introduction of Mr. Bainter's -- is it Officer Bainter's?

16          MR. RHODUNDA:  I'm sorry?

17          THE COURT:  It's Officer Bainter.

18          MR. RHODUNDA:  No, this is a Thomas Baker who is

19  the general manager of the restaurant.

20          THE COURT:  But it's within the police report of

21  which?

22          MR. RHODUNDA:  This is Detective O'Bier's police

23  report.

24          THE COURT:  Detective O'Bier's police report.

25          Your position?

Sokolove - cross

1      MR. SCHILTZ:  Your Honor, it's an incomplete

2  report.  We did not receive the entire report.  It's never

3  been produced and, therefore, we believe it's lacks

4  trustworthiness under 803(6)(D).

5      THE COURT:  All right.  Tell you what, why don't

6  you give me a copy of the report and a copy to opposing

7  counsel, we'll resolve this right now.

8      MR. SPEAKMAN:  I believe opposing counsel

9  already has one.  We provided one yesterday, Your Honor.

10      THE COURT:  Show it to him, and hand a copy up

11  to me because, Mr. Schiltz, I'm going to ask you to tell me

12  how it's incomplete.

13      MR. SCHILTZ:  Your Honor, if you will turn to

14  the sixth page, Your Honor.

15      THE COURT:  All right.

16      MR. SCHILTZ:  Read at the bottom, there is a

17  paragraph under Statement of Witness 12, Your Honor.

18      THE COURT:  All right.

19      MR. SCHILTZ:  The last sentence there:  She

20  advised that Ferrese did not know why the signs were there

21  and that if they had been taken from private property, they

22  should --

23      You turn the page, Your Honor, and there is no

24  page.  Look at the pagination, Your Honor.  You see, on the

25  top of the first page I was referring to, a page six

Sokolove - cross

1    reference, Your Honor.  Top left-hand corner.

2              THE COURT:  Not on those copy.

3              MR. SCHILTZ:  May I approach?

4              THE COURT:  Sure.  Why don't you hand it to the

5    clerk.

6              Good enough.

7              (Documents passed forward.)

8              THE COURT:  Yes?

9              MR. SCHILTZ:  And obviously the sentence

10   continues on, Your Honor.  Page seven should be there.  It's

11   obviously not.  It's not included with any part of the

12   report.  That is her examination of Mr. Ferrese, the City

13   Manager and the individual who is going to testify today,

14   Your Honor, regarding the enforcement of this statute.

15             MR. RHODUNDA:  Your Honor, we actually explored

16   this issue at the request of counsel.  This is a complete

17   record.  There should have been a period at the end of the

18   page.  Because she said:  She advised that Ferrese did not

19   know why the signs were there.  And if they had been taken

20   from private property, they should.

21             They should have been taken from private

22   property.  That is the dispute.  It's our position they have

23   been taking them off public property, not private property.

24   You put a period there.  This is not a -- this is a police

25   report written on a very minor issue.

Sokolove - cross

1          THE COURT:  All right.  I'm overruling your

2     objection.  You wanted your report in, you fought for your

3     report to be in, I'm letting the other report in under the

4     same exception.  If you want to undermine it and say there

5     is a missing piece, you go ahead and take a crack at it but

6     I'm not keeping the whole document out over a dispute over a

7     period.  Go ahead.

8          I'll give you back your copy, by the way, which

9     is marked up.

10          This is theirs.  Sorry.  That one is theirs.

11     You should have yours.

12          THE DEPUTY CLERK:  You gave you back yours.

13          (Mr. Schiltz sits down.)

14          THE COURT:  Okay.  We're at 11:25.

15          MR. RHODUNDA:  Thank you, Your Honor.

16     BY MR. RHODUNDA:

17     Q.    Yesterday during your deposition, didn't we review

18     Mr. Baker's police statements and the police report relative

19     to the locations of the signs?

20     A.    Yes, I gave you my opinion of what he was saying

21     because I knew where I put the signs out.

22     Q.    But he basically, in his report, indicates to the

23     police that he saw the signs taken from the east and west

24     property lines; is that correct?

25          THE COURT:  Hold on just a minute.  Are you

Sokolove - cross

1    asking him whether what he said was correct or are you

2    asking him whether it's correct it was taken?

3                MR. RHODUNDA:  I'm sorry, Your Honor.

4                THE COURT:  Please.

5                MR. RHODUNDA:  Let me move on from this point.

6    I think the report is now admitted as an exhibit.

7                THE COURT:  Yes.

8    BY MR. RHODUNDA:

9    Q.    Going back to Plaintiffs' Exhibit No. 1,

10   interrogatory responses and the locations of these signs.

11   (I) basically indicates four signs were removed, (ii) says

12   two signs were removed from the grass on either end of the

13   parking spots in front of the restaurant.  Now, Mr. Onizuk

14   did confirm he did take those two signs; is that correct?

15   A.    To be honest, sir, I'm not sure what he was

16   acknowledging because we got into the dispute as to what was

17   meant by either end of the property.  That's why I said to

18   you earlier yesterday and I'm saying to you now, you can

19   only see certain signs by looking out the window as

20   Mr. Bainter could only see.  He can know what signs I put up

21   at beyond the windows of the restaurant because he was

22   already working in the building.  So I'm not sure what

23   Mr. Onizuk was stating.  I'm not even sure what Mr. Bainter

24   was saying.  I know where I put all the signs.

25   Q.    And my question to you is did you see the City

Sokolove - cross

1    employee take down these signs?

2    A.    Sir, I can only answer that by saying I know where I

3    put them and then my valet guy said all of them were taken.

4                    THE COURT:  I'm taking that as a no; is that

5    correct?

6                    THE WITNESS:  Correct, Your Honor.

7                    THE COURT:  All right.  Let's move on.

8                    MR. RHODUNDA:  May I approach the witness, Your

9    Honor?

10                   THE COURT:  Sure.

11                   (Documents passed forward.)

12   BY MR. RHODUNDA:

13   Q.    Mr. Sokolove, yesterday during your deposition, I

14   showed you a plot plan of your restaurant property; is that

15   correct?

16   A.    Yes.

17   Q.    And that if you look at that plot plan, it shows

18   where your building is located; is that correct?

19   A.    It shows where the building and the rest of the lots

20   are located.  I own more than just the building lot.

