*Exhibit "A"*

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

ROBERT SOKOLOVE, DAVID MCCARTHY, )
WILLIAM SHIELDS, and CITIZENS FOR )
REHOBOTH BEACH, a political action committee,)
)
               Plaintiffs, )
)
v. )    Case No. 05-514-KAJ
)
CITY OF REHOBOTH BEACH, DELAWARE, )
and GREGORY FERRESE, individually and as )
Manager of the City of Rehoboth Beach, Delaware, )
)
               Defendants. )

## AMENDED AND SUPPLEMENTAL VERIFIED COMPLAINT

Plaintiffs Robert Sokolove, David McCarthy and William Shields were candidates for office in a August 13, 2005, election and bring this action to, among other things, enjoin and preclude defendants City of Rehoboth Beach and Gregory Ferrese from violating plaintiffs' constitutional right to free speech by enforcing a city ordinance which precludes the placement of private signs on public rights-of-way. Plaintiffs contend defendants' conduct violates plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States, the Civil Rights Act of 1971, 42 U.S.C. § 1983.

### THE PARTIES

1.    Plaintiff Robert Sokolove is a citizen of the State of Delaware who resides at 4 Norfolk Street, Rehoboth Beach, DE 19971. Mr. Sokolove unsuccessfully ran for Mayor of the City of Rehoboth Beach, Delaware in an August 13, 2005 municipal election. Mr. Sokolove will run for office again in the future and when he does he intends to erect campaign signs in Rehoboth Beach, Delaware in support of his candidacy.

2. Plaintiff David McCarthy is a citizen of the State of Delaware who resides at 30 Delaware Avenue, Rehoboth Beach, DE 19971. Mr. McCarthy unsuccessfully ran for City Commissioner in the August 13, 2005 election.

3. Plaintiff William Shields is a citizen of the State of Delaware who resides at 52 Maryland Avenue, Rehoboth Beach, DE 19971. Mr. Shields unsuccessfully ran for City Commissioner in the August 13, 2005 election.

4. Plaintiff Citizens for Rehoboth Beach is the political action committee which supports the individual plaintiffs' campaign efforts and other election related issues. Citizens for Rehoboth Beach seeks to bring about change in the City of Rehoboth Beach government and will support candidates in future elections. The support will include, but not be limited to, erecting and paying for campaign signs to be erected in the City of Rehoboth Beach, Delaware.

5. Defendant the City of Rehoboth Beach, Delaware ("City") is a municipal corporation located in Sussex County, Delaware. The City held an election on August 13, 2005. The City holds a municipal election each year.

6. Defendant Gregory Ferrese is the City Manager of Rehoboth Beach, Delaware.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343(3), 2201 and 2202.

8. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## DEFENDANTS REMOVE PLAINTIFFS' CAMPAIGN SIGNS

9. In early July, 2005, the individual plaintiffs and their representatives erected campaign signs in the City. The signs were approximately 2 feet by 2 feet, notified prospective voters that the individual plaintiffs were running for office with slogans such as "Sokolove for Mayor" and sought the voters' support on election day. Prior to erecting the signs, plaintiffs' representatives contacted Mr. Ferrese and were advised that they could place their signs on any public property in the City except in the newly renovated street scape. Mr. Ferrese further advised plaintiffs' representatives that the City would not remove signs from public property. In total, approximately 100 campaign signs were erected in the City.

10. The campaign signs were placed on the private property of the individual plaintiffs and their supporters as well as on public property and rights-of-way adjacent to streets and sidewalks. The signs erected on public property and rights-of-way were placed near the signs of other candidates in the August 13 election, including Samuel Cooper, the current Mayor of Rehoboth Beach. The City has allowed numerous other signs, including its own convention center sign promoting commercial activities in the center as well as signs for other candidates, commercial establishments, community organizations, and neighborhoods, to be erected and maintained in the public rights-of-way.

11. On or about the early morning of July 9, 2005, representatives of the City's Building and Licensing department removed a significant number of plaintiffs' campaign signs. Plaintiffs' signs were singled out for removal as other candidates' campaign signs, including those of incumbent Mayor Cooper, and other commercial/community signs which were next to plaintiffs' signs on the public rights-of-way, were not removed by the City's Building and Licensing department.

