**Page**

TABLE OF AUTHORITIES ............................................................................................ ii

NATURE AND STAGE OF PROCEEDINGS .......................................................... 1

QUESTIONS PRESENTED................................................................................... 2

STATEMENT OF FACTS ..................................................................................... 3

      A.     The Parties ......................................................................................... 3

      B.     The City Has Enforced The Ordinance In An Arbitrary And Selective
            Manner ............................................................................................... 4

      C.     The 2005 Election .............................................................................. 9

      D.     The City Continues To Selectively Enforce The Ordinance ................. 12

ARGUMENT ....................................................................................................... 15

I.     The First Amendment Precludes Selective Enforcement Of The Ordinance ............ 15

II.    Defendants Violated Plaintiffs' Constitutional Rights By Selectively Enforcing
       The Ordinance During The 2005 Municipal Election ....................................... 16

III.   Defendants' Continued Selective Enforcement Of The Ordinance Must Be
       Enjoined .......................................................................................................... 17

CONCLUSION.................................................................................................... 19

**Page**

<u>Cases</u>

<u>City of Ladue v. Gilleo</u>
   512 U.S. 43, 48 (1994) .......................................................................... 15

<u>Elrod v. Burns</u>
   427 U.S. 347, 373 (1976) ...................................................................... 18

<u>Holder v. City of Allentown</u>
   987 F.2d 188, 197 (3d Cir. 1993) ............................................. 15, 17, 18

<u>Lawson v. City of Kankakee, Illinois</u>
   81 F. Supp.2d 930, 935-36 (C.D. Ill. 2000) ..................................... 17, 18

<u>Lovell v. Griffin</u>
   303 U.S. 444, 450 (1938) ...................................................................... 15

<u>Sokolove v. City of Rehoboth Beach</u>
   C.A. No. 05-514 (KAJ) (D. Del. July 28, 2005) ............................. 11, 17

<u>Thomas v. County of Los Angeles</u>
   978 F.2d 504, 508 (9th Cir. 1992) ........................................................ 19

On July 21, 2005, plaintiffs Robert Sokolove, David McCarthy, William Shields and Citizens for Rehoboth Beach filed suit against defendants City of Rehoboth Beach, Delaware ("City") and Gregory Ferrese, the manager of the City.  Plaintiffs' verified complaint alleged that City Ordinance § 74-16 ("Ordinance"), which precludes the erection of private signs on public property and rights-of-way but permits the erection of non-private - i.e., governmental - signs on public property and rights-of-way, is unconstitutional on its face and as applied by defendants.

The Court held a hearing on July 26, 2005 to address plaintiffs' request for preliminary injunctive relief.  In a July 28, 2005, Memorandum Order, this Court held, among other things, that the evidence overwhelmingly demonstrated that defendants had not applied the Ordinance according to its terms and that defendants' enforcement of the Ordinance against plaintiffs was constitutionally invalid.

On October 18, 2005, plaintiffs filed a Motion for Partial Summary Judgment seeking an Order declaring that: (i) defendants violated plaintiffs' constitutional rights by selectively enforcing the Ordinance during the City's 2005 municipal election, (ii) defendants' selective enforcement of the Ordinance has continued subsequent to the election, and (iii) defendants' continued selective enforcement must be permanently enjoined.  This is Plaintiffs' Opening Brief In Support Of Their Motion For Partial Summary Judgment.

I.      Did defendants violate plaintiffs' constitutional rights by selectively enforcing the

Ordinance during the City's 2005 municipal election?

II.     Have the defendants continued to violate the Constitution by selectively enforcing the

Ordinance after the City's 2005 municipal election?

III.    Should the defendants be permanently enjoined from selectively enforcing the

Ordinance?

## A.    The Parties

Plaintiff Robert Sokolove is a resident of the City of Rehoboth Beach, Delaware and ran

for mayor of the City in the August 13, 2005 municipal election. Mr. Sokolove's opponent was

Mayor Samuel Cooper, a fifteen year incumbent. (Hearing Tr. at 5). Mr. Sokolove was defeated

in the 2005 election; however, he intends to run for office in a future municipal election.

(Second Sokolove Aff. ¶ 2).

Plaintiffs David McCarthy and William Shields ran for the two City Commissioner seats

which were up for election. Mr. McCarthy and Mr. Shields were running against two candidates

who endorsed Mayor Cooper and ran on his platform. (Hearing Tr. at 6-8).