21   Q.    I understand that.

22   A.    Okay.

23   Q.    And you weren't present during Mr. Onizuk's

24   testimony?

25   A.    Yes, sir.

Sokolove - cross

1    Q.     Did he mark on that exhibit where the two signs were

2    removed?

3    A.     Is this his markings?

4    Q.     Well, if you can recall.  If you can recall, that's

5    fine.  If you can't, that's fine, too.

6    A.     He marked some exhibit.  This is -- I'm not sure if

7    this is it.  He marked on an exhibit where he thought he

8    took signs, but where he said he took them.  I'm not sure

9    this is that exhibit, though.

10   Q.     Okay.  Well, it's marked.  I believe it's marked.

11   A.     It's marked Defendants' Exhibit 2 is what it says.

12   Q.     Correct?

13   A.     Okay.

14          THE COURT:  There isn't a question pending.  He

15   is telling you, I'm hearing him say he doesn't know if there

16   is that is an exhibit or not.  Do you have another question?

17          MR. RHODUNDA:  No, not on that, Your Honor.

18          THE COURT:  All right.

19          MR. RHODUNDA:  May I approach the witness again?

20          THE COURT:  Yes, freely.

21          (Documents passed forward.)

22   BY MR. RHODUNDA:

23   Q.     I'm showing you a photograph that was Deposition

24   Exhibit No. 1 yesterday.  You were present during

25   Mr. Onizuk's testimony.  Did he mark on that?  Do you recall

64

Sokolove - cross

1   him marking on there where the sign was taken from?

2   A.    My only hesitation before, I couldn't remember if

3   these were my marks or his.

4   Q.    Okay.

5   A.    If the green mark you are referring to is his, then

6   yes, this is where he marked.

7   Q.    And he indicated he removed a sign from that;

8   location; is that correct?

9   A.    If this is -- yes, it would appear that he did.

10  Q.    And you can look at that picture and you can see some

11  of your campaign signs; is that correct?

12  A.    That I put up subsequently?

13  Q.    Yes.

14  A.    Correct.

15  Q.    And Mr. Onizuk testified that those were lawfully

16  placed yesterday; is that correct?

17  A.    I don't know.  He took them last time so he may have

18  said it now that they're lawfully placed but those were the

19  among the ones he took last time, right in the flower bed.

20  That is what is referred to on the exhibit.

21       MR. RHODUNDA:  What I would like to do is be

22  able to give to the Court a package of exhibits and allow

23  the Court to look at the photographs that were deposition

24  exhibits that both Mr. Sokolove and Mr. Onizuk went through

25  and indicated where signs were removed from.

Sokolove - cross

1                THE COURT:  What is your position, Mr. Schiltz?

2                MR. SCHILTZ:  I have no objection to him showing

3      the witness the exhibits and asking him where signs were

4      removed from, Your Honor.  That seems --

5                THE COURT:  That is not what he is asking.  He

6      is asking to have these admitted now.  What I want is your

7      position.

8                MR. SCHILTZ:  I don't believe they can be

9      admitted for purposes of where Mr. Onizuk removed signs

10     because, frankly, Mr. Sokolove hasn't testified about that

11     and my witness hasn't explained that and neither has frankly

12     my witness explained where the signs were removed in his

13     belief.  So --

14               MR. RHODUNDA:  Well, I'm going to reverse myself

15     and give the pictures from his deposition where he marked

16     where they were removed from.  That may be helpful for the

17     Court to actually see the location.

18               THE COURT:  Well, it certainly would remove the

19     objection pending right now.

20               MR. RHODUNDA:  Right.

21               THE COURT:  So why don't you go ahead and if you

22     have a stipulation that these are exhibits that this witness

23     has already marked, that's fine.  If you don't have such a

24     stipulation, then I guess we'll do it a picture at a time.

25               MR. SCHILTZ:  I did not attend the deposition

Sokolove - cross

1    yesterday, Your Honor.  That is part of the problem.  This

2    is the first time I have seen these documents.

3              THE COURT:  Okay.  I'm assuming your partner did

4    and that is why the two are discussing it.

5              MR. SCHILTZ:  You are correct, Your Honor.

6              (Counsel confer.)

7              MR. TUCKER:  Your Honor, I apologize.  There was

8    one other attorney at the deposition yesterday who handled

9    this one.  That is Mr. Lawson.  If we can confer with him

10   for a moment?

11             THE COURT:  Yes, let's do that and hopefully be

12   as quick as we can.

13             MR. TUCKER:  Thank you.

14             (Counsel confer.)

15             MR. SCHILTZ:  Your Honor, we will stipulate to

16   the admission of these documents and also stipulate that

17   the Xs that appear in blue ink on the documents are the

18   locations of signs where Mr. Sokolove indicated they were

19   removed from.  We will note that some of the pictures in the

20   package don't have markings on them.

21             THE COURT:  Some of the pictures what?

22             MR. SCHILTZ:  Do not have markings on them.

23             MR. RHODUNDA:  Okay.

24             THE COURT:  Okay.  So you want these now

25   admitted as what?  Exhibits what?

Sokolove - cross

1          MR. RHODUNDA:  I think as one exhibit package, I

2     presume.  I also was going to go through and identify each

3     one as an exhibit, which I'm going to do.  I'm just trying

4     to make this easier.

5          THE COURT:  Yes.  I'm going to -- I may need to

6     refer to these, so if you want these admitted as Exhibit 2,

7     then you can go ahead and mark them as 2-A, B, C, et cetera

8     on the back of each individual photograph.  I also should

9     note that while I have admitted Defense Exhibit 1, the

10    police report, you folks have not given me a copy of that.

11    In other words, I've said it's admitted but we don't

12    actually have the document which would be a good thing to

13    have.

14         MR. RHODUNDA:  Correct, Your Honor.

15         THE COURT:  So do you have it?

16         MR. RHODUNDA:  Yes, I do.

17         THE COURT:  Okay.

18         (Documents passed forward.)

19         MR. RHODUNDA:  I would like to mark these as 2-A

20    through ...

21         THE COURT:  Sure.  Do you want to take a pen and

22    do that?

23         MR. RHODUNDA:  Just scribble on the back?

24         THE COURT:  Just do it on the reverse side, and

25    that would be fine.

Sokolove - cross

1          (Pause.)

2          MR. RHODUNDA:  Your Honor, I have a number of

3    different photographs.  If I could just question the witness

4    from this location and hand them the photographs for a

5    description?