12. Within hours of their removal, Joseph Hill, a supporter of the individual plaintiffs and Citizens for Rehoboth Beach, was notified that the removed campaign signs were in a vehicle owned by the City's Building and Licensing department and that the vehicle was parked at that department's office. He contacted City police to investigate the matter. In relevant part, the investigating officer's report provides:

> On 7/09/05 at approx. 1120 hrs. I was dispatched to the parking lot by the Building and Licensing office in reference to a complaint of political campaign sign placed in the back of a City of Rehoboth Beach vehicle belonging to the Building and Licensing office.
>
> Upon arrival, I contacted Joe Hill. He advised that the signs should not have been picked up. He advised that he had already tried to speak with the city manager, Greg Ferrese; however, he was busy. I advised him that I would speak to Mr. Ferrese about the matter. Hill advised that he was going to take pictures of the signs in the back of the vehicle.
>
> I spoke with Mr. Ferrese at approximately 1130 hrs., and he advised that the signs should not have been picked up, and he did not know why they had been. I had taken two Polaroid photos of the signs that were in the back of the vehicle, and Mr. Ferrese held on to them.

(Copy of police report attached as Exhibit A).

13. Two or three hours after his campaign signs were discovered in a Building and Licensing vehicle, plaintiff Robert Sokolove retrieved his signs and replaced them in the community. Like before, he placed his campaign signs on private property and in the rights-of-way adjacent to streets and sidewalks. Mr. Sokolove placed one of his signs in a flower pot that is owned and maintained by the restaurant he owns and operates in the City.

14. Before midnight on July 9, 2005, plaintiffs' campaign signs, including the sign in the flower pot in front of Mr. Sokolove's restaurant, had again been removed. Mr. Sokolove's valet parking attendants advised him that an employee of the City's Building and Licensing department had removed the signs. Mr. Sokolove immediately went to the Building and

Licensing department where he found A. Walter Onizuk, a department employee, who said that Mr. Ferrese, acting through Dave Murphy, the head of the City's Building and Licensing department, had directed Mr. Onizuk to remove the signs.

### DEFENDANTS APPRAISED PLAINTIFFS THEY COULD BE FINED AND CONFIRM THAT THEY WILL CONTINUE TO REMOVE PLAINTIFFS' CAMPAIGN SIGNS

15.     Following the second removal of their signs, plaintiffs contacted their attorneys about the matter. On July 11, 2005, plaintiffs' counsel wrote the City Manager (with a copy to the City Solicitor) requesting that the photographs of the removed signs taken by the police be returned to the investigation file. On July 13, 2005, having received no confirmation of the return of the photographs and after learning that Mr. Ferrese had ordered City employees to remove all of plaintiffs' campaign signs from public property despite his prior advice to the contrary, plaintiffs' counsel again wrote the City Manager (with a copy to the City Solicitor) asking for an explanation of why plaintiffs' campaign signs were removed and advising defendants that such removal violates the United States Constitution. Counsel's letter requested a response from defendants, but defendants have yet to respond to the July 13, 2005 letter.

16.     Plaintiffs did speak to Officer Scott O'Bier of the City's police department about replacing the twice-removed signs. Officer O'Bier appraised plaintiffs that if they did replace signs in an area the City considered improper, such persons could be fined up to $500.

17.     Prior to commencing this suit, counsel for plaintiffs again contacted the City to determine if the City intended to remove any campaign sign plaintiffs replaced. Counsel for the City indicated that City Ordinance § 74-16 gave the City the right to remove plaintiffs' campaign signs from the public rights-of-way and that if such signs were replaced, they would be removed.

18. City Ordinance § 74-16 provides that "No person shall, keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city."

19. The plaintiffs campaign signs that defendants removed were erected on private property and public right-of-ways within the City. Although other candidates' signs and other private signs were standing in the public right-of-way at the time the defendants removed plaintiffs' campaign signs, the other campaign signs and private signs were not removed.