---

[1]    References to "Hearing Tr. at __" refer to page numbers from the transcript of the July
26, 2005 preliminary injunction hearing in this matter. Reference to "Plaintiffs' Ex. _"
and "Defendants' Ex. __" refer to exhibits introduced by plaintiffs and defendants,
respectively, at the July 26, 2005 preliminary injunction hearing. References to "Onizuk
Dep. at" and "Murphy Dep. at" respectively refer to specific pages of the deposition
transcripts of Alexander Onizuk and David Murphy. A copy of July 26, 2005 hearing
transcript, the exhibits introduced at the July 26, 2005 preliminary injunction hearing and
the depositions of Messrs. Onizuk and Murphy are attached to Plaintiffs Exhibits Cited
In Support Of Their Motion For Partial Summary Judgment filed contemporaneously
herewith.

References to "Second Sokolove Aff. ¶ __" refer to the October 17, 2005, Second
Affidavit of Robert Sokolove filed contemporaneously herewith. References to "Sterl
Aff. ¶ _" refer to the October 17, 2005 Affidavit of Scott W. Sterl filed
contemporaneously herewith. References to "Answer ¶ _" refer to specific paragraphs of
defendants' answer to the verified complaint. (D.I. 23).

individual plaintiffs' campaign efforts and generally seeks to bring about change in City government. In the future, Citizens for Rehoboth Beach will support political candidates for office in City government. It will erect and/or pay for campaign signs supporting such candidates. (Second Sokolove Aff. ¶ 3).

Defendant City of Rehoboth Beach, Delaware is a municipal corporation located in Sussex County, Delaware. The City conducted an election on August 13, 2005. Defendant Gregory Ferrese is the current City Manager for the City of Rehoboth. Mr. Ferrese has held the position as City Manager since 1983. (Answer ¶ ¶ 5-6, Hearing Tr. at 114).

**B.    The City Has Enforced The Ordinance In An Arbitrary And Selective Manner**

City Ordinance § 74-16 provides that "No person shall, keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city." (Plaintiffs' Ex. 7).

The record demonstrates that the City has not enforced the Ordinance as written and, instead, has selectively enforced the Ordinance by applying "rules of thumb" as its enforcement policy. The arbitrary "rules of thumb" bear no relation to the language of the Ordinance, are unwritten and known only to select City insiders and their enforcement results in the removal of some, but not all, private signs from public property and rights-of-way.

Alexander Onizuk, the City's Code Enforcement officer and the individual responsible for removing signs that purportedly do not comply with the Ordinance, described the manner in which the City enforces the Ordinance as follows:

related to determining where the public property ends or the right-of-way ends and the private property starts.

> A:     We normally went by the sidewalk. Anything after the sidewalk is public property.
>
> Q:     And if there is no sidewalk and there is a utility pole, how do you use the utility pole to determine that?
>
> A:     Well, the utility pole is on the easement. It is not on private property. And you can tell anything past the utility pole is private property.
>
> Q:     Do you ever do any enforcement action on the backside of a telephone pole?
>
> A:     No, I would not.
>
>                *      *      *
>
> Q:     Let me ask the question. It is important. What do you do in that instance? What do you do in an instance where there is a street, there is no utility poles, and no sidewalks.
>
> A:     Then I would say I am going to leave those signs alone. They might be on somebody's private property.
>
> Q:     You would not remove those signs?
>
> A:     I would not remove them. If I have any doubt, I won't touch them.

(Onizuk Dep. at 6-7, 80, 84).

Mr. Ferrese, the City Manager, confirmed that this is how the City enforces the

Ordinance:

> Q:     Now is there a policy about how you determine City property in the right of way?
>
> A:     Between the sidewalk and curb. Where there is no sidewalk and curb, we use the utility pole.
>
>                *      *      *

for indicating whether its private property and public right of way?

A:      As long as they're in line with the utility pole or behind the utility pole, we will not touch the signs at all. We will not remove them. These are the instructions.

*        *        *

Q:      Exhibit 14 has a Dennis Barbour and Ron Patterson sign on it. Did you visit that location?

A:      Yes.

Q:      And what did you find at that location?

A:      I found that the Barbour sign was moved to behind the property line and that the Patterson sign is in line with the telephone pole on Lee Street.