6          THE COURT:  That's fine.  That's fine.

7    BY MR. RHODUNDA:

8    Q.    Mr. Sokolove, I'm handing you what has been marked as

9    Exhibit 2-A.  Can you please describe for the Court what

10   that photograph shows?

11   A.    It is a photograph of a property about three or four

12   properties down from my restaurant on Lake Avenue.  It shows

13   two things:  It shows the bed and breakfast on the left and

14   it has my markings as to where signs had been placed by me

15   prior to the time they were taken.

16   Q.    So you are indicating those signs were removed; is

17   that correct?

18   A.    Yes, sir.

19   Q.    Do you have some Xs that are between the curb and the

20   sidewalk?

21   A.    Yes, sir.

22   Q.    How many do you have there?

23   A.    On this photograph, it appears to be two.

24          MR. RHODUNDA:  Would the Court like to see these

25   as we go through them?

Sokolove - cross

1          THE COURT:  Yes, it's probably a help if, after

2     you ask him, you take back, give it to the clerk and that

3     way, I'll be looking at what you just asked about.  Thanks.

4          MR. RHODUNDA:  Okay.

5     BY MR. RHODUNDA:

6     Q.     I'm now handing you Exhibit 2-B.  Can you describe

7     the location of that, what that picture describes?

8     A.     This is what Mr. Bainter was referring to I believe

9     when he said at the end of the property.  It's a floor pot

10    or box, I'm sorry, and it shows presently one of my and the

11    other candidate signs in the box.

12    Q.     And is that current location an approved location

13    according to the City policy?

14    A.     I don't know what their policy is.  I mean it's there

15    now.  It's where they took it from before so I don't know

16    what their policy is, honestly.

17          THE COURT:  All right.

18          (Documents passed forward.)

19    BY MR. RHODUNDA:

20    Q.     Now I'm going to show you Exhibit 2-C which is the

21    front of your restaurant.

22    A.     Yes, sir.

23    Q.     And I believe you marked a location on that that

24    shows a sign that was removed, according to you?

25    A.     Yes, sir.

Sokolove - cross

1    Q.      Okay.

2    A.      That's a flower pot which is at the very end of the

3    building itself, and there was a sign in the pot.  It had

4    previously been in front of the windows but Mr. Bainter and

5    I thought it would not be good to place it in front of the

6    windows so that patrons would not looking out at a campaign

7    sign, so I moved it over to the side to where flower pot is

8    and it was taken by the City at the flower pot.

9    Q.      You did not see the City take that?

10            THE COURT:  Let me interrupt for just a minute.

11            Mr. Sokolove.

12            THE WITNESS:  Yes, sir.

13            THE COURT:  This is D 2-A.  What is the address

14   there, if you know?

15            THE WITNESS:  Yes, sir.  It would be -- it would

16   probably be 67 Lake Avenue, would be about three doors down.

17            THE COURT:  All right.  And does it correspond

18   to one of the properties listed on P 1 or P 2?

19            THE WITNESS:  Yes, sir.

20            THE COURT:  Which one?

21            THE WITNESS:  I think it's the large one.  It

22   would correspond to Plaintiffs' Exhibit 1 and it would be

23   roman numeral, small roman numeral 3.

24            THE COURT:  All right.

25            THE WITNESS:  And on Plaintiffs' Exhibit 2, it

Sokolove - cross

1    would also be small roman numeral 3.

2                THE COURT:  Same question or questions as to D

3    2-B which is?

4                THE WITNESS:  That would be, that would be on

5    Plaintiffs' Exhibit 1 and 2, roman numeral small I on each

6    of 1 and 2.

7                THE COURT:  All right.  Thanks, go ahead,

8    Mr. Rhodunda, please.

9                MR. RHODUNDA:  Thank you, Your Honor.

10   BY MR. RHODUNDA:

11   Q.     I wanted to ask you another question about this

12   photograph.  The sidewalk in front of your restaurant, is

13   that on public property?

14   A.     I have no idea.  It was built by the owner of the

15   property.  I don't know and I've not gotten an answer from

16   the City.  When I was going to build, I was asking and I

17   couldn't get a correct answer.

18   Q.     Now, you have a plot plan that you submitted to the

19   City related to your building a parking lot sitting in front

20   of you at this time; is that correct?

21   A.     No, sir.

22   Q.     What does that plan show?

23   A.     This is somebody's plot plan.  It wasn't submitted by

24   me.

25   Q.     Does it show your current business, however?

Sokolove - cross

1    A.      It does.

2    Q.      And doesn't it show your property lines?

3    A.      I think it's very unclear what it shows, actually, to

4    be honest.  It shows out where the sidewalk comes out.

5    Q.      Doesn't it show that the sidewalk, though, is outside

6    of your property lines?

7    A.      I don't know.  If you can show it to me, perhaps -- I

8    don't know.  I don't know.  Because it's inconsistent with.

9    For example, it doesn't show the street behind it so it's

10   incorrect in that if you follow the sidewalk straight back,

11   it should go into the street and you don't see that either.

12   Q.      Well, you do have three steps that come down from

13   your restaurant; is that correct?

14   A.      I believe there is three, yes, sir.

15   Q.      And this plan actually shows three steps coming down

16   to the sidewalk; isn't that correct?

17              THE COURT:  Let me interrupt because I want to

18   make sure.  I don't want to prevent anybody from making

19   record they think they want to make here, but I want to

20   understand what is at issue here.  As I understand it, the

21   challenge is made that the ordinance, which is specifically

22   City Ordinance 74-16 is facially unconstitutional and that

23   even if it's not facially unconstitutional, it's been

24   applied in an unconstitutional manner because it hasn't been

25   historically consistently applied.  Do I understand the

1  import of the complaint?

2          MR. SCHILTZ:  Yes.

3          THE COURT:  All right.  Now, I understand the

4  issue of whether signs were taken from private property as

5  opposed to public property may have some inferential or at

6  least I'm assuming the reason you are putting this in front

7  of me is because you intend to argue that I could infer

8  something about intent on the part of the City officials.

9  Give me a proffer, because I'm getting deeper and deeper

10  into private property lines in a day that I don't have a lot

11  of time to give you and I just want to make sure we're using

12  the time I have for your folks productively.