20. Historically, the City has not attempted to enforce § 74-16 with respect to campaign signs and has not removed such signs from City property and rights-of-way in the past.

### DEFENDANTS SELECTIVELY ENFORCE THE ORDINANCE IN A MANNER THAT IS NOT CONSISTENT WITH ITS TERMS

21. On the rare occasions defendants do enforce the Ordinance, they do not enforce it in accordance with its terms. Rather, they ignore its express language and instead apply their own "rules of thumb" to determine whether or not a sign should be removed. The "rules of thumb" depend on whether the area has curbs, sidewalks, utility poles and landscaping ties. Specifically, defendants ignore where the public right-of-way actually starts and stops and apply the following criteria:

- if there is a curb and sidewalk, then defendants' "rule of thumb" is to remove any sign between the curb and the far side of the sidewalk;

- if there is no curb and sidewalk but there is a utility pole, then defendants' "rule of thumb" is to remove any sign between the street and the utility pole while signs behind the utility pole are left standing;

- if there is not curb or sidewalk and no utility pole, then defendants' "rule of thumb" is to remove any sign between the street and landscaping ties while signs behind the landscaping ties are left standing; and

- if there is no curb or sidewalk, utility pole or landscaping tie, then defendants' "rule of thumb" is to leave the sign standing regardless of whether or not it is on the public right-of-way.

22. Even defendants "rules of thumb" have exceptions as certain private signs - Art League signs and signs for other long standing and preferred groups in the City - are left standing even though they violate the Ordinance. Moreover, defendants do not apply their "rules of thumb" against certain signs - those erected by realtors and contractors - until after the person raising the sign is first contacted and given an opportunity to remove the non-conforming sign.

23. Plaintiffs sought to preliminarily enjoin defendants' selective enforcement of the Ordinance. In its opinion addressing plaintiffs' application, the Court stated:

> [T]he City has applied the Ordinance in an arbitrary and therefore unconstitutional manner. Indeed, the evidence at this stage is overwhelming that the City has not applied the Ordinance according to its terms. It is unrebutted that the City sometimes allows political signs on public rights-of-way . . . .
>
> How far back from a road a sign must be before the City will accept it as appropriately placed, which side of the sidewalk a sign can be placed on, whether signs must be behind an imaginary boundary marked by the line of utility poles when there is no sidewalk, whether landscaping ties are a permissible boundary are a permissible boundary for determining the placement of signs, whether signs for other non-profit organizations, like the community arts league, are permissible -- all these questions are, it seems, answered by unwritten "rules of thumb" that only the City's cognoscenti know. That may be a satisfactory way of doing business as long as no one objects. But it is not a constitutionally valid way of doing business . . . and the day that someone would object should have been foreseen.

<u>Sokolove v. City of Rehoboth Beach</u>, C.A. No. 05-514 (KAJ) (D. Del. July 28, 2005) (Memorandum Opinion at 15-16).

## DEFENDANTS CONTINUE TO SELECTIVELY ENFORCE THE ORDINANCE

24. Defendants have continued to selectively enforce the Ordinance. In the weeks since the election and the issuance of the Court's July 28 opinion, defendants have taken no steps to remove numerous private signs erected in the public right-of-way.

25. The Art League signs, the Village Improvement Association sign and the sign for the Oak Grove Trailer Park remain standing. All of these signs are erected in the public right-of-way.

26. In the weeks following the election, defendants also have failed to remove numerous other private signs from the public right-of-way. In particular, realtor signs and contractor signs remain erected on public right-of-way for weeks and defendants take no steps to remove them.

## PLAINTIFFS ARE FACED WITH IRREPARABLE HARM

27. Plaintiffs will either run for office or support candidates running for office in upcoming municipal elections. Plaintiffs will pay for and/or erect campaign signs in connection with such municipal elections and, on information and belief, some of the campaign signs plaintiffs erect will be on public property or public right-of-way.

28. Any enforcement of the constitutionally invalid Ordinance during future municipal elections will deprive plaintiffs of their constitutionally protected rights.