Q:      So now they're legally conforming signs?

A:      They're legally conforming signs. Our intent all along is to be as lenient as possible on signs, but we do have an ordinance against it. And as I stated earlier, we just do not permit them in the public right-of-way or on City-owned property, but we try to be as lenient as we can.

Q:      Now, Exhibit 15 has two Barbour signs and one Patterson?

A:      And we wouldn't remove the signs because they're behind the parking space. You can see the landscaping tie there and there is a parking space right in front of it. When you park your car there, you wouldn't even see the signs so we wouldn't touch them.

*        *        *

Q:      Mr. Ferrese, you had previously indicate that the rule of thumb the City followed regarding the signs and trying to determine the right-of-way areas which are right along the roadways and I believe you indicated that between the curb and sidewalk was a right-of-way area and also between the telephone pole and the roadway. What is the City's policy if you have a questionable situation because there happens to not be a telephone pole or sidewalk to engage the decision by?

A;      Well, where there isn't a telephone, a utility pole, then we use the parking space, on the other side of the parking space . . . . But as I said earlier, we try to be fair. So what do we use? We use the utility poles. And if there isn't any, we use the parking spaces.

Q:    Now, you articulated that this policy about the utility pole, you articulated a policy about sidewalks. You also mentioned a policy about parking spots. Where can I find that in writing?

A:    That's a policy between me and the departments. The City Ordinance clearly states that you are not allowed to have them in the right-of-way. And as I testified earlier, we are very lenient. The right-of-way on a lot of our streets is very long. So we've come up with a policy years ago. It is not in writing, sir.

*      *      *

Q:    And when there is no utility pole and there is no sidewalk, what does somebody do then?

A:    Well, when there is no utility pole and no sidewalk, usually the property line does come, the property line of the owner comes to the street. But I said earlier that we use parking spaces as the right-of-way. Remember I told you earlier the parking space, there is a landscape tie or whatever. That's the other side of the parking space and I told you earlier we try to be as lenient as possible.

    If we wanted to be stringent, Mr. Tucker, we could go all the way back to the property line which would be 30 feet from the sign, you would never see the sign, but we are trying to be as cooperative as possible.

(Hearing Tr. at 116, 119-21, 128-29, 147-48, 150-51; Plaintiffs Ex. 14, 15; see also Hearing Tr. at 44-46).

    Mr. Ferrese and David Murphy, the City's Building Inspector, both recognized that the City's arbitrary "rule of thumb" policy results in the City removing some signs that violate the Ordinance but leaving in place other non-complying signs.

Q:    Okay. Let me try again. You have a public right-of-way. Let's say it is 10 feet wide, hypothetically. Okay?

A:    Yes.

Q:    There is a utility pole that is five feet into that public right-of-way. It's possible; right?

A:    Yes, its possible.

A:    It's possible.

Q:    Okay. Somebody puts their sign up behind the utility pole, okay? Maybe a foot behind it; right?

A:    Yes.

Q:    It's still in the public right of way?

A:    Yes, sir.

Q:    But  you are not going to remove it?

A:    Right.

Q:    And unless somebody knows about your policy, if they put a sign up on the other side of that utility pole, theirs is going to get removed but somebody's else's isn't?

A:    That's right, sir.

Q:    Even though they are both in the public right-of-way?

A:    Yes, sir.  It exists today.

(Hearing Tr. at 150-51).


Q:    If I was running for office, Mr. Murphy, and I put a sign up behind a utility pole, and that utility pole was in the center of the public right-of-way, not on the edge of the public right-of-way, I can have a sign in the public right-of-way but you wouldn't remove it, correct?

A:    I wouldn't take it out from behind the utility pole.  And my officer has been instructed not to remove signs behind utility lines.  That is a grace period that -- area that we have given because, again, some of these pole lines are right at the front edge of property lines, and I'm not going to try and a lot of times decide what is right and what is wrong, location.

(Murphy Dep. at 23-24).


Notably, even the arbitrary "rule of thumb" policy has not been applied in a consistent

manner.  Realtors with thousands of listings have placed their signs in public rights-of-way and

in public right-of-way and their signs were not removed.  (Hearing Tr. at 89-92, 111-12, 116).