13          MR. SCHILTZ:  I think it's a legitimate

14  question, but I think it frankly gets to the heart of one of

15  the problems, Your Honor, and that is that there is no clear

16  demarcation line between what the City thinks is public

17  property and what people think is private property.  The

18  evidence we believe will show that they haven't taken an

19  appropriate stance on that issue.  They haven't applied the

20  knowledge they have to figure that line out, if you will.

21  So I assume that the City would stipulate and say we're not

22  going to remove any signs from private property.

23          MR. RHODUNDA:  That's correct.  And we haven't

24  taken any from private property.

25          MR. SCHILTZ:  But the question becomes what is

Sokolove - cross

1    private property or what is public property or public

2    right-of-way.  And we have, in our opinion, had signs

3    removed from what we think is private property under the

4    statement, no, it's public right-of-way and therein lies the

5    issue.  I understand the question.  I hope I've been

6    responsive.

7              THE COURT:  All right.

8              MR. RHODUNDA:  It's unfortunate to get through

9    all these issues will take probably much longer than of the

10   Court could possibly take to do this.  It took six hours to

11   do two depositions yesterday, for the Building Inspector to

12   the Code Officials from the City.  Mr. Ferrese could testify

13   to the policies.  I want to provide the Court what the Court

14   really is looking for.

15             I was trying to provide the photographs to show

16   the dispute on the enforcement end is we're talking about

17   three or four feet.  If you have your signs between the curb

18   and the sidewalk, you can't do it.  If you move it to the

19   other side of the sidewalk, you can.  We have plenty of

20   pictures to show that.  They have no pictures to show any

21   signs inappropriately being placed between the curb and the

22   sidewalk.  That is just the right-of-way and we take them

23   from there.

24             So we're talking really this is a matter of, on

25   the enforcement side, we believe a matter of three feet from

Sokolove - cross

1    where the sign can be but we believe we have a consistent

2    policy of enforcing that.  But they have two claims, one is

3    a constitutional one and one is that you are taking signs

4    off of private property.

5            THE COURT:  All right.  Well, why don't we

6    focus, given the time, on that latter argument that you just

7    made.   In other words, I'm just telling you it's highly

8    unlikely that my ruling in this context is going to turn

9    on where the private property line is in front of

10   Mr. Sokolove's restaurant.  Okay?

11           So what I'm suggesting to you is I need both

12   sides to get -- and I understand that I've been asking some

13   precise questions myself to understand what happened here

14   and that may have directed you more into the specifics, but

15   now I'm urging both sides to back up and let's get the

16   evidence on that pertains to the question of, and I'll

17   tell you, most specifically that pertains to the question

18   of historical and current practice.

19           See, I can read the statute and the challenge to

20   whether it's facially unconstitutional or not, I don't need

21   evidence on.  You will argue to me about that and I'll read

22   the law.  What I need evidence on is how is has this thing

23   been handled in the past?  You know, in all the elections in

24   the past, did people go pounding their signs in the ground

25   between the sidewalk and the curb?  Did they put them in the

1      median strip and nobody cares?  Is this really a case, as

2      the plaintiffs urge upon me, where Mr. Sokolove's signs are

3      being taken off because there is an entrenched incumbent and

4      Mr. Ferrese is acting under his control in some fashion so

5      opponents signs are being taken off or is it a case in all

6      elections past, no signs were taken off?  That's the kind of

7      thing I need evidence on.  So let's redirect and not worry

8      so much about the plot plans and start talking about those

9      things which I think are at the heart of what I need

10     evidence about.  Okay?

11                    MR. RHODUNDA:  Okay.  So that would call for

12     some change in strategy, but certainly it might cut to the

13     chase quicker in light of the time.

14                    THE COURT:  Yes.  Do you need a moment to

15     confer?

16                    MR. RHODUNDA:  Yes.

17                    MR. SPEAKMAN:  Your Honor, I need a personal

18     moment.

19                    THE COURT:  Okay.  I'll tell you what.  We'll

20     take a little personal comfort break.  Five minutes.

21                    MR. SPEAKMAN:  Thank you.

22                    THE COURT:  All right?  Five minutes.  We're in

23     recess.

24                    THE WITNESS:  Your Honor, may I step down?

25                    THE COURT:  You certainly may.

Sokolove - cross

1          (Brief recess taken.)

2          THE COURT:  All right.  Please be seated.

3          Mr. Rhodunda.

4          MR. RHODUNDA:  Yes, Your Honor.

5    BY MR. RHODUNDA:

6    Q.    Mr. Sokolove, just a couple quick follow-up

7    questions?

8          THE COURT:  Before you continue, I will need the

9    rest of the Exhibit 2, if I may.

10         (Documents passed forward.)

11         THE COURT:  Thanks.

12         THE WITNESS:  Your Honor, I think -- if I may

13   interrupt?  I'm not sure if -- I'm not sure if this is one

14   of them or not.

15         MR. RHODUNDA:  I believe it is, yes.

16         THE COURT:  Okay.  I'll have you go ahead and

17   pass that up.

18         (Documents passed forward.)

19         THE COURT:  Thank you.

20   BY MR. RHODUNDA:

21   Q.    Mr. Sokolove, would you please estimate for me the

22   number of signs you currently have posted in the City of

23   Rehoboth Beach?

24   A.    Currently now?

25   Q.    Yes.

Sokolove - cross

1  A.     Just mine or mine with other names attached?

2  Q.     Any sign with your name on it.

3  A.     Just with my name?

4  Q.     No, your name --

5  A.     Or any sign?  I'm sorry, I misunderstood what you

6  said.  I'm going to guestimate right now perhaps 50, maybe,

7  but perhaps less.  It depends how many are gone.

8  Q.     Now, you are aware, though, you could place these

9  signs on private property; is that correct?

10  A.     I presume so, yes, sir.

11  Q.     And could you describe Rehoboth, generally?  Is it

12  primarily a residential community?

13  A.     There are two different parts of Rehoboth.  There are

14  areas exclusively residential and there is a part which is

15  zoned and which is, for the most part, exclusively

16  commercial.

17  Q.     Yesterday, we reviewed maps with you that had

18  pictures in front of commercial businesses and private

19  residences; is that correct?

20  A.     Yes, sir.

21  Q.     And you had the ability to place signs on private

22  property presumably if you asked that person for permission;

23  is that correct?