29. Selective enforcement of the Ordinance in accordance with defendants' "rules of thumb" during future municipal elections will deprive plaintiffs of their constitutionally protected rights.

30. A fully informed, knowledgeable electorate is necessary to the proper functioning of a democratic society. To avoid imposing irreparable injury on plaintiffs and to avoid having less than fully informed and unknowledgeable voters, defendants must be enjoined from any further attempts to enforce the Ordinance and/or their constitutionally invalid "rules of thumb."

31. Plaintiffs have no adequate remedy at law.

## COUNT I
## VIOLATION OF CONSTITUTIONAL RIGHTS

32. Plaintiffs restate and reallege each of the foregoing paragraphs as if fully set forth herein.

33. Plaintiffs right to engage in free speech, including the right to erect campaign signs in the City, is protected by the First Amendment to the Constitution of the United States of America.

34. Defendants are bound by the Fourteenth Amendment to the Constitution of the United States of America to uphold the First Amendment to the Constitution of the United States of America.

35. Defendants have deprived plaintiffs of their right to engage in free speech by activities including, but not limited to:

(a) adopting City Ordinance § 74-16, a Constitutionally invalid, content-based ordinance which impermissibly restricts plaintiffs' right to engage in free speech;

(b) selectively removing plaintiffs' campaign signs from private property located within the City;

(c) selectively removing plaintiffs' campaign signs from public rights-of-way located within the City;

(d) enforcing City Ordinance § 74-16 in a Constitutionally impermissible selective and discriminatory manner; and

(e) threatening plaintiffs with unlawful citation and fines for placing campaign signs in the City.

36. Plaintiffs have advised defendants that they are violating plaintiffs' rights. Defendants have failed to cease their unlawful conduct and demonstrated their intent to continue to violate plaintiffs' rights by selectively enforcing the Ordinance.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983

37. Plaintiffs restate and reallege each of the foregoing paragraphs as if fully set forth herein.

38. The Ordinance is an constitutionally impermissible content-based restriction on free speech.

39. The defendants' "rules of thumb" are not consistent with the express language of the Ordinance. The enforcement of the Ordinance in accordance with defendants' "rules of thumb" results in defendants removing some private signs which violate the Ordinance while leaving other signs which violate the Ordinance standing.

40. Mr. Ferrese acted in his capacity as the manager of the City and instructed employees of the Building and Licensing department to remove signs in accordance with the selective "rules of thumb."

41. Plaintiffs' were deprived of their constitutional right to free speech as a result of the adoption of the Ordinance and the adoption and application of defendants' "rules of thumb."

WHEREFORE, plaintiffs respectfully request that the Court enter an order:

(a) temporarily, preliminarily and permanently enjoining defendants from enforcing the Ordinance;

(b) temporarily, preliminarily and permanently enjoining defendants from selectively enforcing the Ordinance by removing some, but not all, private signs from public rights-of-way located in the City;

(c) temporarily, preliminarily and permanently enjoining defendants from prohibiting, restricting or otherwise restraining plaintiffs from gaining name recognition in connection with municipal elections;

(d) requiring defendants to return to plaintiffs any of plaintiffs' campaign signs that defendants removed from any property located within the City;

(e) awarding plaintiffs nominal damages for defendants' violations of their constitutional rights;

(f) awarding plaintiffs compensatory damages in an amount to be determined at trial;

(g) awarding plaintiffs punitive damages in an amount to be determined at trial;

(h) awarding plaintiffs their attorneys and expert fees and costs; and

(i) awarding such other relief as the Court deems just and appropriate.

---

Shawn P. Tucker, Esq. (#3326)
Todd C. Schiltz. Esq. (#3253)
Wolf Block Schorr and Solis-Cohen LLP
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312
Attorneys for Plaintiffs

## **VERIFICATION**

I, Robert Sokolove, having been duly sworn according to law, verify that I have reviewed the attached Verified Complaint and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information and belief.

_____
Robert Sokolove

Sworn and Subscribed before me
this \_\_\_\_ day of _____, 2005

_____
Notary Public