C.    **The 2005 Election**

The City scheduled its 2005 municipal election for August 13, 2005.  The open seats included mayor and two City Commissioner positions.  Plaintiffs Sokolove, McCarthy and Shields decided to run for these offices.

To promote their candidacies, plaintiffs decided to erect campaign signs.  Plaintiffs heard rumors that City sanitation workers were removing campaign signs so they had their lawyer, Melissa Cargnino, call Mr. Ferrese to determine where, if anywhere, the City deemed it inappropriate to place campaign signs.  Mr. Ferrese advised Ms. Cargnino that the only place that the City asked candidates not to erect signs was down the middle of Rehoboth Avenue.  (Hearing Tr. at 5-6, 12-14, 80-88).

In accordance with the advice received from Mr. Ferrese, on or about July 5, 2005, Mr. Sokolove erected numerous campaign signs across the City.  These signs promoted the candidacies of the three individual plaintiffs.  Mr. Sokolove erected signs on private property, public property and the public right-of-way.  (Plaintiffs' Ex. 1, 2; Hearing Tr. at 5-6, 8-9).

Prior to 11:00 a.m. on July 9, 2005, many of plaintiffs' campaign signs were removed from public property and rights-of-way by City employees.  After the signs were found in the back bed of a City truck, Mr. Sokolove retrieved them and replaced them in the community before 4:00 p.m. on July 9.  Between 6:00 p.m. and 11:30 p.m. on July 9, plaintiffs' campaign signs were again removed from the public right-of-way by City employees.  Approximately thirty-five signs were removed during this period.  (Plaintiffs' Ex. 1, 2, 4a, 4b, 4c, 4d, 4e and 26;

36). When a police officer contacted Mr. Ferrese about the removal of the signs, he advised her that "the signs should not have been picked up, and he did not know why they had been." (Plaintiffs' Ex. 5).

While plaintiffs' campaign signs were removed from the public-right-of-way on two separate occasions, campaign signs erected in the public right-of-way endorsing Mayor Cooper and candidates supporting him were not removed. (Hearing Tr. at 23-26, 93-101, 104-06, 140-42; Plaintiffs Ex. 10, 11, 12, 13, 14, 15, 25; Murphy Dep. at 40-42, 48-49, 53). Likewise, the City left standing various other private signs, all of which are erected on public property or right-of-way. (Hearing Tr. 101-04, 153-55; Plaintiffs' Ex. 17, 18, 19, 20, 21, 22, 23, 24).

When questioned, defendants pointed to the Ordinance as the basis for the removal of plaintiffs' campaign signs. (Hearing Tr. at 42-44). Although other candidates signs were not removed because their placement purportedly conformed with defendants' "rules of thumb," (Hearing Tr. at 119-23; Onizuk Dep. at 49-52; Murphy Dep. at 42-43, 79, 89), the record refutes any claim that other candidates signs were not removed because they were erected in compliance with the "rules of thumb." Indeed, even when other candidates' campaign signs violated defendants' "rules of thumb," such signs were not removed. (See, e.g., Plaintiffs' Ex. 25 (picture showing Barbour and Paterson campaign signs erected in front of a fire hydrant and street sign); Hearing Tr. at 96-97, 140-46).

Notably, even though plaintiffs' representative called Mr. Ferrese prior to erecting any campaign signs and counsel spoke prior to the filing of this lawsuit, no representative of the City

follows prior to the taking of discovery in these proceedings. (Hearing Tr. at 44-46).

Plaintiffs sought to enjoin defendants' selective enforcement of the Ordinance. In its opinion addressing plaintiffs' application, the Court stated:

> [T]he City has applied the Ordinance in an arbitrary and therefore unconstitutional manner. Indeed, the evidence at this stage is overwhelming that the City has not applied the Ordinance according to its terms. It is unrebutted that the City sometimes allows political signs on public rights-of-way . . . .
>
> How far back from a road a sign must be before the City will accept it as appropriately placed, which side of the sidewalk a sign can be placed on, whether signs must be behind an imaginary boundary marked by the line of utility poles when there is no sidewalk, whether landscaping ties are a permissible boundary are a permissible boundary for determining the placement of signs, whether signs for other non-profit organizations, like the community arts league, are permissible -- all these questions are, it seems, answered by unwritten "rules of thumb" that only the City's cognoscenti know. That may be a satisfactory way of doing business as long as no one objects. But it is not a constitutionally valid way of doing business . . . and the day that someone would object should have been foreseen.