24  A.     You have the right to do it.  A lot of properties,

25  there is no place where the signs are visible either because

79

Sokolove - cross

1    you get up against the line, for example, when it's

2    commercial, it's right up against the property line and the

3    signs would be taken.  Plus, I mean, to me, you want to put

4    them where they're most visible, not just where.  You know,

5    you want to put them in visible areas so people can see

6    them.

7              MR. RHODUNDA:  I don't have any further

8    questions.

9              THE COURT:  Redirect?

10              MR. SCHILTZ:  No, Your Honor.

11              THE COURT:  All right.  Mr. Sokolove, thanks.

12    You may step down.

13              THE WITNESS:  Your Honor, what do you want me to

14    do with these?

15              THE COURT:  You can leave those right there.

16    I'll have the attorneys clean up after you.

17              THE WITNESS:  Thank you, Your Honor.

18              THE COURT:  All right.  What was your intent at

19    this point, Mr. Schiltz?

20              MR. SCHILTZ:  My intent was to call

21    Ms. Cargnino.

22              THE COURT:  She is here?

23              MR. SCHILTZ:  She is here.  She will probably

24    take five minutes at most.

25              THE COURT:  And then you are done?

Cargnino - direct

1          MR. SCHILTZ:  No, Your Honor.  I have one other

2     witness.

3          THE COURT:  And what is your expected length of

4     time?

5          MR. SCHILTZ:  He should not be long at all.  He

6     is going to talk about pictures we submitted in connection

7     with our application and what they are.

8          THE COURT:  Given the time I've got --

9          MR. SCHILTZ:  It will be very quick.

10          THE COURT:  It will be.  Like 15 minutes tops,

11     Mr. Schiltz.

12          MR. SCHILTZ:  Very well, Your Honor.

13                              - - -

14                     PLAINTIFFS' TESTIMONY

15          ... MELISSA CARGNINO, having been placed

16              under oath at 12:00 p.m. as a witness, was

17              examined and testified as follows ....

18                              - - -

19                     DIRECT EXAMINATION

20     BY MR. SCHILTZ:

21     Q.    Good morning, Ms. Cargnino.

22     A.    Good morning.

23     Q.    Thank you for coming today.  With whom are you

24     employed?

25     A.    Phillips Goldman & Spence, Dewey Beach Office.

Cargnino - direct

1    Q.     Are you an attorney?

2    A.     Yes, sir.

3    Q.     Did you have a chance to speak to Rehoboth Beach City

4    Manager Greg Ferrese on or about July 6th, 2005?

5    A.     Yes, sir, I did.

6    Q.     Did he call you or did you call him?

7    A.     I had called him originally and he returned my

8    telephone call.

9    Q.     And can you tell me the substance of that call to the

10   best of your recollection?

11   A.     Sure.  I had called him for two issues.  The first

12   being related to the referendum and the notices of

13   insufficiency that were to be mailed out the following day

14   and the second being a question from one of my clients,

15   Betty Mann-Beebe (phonetic), regarding the placement of

16   campaign signs on public property.

17            MR. SPEAKMAN:  Your Honor, could she speak into

18   the microphone?  I can't hear her.

19            THE WITNESS:  I'm sorry, Mr. Ferrese.

20            THE COURT:  Yes.  Pull yourself forward and

21   speak right into the microphone.

22   BY MR. SCHILTZ:

23   Q.     And what exactly did you ask Mr. Ferrese with respect

24   to the placement of political signs?

25   A.     Well, I had asked him specifically about a rumor that

Cargnino - cross

1   had been in the community regarding garbage men taking signs

2   from public property and just any specific guidelines that

3   the City may have regarding their placement.

4   Q.      And what did Mr. Ferrese advise you regarding the

5   placement of campaign signs?

6   A.      Well, he informed me that he was aware of their

7   existence on public property and the signs that existed

8   would not be moved, and his only concern would be putting

9   signs in the streetscape areas due to the new plantings that

10  existed in the renovated areas.

11              THE COURT:  When was this conversation?

12              THE WITNESS:  Pardon me, Your Honor?

13              THE COURT:  When was this conversation?

14              THE WITNESS:  This was July 6th of this year.

15              THE COURT:  All right.

16              MR. SCHILTZ:  Nothing further, Your Honor.

17              THE COURT:  All right.  Mr. Rhodunda, your

18  witness.

19              MR. SPEAKMAN:  I'll do the questioning,

20  cross-examination, Your Honor, at this time.

21              THE COURT:  That's fine.

22                      CROSS-EXAMINATION

23  BY MR. SPEAKMAN:

24  Q.      I'm going to refer to you as Melissa because I can't

25  pronounce your last name.

Cargnino - cross

1   A.      That's quite all right.

2   Q.      Can you tell me when you were hired to discuss

3   specifically the location of campaign signs?

4   A.      I'm sorry.  I don't believe I understand your

5   question.

6   Q.      When were you hired by the plaintiffs in this case to

7   discuss with Mr. Ferrese the location of campaign political

8   signs in the city?

9   A.      I had researched the issue on behalf of my clients

10  approximately a month prior, and throughout the time I had

11  addressed a few campaign related issues and I had received a

12  call from my client earlier in the day regarding that

13  specific rumor that I had mentioned.

14  Q.      So it was your primary purpose, wasn't it -- because

15  I worked with I, didn't I, and Mr. Ferrese worked with you

16  in determining whether the referendum petitions were

17  sufficient?

18  A.      Yes.

19  Q.      Wasn't it the main purpose of your call?

20  A.      No, sir, it was not.  I had a dual purpose in my

21  call.

22  Q.      Did you get anything in writing from him, to request

23  Mr. Ferrese to send you a letter?

24  A.      No, sir, I did not.

25  Q.      Why not?

Cargnino - cross

1    A.    Truthfully, we, as of that time, we were aware

2    that the City was under a time crunch to get notices of

3    insufficiency for the referendum out, due to that, and I

4    accepted what he said at face value as just related directly

5    to my client.

6    Q.    Are you aware of the Ordinance 74-16 of the City's

7    code that prohibited signs in the public right-of-ways and

8    public property?

9            MR. SCHILTZ:    Objection, it mischaracterizes the

10   statute.

11           THE COURT:    Overruled.    Are you aware of

12   Rehoboth City Ordinance 74-16, ma'am?

13           THE WITNESS:    Yes, sir, I am now.    And I was at

14   the time and I had researched the issue but we had seen

15   signs and for other reasons we had read it differently.