Sokolove v. City of Rehoboth Beach, C.A. No. 05-514 (KAJ) (D. Del. July 28, 2005)

(Memorandum Opinion at 15-16) (hereinafter "Sokolove") (attached as Exhibit A).[2]

---

[2]    Subsequent to July 28, 2005, the City tendered this case to its insurance carrier and counsel retained by the carrier entered his appearance on behalf of defendants. (D.I. 22).

Although the election is over and, as a result, candidates are no longer erecting campaign signs, defendants continue to enforce the Ordinance in a selective manner. Numerous private signs remain in the public right-of-way in violation of the Ordinance .

Specifically, there are numerous Art League signs throughout the City. (Plaintiffs' Exs. 21 and 22; Second Sokolove Aff. ¶ 4, Exs. A and B). These signs are affixed to street signs located in the public right-of-way and relate to a private, nonprofit enterprise located outside the City limits. (Hearing Tr. at 154; Onizuk Dep. at 75-76). The City also permits the Village Improvement Association to leave its sign erected on property owned by the City. (Plaintiffs Ex. 20; Hearing Tr. at 103; Second Sokolove Aff. ¶ 5, Ex. L). A sign for Oak Grove Trailer Park also remains standing in the public right-of-way. (Plaintiffs Ex. 24; Second Sokolove Aff. ¶ 4, Ex. C; Sterl Aff. ¶ 2, Ex. 9).

Each of these signs was brought to the attention of defendants prior to the Court's June 28 ruling that the City was enforcing the Ordinance in an unconstitutional manner. Notwithstanding that defendants were put on notice of these offending signs and notwithstanding that the Court advised them that they were not enforcing the Ordinance in a constitutionally permissible manner, defendants have elected to leave these signs standing. Indeed, they have left the Art League signs standing even though the supervisor of the City's Building and Licensing Department believes that they probably should be removed. (Murphy Dep. at 4-5, 56-58).

Several other private signs remain erected in the public right-of-way, including realtor signs listing properties "For Sale" and general contractor signs advertising the services being performed at a particular location. (Second Sokolove Aff. ¶ 4, Exs. D-K; Sterl Aff. ¶ 2, Exs. 1-

Ordinance are contractor or realtor "For Sale" signs because the City's enforcement policy with respect to such signs is different from its policy regarding other non-compliant signs:

> A.    Any sign that's on City property is supposed to be picked up and, you know, we would pick them up.  If it is a real estate sign, a lot of times I call them ahead of time, let them know that, you know, their sign is going to be picked up.

> But other signs I just go ahead and pick them up, like construction signs that are on City property, I pick them up.

> *      *      *

> A.    A lot of complaints, a lot of, a lot of signs I pick up, like contractor signs.  They do have an ordinance about too many signs in one area, you know, like if you have got two -- one contractor and three subcontractors, the subcontractors cannot have their signs there.  So you give them fair warning, you know, to remove their signs.

> *      *      *

> Q:    How often are signs removed?

> A:    All the time.

> Q:    So I'm clear, it is enforced all the time?

> A:    Yes.

> Q:    Signs are removed all the time?

> A:    Rights, Rights.

---

3    Several of the non-compliant signs are erected on Henlopen Ave. where the City's right-of-way extends over 20 feet from the edge of the road toward each residence.  (Second Sokolove Aff. ¶ 4, Exs. I, J, K; Hearing Tr. at 89, 129).

WIL:54425.2/sok014-230196            - 13 -

Q:    Is that correct?

A:    Right. Now, sometimes, like I said on realtor signs, I will give them fair warning, I call them up. If they are not directly in front of the house, they are in that grass area, I say "Look, I'm going to remove your sign. You better come and get it."

(Onizuk Dep. at 11, 68, 71-72).[4]

In short, the record demonstrates that: (i) historically, defendants have not enforced the Ordinance (Hearing Tr. at 89-92, 111-12, 116), (ii) when the Ordinance has been enforced, it has not been enforced according to its terms, but, rather, according to defendants' unwritten "rules of thumb" (Onizuk Dep. at 6-7, 80, 84; Hearing Tr. at 116, 119-21, 128-29, 147-48, 150-51; Plaintiffs Ex. 14, 15), (iii) the application of defendants' "rules of thumb" results in private signs erected in the public right-of-way not being removed (Hearing Tr. at 150-51; Murphy Dep. at 23-24; Sokolove, at 15-16), (iv) some signs - those erected by realtors and contractors - are usually given a one-time exemption from the "rules of thumb" as they are removed only after defendants first ask that the sign be removed (Onizuk Dep. at 11, 68, 71-72), and (v) these practices are continuing today (Second Sokolove Aff. ¶ 4, 5, 6, Exs. A-K; Sterl Aff. ¶ 2, Exs. 1-13).