16   Q.    And when did you communicate to Mr. Sokolove what

17   Mr. Ferrese had said?

18           MR. SCHILTZ:    Objection, lack of foundation.

19           MR. SPEAKMAN:    Mr. Sokolove testified that his

20   representatives determined -- talked to Greg Ferrese about

21   the location of campaign signs, I believe.    That's the

22   foundation I'm asking her.

23           THE COURT:    Well, why don't you start by asking

24   her, if you would.

25           MR. SPEAKMAN:    Certainly.

Cargnino - cross

1          THE COURT:  I don't want to control your

2     examination but I'll sustain the objection.  It assumes that

3     this is the conversation that was relayed, and I don't know

4     if that was the case.

5     BY MR. SPEAKMAN:

6     Q.     Who of the plaintiffs did you relay this information

7     to?

8     A.     I related this to Betty Mann-Beebe.

9     Q.     Who?

10    A.     Betty Mann-Beebe.

11    Q.     You need to speak into the microphone.  Both

12    co-counsel and I have hearing problems.

13    A.     I'm sorry.  Betty Mann-Beebe.

14    Q.     And do you know what she did with it?  You don't, do

15    you?

16    A.     I can only make assumptions as to what she did with

17    it.

18    Q.     I don't want you to make assumptions.  Of your own

19    personal knowledge, did you hear her discuss this with any

20    of the political candidates?

21    A.     The only thing I could say would be speculation.

22    Q.     And the plaintiffs here had campaign signs already up

23    in the city at the date of your phone call, didn't they?

24    A.     Truthfully, I drive through Rehoboth very rarely.  I

25    was not aware of the existence of any campaign signs at that

1  moment, but Mr. Ferrese had said he had seen campaign signs

2  that were already up throughout Rehoboth.

3  Q.      In the public right-of-way?

4  A.      Again, I didn't specifically ask him about that.  He

5  said he had seen them up in Rehoboth.

6  Q.      So you don't know whether this information was ever

7  conveyed, is it correct to say, was ever conveyed to the

8  plaintiffs?

9  A.      I would say that would have to be correct because I

10  know they have knowledge.  I don't know if it was due to my

11  conversation with City Manager Ferrese or from other

12  outlets.

13  Q.      Well, who is Ms. Beebe?

14  A.      Ms. Beebe has been my contact point throughout a lot

15  of the work I have done.

16  Q.      On the referendum petitions, Melissa?

17  A.      Yes, in addition to general election issues.

18  Q.      So you don't know when if ever the plaintiffs found

19  out about your conversation with Mr. Ferrese that you have

20  written about in your affidavit; is that correct?

21  A.      No.  Again, it would all be an assumption that

22  obviously they do know.  I couldn't tell you the exact date

23  or what have you, but they were made aware of it, I'm sure.

24  Q.      Is it possible that you were mistaken in what you

25  heard from Mr. Ferrese?

87

Cargnino - redirect

1    A.    No.

2    Q.    Why is that?

3    A.    Well, I asked the questions.  I immediately called my

4    client with the answers, and I know those were the answers

5    that he gave.  I might not know other details, potentially

6    what was said, but I know at least those statements were

7    made.  Other statements in addition could potentially have

8    been made.

9    Q.    At the time you talked with Ms. Ferrese, you didn't

10   know about the existence of the City Code, Section 74-16; is

11   that correct?

12   A.    I had read the City code and knew of it generally

13   but, no, I didn't ask it specifically to reference a section

14   of the Code or what you have.

15   Q.    Did you ask him whether -- if he knew about it, did

16   you ask him whether, what about that section?  Isn't that in

17   violation of the section?

18   A.    I don't believe that I asked him that.

19   Q.    Okay.

20          MR. SPEAKMAN:  No further questions, Your Honor.

21          THE COURT:  All right.  Thank you.  Mr. Schiltz,

22   any redirect?

23               REDIRECT EXAMINATION

24   BY MR. SCHILTZ:

25   Q.    Ms. Cargnino, was there any doubt in your mind that

Hill - direct

1    Mr. Ferrese advised you that the plaintiffs could erect

2    signs in the public right-of-way of the City of Rehoboth?

3    A.    There is no doubt in my mind that he advised me that

4    signs could be placed on public property in Rehoboth.

5            MR. SCHILTZ:  Thank you very much.

6            THE COURT:  All right.  Thanks, ma'am.  You may

7    step down.

8            All right.  You had one more witness.

9            MR. SCHILTZ:  Yes, Your Honor.  Your Honor,

10    plaintiffs call Joseph Hill.

11                        - - -

12                PLAINTIFFS' TESTIMONY

13         ... JOSEPH B. HILL, having been placed

14            under oath at 12:10 p.m. as a witness, was

15            examined and testified as follows ....

16                        - - -

17                DIRECT EXAMINATION

18    BY MR. SCHILTZ:

19    Q.    Good afternoon, Mr. Hill.

20    A.    Good afternoon.

21    Q.    Could you tell me where you reside?

22    A.    42 Henlopen Avenue, Rehoboth Beach, Delaware.

23    Q.    How long have you resided in Rehoboth Beach?

24    A.    All of my life.  Sixty-one years.

25    Q.    What is your occupation?

Hill - direct

1    A.    I'm a realtor.

2    Q.    How long have you been a realtor?

3    A.    Since 1965.

4    Q.    Approximately, how many listings have you had for

5    sale or for lease during those years?

6    A.    Probably 8,000 plus, including rental units.

7    Q.    Is it your understanding that the City has

8    rights-of-way next to streets?

9    A.    Yes, I do.

10   Q.    What is your understanding of the City's

11   rights-of-way?

12   A.    It's property where you park your car.  On my street

13   on Henlopen Avenue, the City right-of-way is about 28 feet

14   from the edge of the road to the property line, to the front

15   property line.

16   Q.    Is it a consistent application throughout the City of

17   where the property line right-of-ways are?

18   A.    No, it's not.  It varies from Henlopen Avenue to

19   Columbia Avenue to Park Avenue where there are no sidewalks

20   or curbs.  The south side of Rehoboth has sidewalks and

21   curbs and so is easily defined.  On the north side of town,

22   many streets do not have the curb and sidewalk.

23   Q.    How is it defined when there is a curb and sidewalk?

24   A.    The sidewalk is maintained by the property owner but

25   it's owned by the City.