---

[4]    Although the City contends it enforces the Ordinance every day, a review of the Second Sokolove Affidavit and the Sterl Affidavit demonstrates that noncompliant realtor signs remained in place for at least a week. (Compare Second Sokolove Aff. ¶ 2, Ex. D with Sterl Aff. ¶ 2, Ex. 7; compare Second Sokolove Aff. ¶ 2, Ex. E with Sterl Aff. ¶ 2, Ex. 8; compare Second Sokolove Aff. ¶ 2, Ex. F with Sterl Aff. ¶ 2, Ex. 4; compare Second Sokolove Aff. ¶ 2, Ex. G with Sterl Aff. ¶ 2, Ex. 5).

## I.    The First Amendment Precludes Selective Enforcement Of The Ordinance

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I. "[S]igns are a form of expression protected by the Free Speech Clause . . . ." City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994). Pursuant to the Fourteenth Amendment, city ordinances are subject to the First Amendment's limitation on governmental authority. Lovell v. Griffin, 303 U.S. 444, 450 (1938).

Given the importance of citizens' constitutional rights, ordinances which interfere with such rights may not be enforced in a selective or discriminatory manner. Holder v. City of Allentown, 987 F.2d 188, 197 (3d Cir. 1993) ("Public officials engage in unconstitutional discriminatory application . . . when they seek to enforce the law 'on the basis of an unjustifiable standard, such as race, or religion or some other arbitrary factor' . . . ") (citation omitted). Indeed, selective enforcement of this nature is unconstitutional. Id., 987 F.2d at 197 ("it has long been established that discriminatory enforcement of a statute or law by state and local officials is unconstitutional").

Here, defendants have relied on an unwritten, arbitrary and unjustifiable standard to selectively enforce the Ordinance. The selective enforcement occurred during and after the 2005 municipal election. As such, plaintiffs request the Court find that: (i) defendants violated plaintiffs' constitutional rights by selectively enforcing the Ordinance during the City's 2005 municipal election, (ii) defendants' selective enforcement of the Ordinance continues to today, and (iii) defendants' continued selective enforcement must be permanently enjoined.

Defendants have not applied the Ordinance according to its terms. The plain language of the Ordinance prohibits anyone from erecting a private sign on any public right-of-way in the City. Thus, enforcement should be easy: determine where the public rights-of-way begin and end in the City and remove private signs located in the rights-of-way.

Defendants have not adopted this approach. Instead, they apply a series of unwritten "rules of thumb" which "define" the public right-of-way depending on whether there is a sidewalk, utility pole, landscaping ties or other boundary markers located on the property at issue. In addition, with respect to signs erected by realtors and contractors, the "rules of thumb" are usually not applied until after the offending party has been contacted and asked to move the sign.

Defendants' "rules of thumb" (and the manner in which they have been applied) bear no relation to the actual public right-of-way and, as Messrs. Ferrese and Murphy recognized, their application results in private signs remaining in the public right-of-way. Enforcing the Ordinance according to these "rules of thumb" is not constitutionally valid, a conclusion recognized by the Court in its Memorandum Opinion:

> [T]he City has applied the Ordinance in an arbitrary and therefore unconstitutional manner. Indeed, the evidence at this stage is overwhelming that the City has not applied the Ordinance according to its terms. It is unrebutted that the City sometimes allows political signs on public rights-of-way . . . .
>
> How far back from a road a sign must be before the City will accept it as appropriately placed, which side of the sidewalk a sign can be placed on, whether signs must be behind an imaginary boundary marked by the line of utility poles when there is no sidewalk, whether landscaping ties are a permissible boundary are a permissible boundary for determining the placement of signs, whether signs for other non-profit organizations, like the community arts league, are permissible -- all these questions are, it

cognoscenti know. That may be a satisfactory way of doing business as long as no one objects. But it is not a constitutionally valid way of doing business . . . and the day that someone would object should have been foreseen.