Hill - direct

1    Q.    And what about the area between the curb and the

2    sidewalk?

3    A.    City property.  Public property.

4    Q.    In your in excess of 40 years of realty work in

5    Rehoboth Beach, have you placed signs in what you believe to

6    be the City's right-of-way?

7    A.    I probably have.

8    Q.    Have you ever been asked to remove a realty sign from

9    the City's rights-of-way?

10   A.    I have not been asked to move any, no.

11   Q.    Did you ever run for political office in the City of

12   Rehoboth?

13   A.    Three years ago, I did.

14   Q.    What office?

15   A.    For City Commissioner.

16   Q.    Did you erect political signs in connection with

17   that?

18   A.    I put political signs throughout the City.

19   Q.    Can you give me a -- let me say it this way.  Did you

20   erect political signs in areas that you believed to be the

21   City's rights-of-way?

22   A.    Yes, I did.

23   Q.    Can you give me some specific examples?

24   A.    I put political signs at the entrance of State Road,

25   which is either City or State property.

Hill - direct

1           I put campaign signs at the end of each street

2      the day before the election which was City property, public

3      property.

4           I put them along at Second Street and Third

5      Street in a triangle.  I placed them on Henlopen Avenue,

6      Columbia Avenue, many streets in the City.

7      Q.    Again, were any of those signs removed by the City?

8      A.    No, not to my knowledge they were not.

9           MR. SCHILTZ:  Briefly, Your Honor, I'm going to

10     mark a few exhibits.

11          THE COURT:  While you do that, I'm going to ask

12     a question or two myself.

13          Mr. Hill, you've lived in the City I think you

14     said your entire life; is that correct?

15          THE WITNESS:  Yes.

16          THE COURT:  Is it fair to say you've noticed

17     over the course of the decade how election signs come up and

18     go down at or around the time of elections?

19          THE WITNESS:  Yes.

20          THE COURT:  You testified about your own

21     experience with the signs that you put up for your election

22     or when you ran for office.  Was that experience consistent

23     with what you had seen take place with political signs in

24     the past or was it inconsistent?

25          THE WITNESS:  If it's what I saw in the past,

Hill - direct

1    there has not been a problem with political signs in the

2    past.

3             THE COURT:  When you say there hasn't been a

4    problem, are you telling me that in your years there with

5    the City, have you seen political signs at election time put

6    between the sidewalk and the curb, for example?

7             THE WITNESS:  Yes.

8             THE COURT:  Off the streets and they stayed

9    there throughout the election season?

10             THE WITNESS:  Yes, they have.

11             THE COURT:  Go ahead, Mr. Schiltz.

12             I'm going to ask an additional question.

13             Was there ever a time in your experience, living

14    in Rehoboth throughout this period, where you noticed that

15    political signs placed in locations like that were removed

16    or taken away by the City?

17             THE WITNESS:  No.

18             THE COURT:  All right.

19             MR. SCHILTZ:  May I approach?

20             THE COURT:  You may freely approach.

21             (Documents passed forward.)

22             MR. SCHILTZ:  I'm handing the witness what has

23    been marked as Exhibit 10.

24             THE COURT:  Have these been shown to opposing

25    counsel?

Hill - direct

1          MR. SCHILTZ:  Your Honor, the answer is yes,

2     they were attached to our application for relief, but I am

3     happy to show them right now.

4          THE COURT:  Would you, please.

5          (Counsel confer.)

6     BY MR. SCHILTZ:

7     Q.     Mr. Hill, can you tell me what Plaintiffs' Exhibit 10

8     is?

9     A.     Three political signs in the Schoolview Development

10     that is on Bay Road and I believe it's New Castle Street

11     Extended.

12     Q.     Sir, you submitted an affidavit in connection with

13     this which states that intersection is at State Road and Lee

14     Street?

15     A.     Lee Street, that's correct.

16     Q.     Is it?  Which one is it?

17     A.     It's Lee Street.  The streets are close together, one

18     block away from each other.

19     Q.     Now I'm confused.  Where is that picture taken?

20     A.     I believe it's at Bay Road and New Castle Street

21     Extended.

22     Q.     How do you -- that is a picture.  Were you present

23     when that picture was taken?

24     A.     Yes, I was.

25     Q.     Does that picture fairly and accurately portray the

Hill - direct

1    scenes at that intersection at that time?

2    A.    Yes.

3    Q.    And what date was that picture taken?

4    A.    Oh, I believe it was a week ago, Thursday.

5    Q.    And in your affidavit, you said it was either July

6    18th or July 20th.  Would that be accurate?

7    A.    Yes.

8    Q.    Sir, I'm asking you to look under the sign in the

9    middle, the Sam Cooper sign.  Do you see that?

10   A.    Yes.

11   Q.    Do you see immediately behind the Sam Cooper sign?

12   Well, strike that.  Is there something immediately behind

13   the Sam Cooper sign?

14   A.    There is the telephone pole there.

15   Q.    And do you recall that telephone pole being there

16   when you took -- when this picture was taken?

17   A.    Yes.

18              THE COURT:  Do you want to move the admission of

19   this picture?

20              MR. SCHILTZ:  Yes, Your Honor.

21              MR. RHODUNDA:  We're not going to object.  I

22   don't know how many they intend to produce but if they could

23   do it as a package to speed this up?  I understand they're

24   going to submit these.  We're going to certainly contest all

25   of them, and we'll do them one by one, ourselves.

Hill - direct

1          THE COURT:  When you say you will contest them?

2          MR. RHODUNDA:  Well, contest what these pictures

3   stand for because the photograph says something Mr. Hill has

4   his opinion on what they mean and how long they were in

5   existence.

6          THE COURT:  Sure.  But as to their

7   admissibility?

8          MR. RHODUNDA:  But not the foundation, no.  I

9   have no foundation objections to it.  He says she took them

10  on July 18th or 20th.  We accept these pictures represent

11  what these photographs show.

12         THE COURT:  Okay.  Go ahead.  And why don't you

13  save us some time here by listing them out and we've move

14  them in.

15         MR. SCHILTZ:  That is fine, too, Your Honor.

16         MR. RHODUNDA:  It would be easier, however, if

17  you would keep them as part of the package submitted to the

18  Court.  They're submitted as Plaintiffs' Memorandum in

19  Support of the Motion For TRO.

20         THE COURT:  Well, I disagree.  It will help me

21  if they're listed one at a time.