Sokolove, at 15-16.

Defendants applied their arbitrary "rules of thumb" in the days leading up to the 2005 municipal election resulting in selective enforcement of the Ordinance against plaintiffs. Plaintiffs erected campaign signs throughout the City based on Mr. Ferrese's assurance that the City would not remove them. Notwithstanding that assurance, plaintiffs' campaign signs were removed from the public right-of-way because they allegedly violated the "rules of thumb." In comparison, the campaign signs of other candidates were not removed from the public right-of-way because their placement purportedly complied with the City's arbitrary, unjustifiable enforcement policy. (Hearing Tr. at 23-26, 93-101, 140-42; Plaintiffs Ex. 10, 11, 12, 13, 14, 15, 25; Onizuk Dep. at 49-52). Other private commercial signs also were left standing even though they were erected in the pubic right-of-way. (Hearing Tr. 101-04, 153-55; Plaintiffs' Ex. 17, 18, 19, 20, 21, 22, 23, 24). Selective enforcement of this nature is not constitutional. Holder, 987 F.2d at 197 ("discriminatory enforcement of a statute or law by state and local officials is unconstitutional"); Lawson v. City of Kankakee, Illinois, 81 F. Supp.2d 930, 935-36 (C.D. Ill. 2000) (city engaged in unconstitutional selective enforcement of ordinance when it removed plaintiff's sign from public property but left standing signs of realtors and churches located in same area).

## III.    Defendants' Continued Selective Enforcement Of The Ordinance Must Be Enjoined

Defendants' selective enforcement of the Ordinance has continued even after the issuance of this Court's July 28th Memorandum Opinion and the August 13th election.

League signs, the Village Improvement sign, the Oak Grove Trailer Park sign - remain erected in the public right-of-way. Likewise, other non-campaign, private signs - particularly realtor "For Sale" signs and contractor signs to which defendants a different enforcement policy - remain standing notwithstanding they are not in compliance with the Ordinance.

Although the City contends it enforces the Ordinance every day, it has not taken (and apparently does not intend to take) any steps to remove these "preferred" signs. There is no justification to leave standing certain private signs which violate the Ordinance while removing other signs which violate the Ordinance. Selective enforcement of this nature is not constitutional. Holder, 987 F.2d at 197 ("discriminatory enforcement of a statute or law by state and local officials is unconstitutional"); Lawson, 81 F. Supp.2d at 935-36 (city engaged in unconstitutional selective enforcement of ordinance when it removed plaintiff's sign from public property but left standing signs of realtors and churches located in same area).

Defendants continue to selectively enforce the Ordinance notwithstanding the Court's statements in its July 28th Memorandum Opinion and notwithstanding the fact they are aware of signs which are not in compliance. Defendants actions demonstrate that they will not voluntarily end their selective enforcement. If defendants are not enjoined, the constitutional rights of Robert Sokolove and Citizens for Rehoboth Beach will be infringed when, in the future, their campaign signs are removed from the public right-of-way and other private campaign and commercial signs are left standing. The loss of these rights will cause Mr. Sokolove and Citizens for Rehoboth Beach to suffer irreparable harm. Elrod v. Burns, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

its reoccurrence, defendants must be permanently enjoined from selectively enforcing the Ordinance. Thomas v. County of Los Angeles, 978 F.2d 504, 508 (9th Cir. 1992) ("A state law enforcement agency may be enjoined from committing constitutional violations where there is proof that officers within the agency have engaged in a persistent pattern of misconduct").

## CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that their Motion for Partial Summary Judgment be granted and that the Court find that: (i) defendants violated plaintiffs' constitutional rights by selectively enforcing the Ordinance during the City's 2005 municipal election, (ii) defendants' selective enforcement of the Ordinance has continued subsequent to the election, and (iii) defendants' continued selective enforcement must be permanently enjoined.

Shawn P. Tucker (#3326)
Todd C. Schiltz (#3253)
Wolf, Block, Schorr & Solis-Cohen LLP
1100 North Market Street, Suite 1001
Wilmington, Delaware 19801
(302) 777-0312
tschiltz@wolfblock.com
Attorneys for Plaintiffs

Date: October 18, 2005

WIL:54425.2/sok014-230196                          - 19 -