22         MR. RHODUNDA:  Okay.

23         THE COURT:  Because evidently there is going to

24  be some question about what these things show.  You said you

25  are going to dispute it, so it doesn't help me to say the

Hill - direct

1    third photograph in on exhibit whatever.  We're going to

2    mark them and you can make the arguments; all right?

3                (Mr. Rhodunda sits down.)

4                MR. SCHILTZ:  While I'm engaged in this

5    exercise, sir --

6                THE COURT:  Yes.  Can one of your colleagues

7    help you out with this so you can be asking questions?

8                MR. SCHILTZ:  Yes.

9                THE COURT:  Mr. Schiltz?

10   BY MR. SCHILTZ:

11   Q.    Let me direct your attention to what is going to be

12   marked as Plaintiffs' Exhibit 25.

13               MR. SCHILTZ:  Again, Your Honor, this is a

14   picture I do not have a copy of.  And I apologize for that.

15   BY MR. SCHILTZ:

16   Q.    Can you identify what Plaintiffs' Exhibit 25 is?

17   A.    This picture is the two political signs in front of

18   Henry DeWitt's residence on Columbia Avenue and Dover Street

19   and he is a City Commissioner.

20   Q.    Mr. DeWitt is a City Commissioner?

21   A.    Yes.

22   Q.    What does that picture portray?  The judge doesn't

23   have a copy.

24   A.    It portrays political signs on public property.

25   Q.    Can you describe these signs in relation?  Is there a

97

Hill - direct

1  fire hydrant in the picture?

2  A.    There is a fire hydrant to the left of the Barbour

3  political sign, and there is a street sign behind it on a

4  silver post.

5  Q.    Are the political signs in front of or behind the

6  fire hydrant?

7  A.    They are in front of.

8  Q.    Are the political signs in front of or behind the

9  stop sign?

10  A.    They are in front of the stop sign.

11  Q.    Did you take that picture?

12  A.    I took this picture.

13        MR. SCHILTZ:  I move this picture, Your Honor,

14  Plaintiffs' Exhibit 25.

15        MR. RHODUNDA:  No objection, Your Honor.

16        THE COURT:  It is admitted without objection.

17  *    *    *  (Plaintiffs' Exhibit No. 25 was received into

18  evidence.)

19  BY MR. RHODUNDA:

20  Q.    Mr. Hill, I'm going to hand you what has been

21  previously marked as Plaintiffs' Exhibits 12 through 24.

22        THE COURT:  Did you already offer 11?

23        MR. SCHILTZ:  I believe I did, Your Honor.  If I

24  didn't move the admission of Plaintiffs' Exhibit 11 -- I

25  believe we did.

Hill - direct

1          THE COURT:  I understand it's without objection.

2          MR. RHODUNDA:  No objection.

3          THE COURT:  It's in.

4     *    *    *  (Plaintiffs' Exhibit No. 11 was received into

5     evidence.)

6     BY MR. RHODUNDA:

7     Q.    Mr. Hill, can you tell me -- and I'm sorry to back

8     up.  Plaintiffs' Exhibit 25 that we referred to a moment

9     ago, we've now given the judge, can you tell me when you

10    took that picture?

11    A.    It's been about two weeks ago, I believe.

12          THE COURT:  Now, before you go on, I interrupt

13    you before you asked any questions about 11, and I would

14    like to know where this is.  Where is this?

15          THE WITNESS:  This is on State Road on the west

16    side of the street going out of town.

17          THE COURT:  Thanks a lot.  All right.  Thanks.

18          THE WITNESS:  It's about a block and-a-half from

19    Rehoboth Avenue.

20          THE COURT:  Thank you.

21          Okay.  Mr. Schiltz, I'm going to ask you to put

22    with the whole stack in front of him and have him give

23    locations with exhibit numbers; all right?  And if there is

24    something like a phone pole that is not immediately evident,

25    you can go ahead and point it out, but now we're to the

Hill - direct

1    point I have to move you through it.

2                    MR. SCHILTZ:  I understand, Your Honor.

3    BY MR. SCHILTZ:

4    Q.      Can you look at Plaintiffs' Exhibit 12?

5    A.      Yes.

6    Q.      Were you present when that photograph was taken?

7    A.      Yes.

8    Q.      Can you tell me where it was taken?  Where that

9    location is?

10   A.      I believe it's on Henlopen Avenue.  It's not on

11   Henlopen.  I'm not exactly sure.

12   Q.      Is it within the City of Rehoboth?

13   A.      Yes, it is.

14   Q.      Okay.  Look at Plaintiffs' Exhibit 13.  Can you

15   identify where that is located?

16                   THE COURT:  Mr. Rhodunda?

17   A.      It's in the City of Rehoboth.

18                   MR. RHODUNDA:  Can you show them to me as you

19   are going through them?

20                   MR. SCHILTZ:  (Showing photograph.)

21                   MR. RHODUNDA:  Thank you.

22   BY MR. SCHILTZ:

23   Q.      And this is a loan Dennis Barbour signed; is that

24   correct?

25   A.      Yes.

Hill - direct

1  Q.    And where --

2  A.    It's in the City of Rehoboth.  I'm not exactly sure

3  what street.

4  Q.    In your affidavit, you said it was on the south side

5  of Sixth Street; is that accurate?

6  A.    Yes.

7  Q.    Turning to Plaintiffs' Exhibit 14 --

8          THE COURT:  Is the set you gave to Mr. Rhodunda

9  marked?

10         MR. SCHILTZ:  No, Your Honor.

11         THE COURT:  Then you are going to need to make

12  sure you show him as you are doing it so they know the ones

13  you are asking about.

14         MR. SCHILTZ:  We will.  Fourteen (Indicating.)

15         MR. RHODUNDA:  Thank you.

16         MR. SCHILTZ:  I gave it to them in order.

17         THE COURT:  Fine.  Still show it to him.

18         MR. SCHILTZ:  I certainly understand, Your

19  Honor.

20         THE COURT:  Thanks.

21  BY MR. SCHILTZ:

22  Q.    Can you identify where Plaintiffs' Exhibit 14 is?

23  A.    This is at the corner of Bay Road and State Road.

24  Q.    In your affidavit, you said it's at the intersection

25  of New Castle Street Extension and Bay Road.  Is that