# Exhibit "A"

# Exhibit "A"

A  REGIONAL  DEFENSE  LITIGATION  LAW  FIRM

# MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN

A  PROFESSIONAL  CORPORATION    **www.marshalldennehey.com**

PENNSYLVANIA
Bethlehem
Doylestown
Erie
Harrisburg
King of Prussia
Philadelphia
Pittsburgh
Scranton
Williamsport

NEW JERSEY
Cherry Hill
Roseland

DELAWARE
Wilmington

OHIO
Akron

FLORIDA
Ft. Lauderdale
Jacksonville
Orlando
Tampa

**1220 N. Market St., 5th Floor, P.O. Box 8888 · Wilmington, DE 19899-8888**
**(302) 552-4300 · Fax (302) 651-7905**

**Direct Dial: 302-552-4317**
**Email: dagriffith@mdwcg.com@mdwcg.com**



February 28, 2006

Todd Schiltz, Esquire
Wolf Block
Wilmington Trust Center
Suite 1001
1100 N. Market Street
Wilmington, DE  19801

> Re:  Robert Sokolove v. Rehoboth Beach
> Our File No: 20021-00101
> Case No: 05-514 KAJ

Dear Todd,

In reference to the above-captioned matter, I have reviewed our document production and your additional discovery requests concerning that production.  In your e-mail correspondence with my associate, John Work, Esq., you made specific requests concerning REHOB 009-012.  Please accept this as our response to those requests.

Regarding REHOB 010, you requested documents referred within as "attached hereto."  No such language is found in REHOB 010.  The language closest to that which you are referring is ". . . not included herein" found in the second paragraph of REHOB 010.  This statement refers to a wide variety of special ordinances not at issue in this litigation.

You also requested a full copy of the minutes of the August 11, 1995 Commissioners' meeting. Although you referred to these as REHOB 011 and REHOB 012, the minutes previously produced are REHOB 012-013.  My client has advised me that this represents the entire record of that meeting.

In regards to that meeting, you also requested copies of any documentation handed out to the commissioners at the outset of the meeting concerning City Ordinance § 74-16.  There is no indication in the minutes that any documentation was distributed to the commissioners prior to the meeting and as previously stated, you have been provided with the City of Rehoboth Beach's entire record regarding that meeting.

Todd Schiltz, Esquire
February 28, 2006
Page 2

_____

You requested a copy of REHOB 009.  This is the Adopting Ordiance for the Municipal Code of 1974. It appears that it was inadvertently left out of the production you received.  A copy is enclosed herein.

As to your requests for verifications, please find two enclosed herein.  One is enclosed for each named defendant.  You have also requested a copy of the relevant insurance policy.  This will be forthcoming.  A request for the policy has been made and is being processed.

If you have any further questions regarding this matter, please feel free to contact me.

Very truly yours,

Daniel A. Griffith, Esq.

JVW:jvw

\15_A\LIAB\JVWORK\CORR\337276\JVWORK\20021\00101

## ADOPTING ORDINANCE

AN ORDINANCE TO ADOPT A MUNICIPAL CODE OF REHOBOTH BEACH, DELAWARE, 1974, AND REPEALING ANY INCONSISTENT ORDINANCES THEREWITH.

BE IT ORDAINED by the Commissioners of Rehoboth Beach, in Session met, in the manner following, to wit:

Section 1. The Municipal Code of Rehoboth Beach, Delaware, consisting of fifteen (15) Chapters which is attached hereto and made a part of this Ordinance as though fully set out herein, be and the same is hereby adopted.

Section 2. Any Ordinance inconsistent with the provisions of The Municipal Code of Rehoboth Beach, Delaware, 1974, be and the same is hereby repealed to the extent of such inconsistency, except for any amendments thereto which have been adopted since April 1, 1974.

Adopted: November 8, 1974.

## VERIFICATION

I, Gregory Feresse, individually, herby verify that I have read Defendants' Answers to Plaintiff's First Request for Production of Documents, Requests for Admission and Interrogatories, and that the answers therein are true and correct to the best of my knowledge, information and belief.

DATED: __2/27/06__                          _____
                                                  Gregory Ferrese

## VERIFICATION

I, Gregory Feresse, as City Manager for the City of Rehoboth Beach, Delaware, herby

verify that I have read Defendants' Answers to Plaintiff's First Request for Production of

Documents, Requests for Admission and Interrogatories, and that the answers therein are true

and correct to the best of my knowledge, information and belief.

DATED: __2/27/06__                          _____
                                            Gregory Ferrese

# Exhibit "B"

# Exhibit "B"

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS and CITIZENS FOR REHOBOTH BEACH, a political committee,**<br><br>    **Plaintiffs,**<br><br>    **v.**<br><br>**CITY OF REHOBOTH BEACH, DELAWARE and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware,**<br><br>    **Defendants.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **Case No. 05 - 514** |

### DEFENDANTS' RESPONSES TO
### PLAINTIFFS' FIRST
### REQUEST FOR PRODUCTION OF DOCUMENTS AND INTERROGATORIES

COME NOW Defendants City of Rehoboth Beach, Delaware, and Gregory Ferrese, by and through their attorneys, pursuant to Federal Rules of Civil Procedure 33, 34 and 36, hereby answer and respond to *Plaintiffs' First Requests for Production of Documents and Interrogatories* as follows, to wit, Defendants specifically reserve the right to supplement these responses to Plaintiffs' first set of discovery requests pursuant to Fed. R. Civ. P. 26(e), and otherwise:

### REQUESTS FOR PRODUCTION OF DOCUMENTS

Request No. 1:    Produce Chapter 3 of the City's 1974 Code and any section of the City's 1974 Code which relates to the placement, erection or maintenance of signs.

RESPONSE No. 1:    The relevant portion of Chapter 3 of the City's 1974 Code which relates to the placement, rection or maintenance of signs is attached hereto and bears the identifying Bates No. "REHOB 015".

Request No. 2:          Produce all documents which detail, reflect or refer to the reasons why the City adopted the 1974 Code.

RESPONSE No. 2:     After reasonable search of Defendants' files, responsive documents are attached hereto, being the Minutes of the Regular Meeting of the Commissioners dated November 8, 1974 (documents bearing Bates Nos. "REHOB 001" through "REHOB 008") at which the City voted on "An Ordinance to Adopt a Municipal Code of Rehoboth Beach, Delaware, 1974 and Repealing any Inconsistent Ordinances Therewith" (which ordinance is attached hereto and bears Bates No. "REHOB 009".  The "Preface" to the 1974 Revision of the City Code is attached as documents bearing Bates Nos. "REHOB 010" through "REHOB 011").

Request No. 3:          Produce all documents which detail, reflect or refer to the adoption or amendment of the Ordinance [by definition incorporated within *Plaintiffs' First Requests*, the "'Ordinance' means City Ordinance § 74-16"].

RESPONSE No. 3:     Attached hereto as documents bearing Bates Nos. "REHOB 012" through "REHOB 013", being the Minutes of the Regular Meeting of the Commissioners of Rehoboth Beach, Delaware, dated August 11, 1995; and document bearing Bates No. "REHOB 014" being a copy of Ordinance No. 895-1, adopted August 11, 1995, being "An Ordinance to Amend Chapter 3 of the Municipal Code of Rehoboth Beach, Delaware, 1974, Relating to Signs"; and document bearing Bates No. "REHOB 015" being the referenced Municipal Code section as compiled by the City.

Request No. 4:          Produce all documents which detail, reflect or refer to the reasons why the City adopted or amended the Ordinance.

RESPONSE No. 4:     See Responses to Requests Nos. 1 though 3, *supra*.

Request No. 5:        Produce all documents which detail, reflect or refer to any guidelines, policies, procedures or regulations the City relies upon to enforce the Ordinance.

RESPONSE No. 5:    Objection.  Documents responsive to this Request are subject to the Attorney-Client privilege.

Documents responsive to this Request which are being withheld under the Attoreney-Client Privilege are:

(1)    Identified as Bates Nos. "REHOB 016" through "REHOB 018", being correspondence from City Solicitor Walter M. Speakman, Jr., Esquire, to Ms. Susan Frederick, City of Rehoboth Beach, dated July 18, 1997, concerning an inquiry as to enforcement of the City Code provisions relating to signage; and

(2)    Identified as Bates Nos. "REHOB 019" through "REHOB 020", being a memorandum dated July 29, 2005, from Walter M. Speakman, Jr., Esquire, the City Solicitor, to Greg Ferrese, City Manager, and which addresses issues raised within this current litigation.

Defendants reserve the right to raise any additional objections which are applicable to the disclosure of these documents.

Request No. 6:        Produce all documents which detail, reflect or refer to the manner in which the Ordinance should be enforced, including, but not limited to, any directions or instructions the City has given its departments, employees or agents regarding the manner in which the Ordinance should be enforced.

RESPONSE No. 6:    See Responses to Requests Nos. 1-5, *supra*.

Request No. 7:        Produce all documents identified in response to the interrogatory requests set forth below.

RESPONSE No. 7:    See Responses to Requests Nos. 1-5, *supra*.

## RESPONSES TO INTERROGATORIES

<u>Interrogatory No. 1</u>:    With respect to every request for admission which you denied in whole or in part, state the facts which form the basis of your denial, identify the person with knowledge of the facts which form the basis of your denial and identify any documents which you contend support your denial.

<u>Response No. 1</u>:        Objection.  Defendants' responses to Plaintiffs' *First Requests for Admissions*, served upon Plaintiff on or about December 13, 2005, contained complete responses including, where appropriate, denials "specifically" and otherwise "set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter" as required by Fed. R. Civ. P. 36(a) and as appropriate within those responses.  No further response or explanation of Defendants' responses to Plaintiffs' *First Requests for Admissions* is either necessary under the Rules or required within the context of responding to Plaintiff's *First Set of Interrogatories* herein.

<u>Interrogatory No. 2</u>:    Identify the individuals who adopted the City's 1974 Code.

<u>Response No. 2</u>:        The City Commissioners who comprised the body which voted upon and approved the 1974 City Code are identified on the document bearing Bates No. "REHOB 001" and are listed therein as Vice President George H. Wilson, Commissioner John A. Hughes, Commissioner William V. Ehrlich, Commissioner Miriam E. Howard, Commissioner Edward V. Lower, Commissioner Maurice A. Hartnett, III.  The Minutes from the Regular Meeting of the Commissioners dated November 8, 1974, reflect that "Mr. Messick said we have had our ordinances codified and have had the new code under study.  Mr. Hartnett made a <u>motion</u> to adopt the new code and amend where and when necessary, seconded by Mr. Lower" and that the "Motion carried – 6 aye".

Interrogatory No. 3:    Identify the dates on which the Ordinance, and any predecessor ordinance thereto, was adopted or amended.

Response No. 3:        See Defendants' Responses to Plaintiffs' First Requests for Production of Documents, and the documents provided in response thereto, and within which is the August 11, 1995, Ordinance No. 895-1, (Bates No. "REHOB 014"); an excerpt from the Rehoboth Beach Code Chapter 3, Article 2, from the November 10, 1995, Supplement to the City Code (Bates No. "REHOB 015"), identifying *inter alia*, the City Charter § 29(a)(10) authority granted to the City to regulate signs and City Code cross-references to the City Code Zoning Ordinances, including Chapter 19, Article 7 of the City Code as then-compiled and organized.  Under the 1963 City Code adopted by Ordinance No. 1, § 4, on June 14, 1963, there was a prohibition on projecting signs which was replaced by City Code § 3-17 of the 1974 Code revisions and renumbered as current City Code § 74-15.  The 1974 Code § 3-18, current § 74-16, was created by the August 11, 1995, adoption of Ordinance No. 895-1, upon information and belief and to the best of Defendants' knowledge.

By way of further explanation, by Ordinance No. 901-1, adopted on September 17, 2001, the City revised and renumbered the City Code, including, *inter alia*, renumbering the defined "Ordinance" herein from the old § 3-18 to the current § 74-16; and the City Zoning Code and sign regulations therein from the old Chapter 19, Article 7 to the current Chapter 270, Article VII.

Interrogatory No. 4:    Identify the individuals who approved the adoption or amendment of the Ordinance and any predecessor ordinance thereto.

Response No. 4:        Defendants have no information responsive to this Interrogatory as, other than the September 17, 2001, Ordinance No. 901-1 revision and renumbering of the

City Code, there have been no substantive revisions or amendments to the applicable provisions of Ordinance No. 895-1, as adopted on August 11, 1995, by which the former Code § 3-18, current Code § 74-16, was adopted.

Interrogatory No. 5:    Identify any statute, ordinance or regulation on which the Ordinance is based.

Response No. 5:    Objection.  This interrogatory is overly broad and ambiguous as worded.  Without waiving said objection, the City's 1974 Code revisions were reviewed and studied as reflected in the November 8, 1974, Minutes, (Bates No. "REHOB 004") and the "Preface", indicating that "This Code was prepared by NIMLO [National Insitute of Municipal Law Officers] staff attorneys Barry A. Ponticelli and R. Colette McKenna under the direction of John E. Messick, City Solicitor of Rehoboth Beach" and that "General supervision in the preparation of this Code was by Charles S. Rhyne, General Counsel and Dennis D. McKenna, Associate General Counsel".  (Bates No. "REHOB 011").

Further, the State of Delaware has codified statutory regulations on outdoor advertising at Title 17 Chapter 11, Delaware Code, as well as Title 17, Chapter 5, by way of illustration and not limitation.  It is undetermined at this time the degree or extent to which the City Code § 74-16 was "based" upon the State statute or any other source.

Interrogatory No. 6:    Identify any expert whose opinion you intend to rely upon at trial.

Response No. 6:    Defendants have not, at this time, identified any expert in anticipation of trial.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN        (I.D. No. 3434)

BY: _____

**DANIEL A. GRIFFITH, ESQUIRE**
1220 North Market St., 5th Floor
P.O. Box 130
Wilmington, DE  19899-0130
*Attorney for Defendants*


Date: ___19  December 2005___

REHOBOTH BEACH
REGULAR MEETING OF THE COMMISSIONERS

MINUTES:   Regular Meeting of the Commissioners of Rehoboth Beach,
           Delaware, Friday, November 8, 1974, 8:00 P.M., Commissioners
           Room, City Hall, 73 Rehoboth Avenue, Rehoboth Beach, Delaware.

Vice President George H. Wilson convened the meeting at 8:00 P.M. and
offered the Invocation.

PRESENT:      Vice President      George H. Wilson
              Commissioner        John A. Hughes
              Commissioner        William V. Ehrlich
              Commissioner        Miriam E. Howard
              Commissioner        Edward V. Lower
              Commissioner        Maurice A. Hartnett III

              City Solicitor      John E. Messick
              Assistant           Raymond Wilson
              Bldg. Inspector     Newton Grindle

ABSENT:       Mayor Reed A. Booth

APPROVAL OF MINUTES:  Mr. Hughes made a motion to approve the Minutes of
October 11, 1974 Meeting as written, seconded by Mr. Lower.  SO ORDERED.

POLICE REPORT:  Chief William Walls presented the police report.

62 arrests for October – 56 Traffic (54 adults & 2 juveniles)
                          6 criminal (6 adults & 0 juveniles)

ALDERMAN'S COURT:  46 cases –   46 traffic (46 adults)
                                 0 criminal
39 paid and released; 3 not guilty; 3 deferred payment; 1 dismissed.
                    Fines collected in amount of  $525.00
                    Costs collected in amount of $321.50
4 traffic cases pending
1 criminal case pending

COURT #2:  8 cases  –  3 traffic (1 adult & 2 juveniles)
                       5 criminal (5 adults)
4 paid and released; 2 dismissed; 1 OPR bond; 1 bonded, preliminary hearing.
                    Fines collected in amount of $55.00

COURT #3:  3 cases – 3 traffic (3 adults and 0 juveniles)
3 paid and released.
                    Fines collected in amount of $30.00

Total manhours on duty – 2697; total hours patrolled – 1350; total hours
foot patrol – 85; total miles patrolled – 8338; total door checks – 641.

Personnel:  1 chief, 1 lieutenant, 1 detective, 4 sergeants, 2 corporals,
3 PFCs, 6 patrolmen, 1 secretary.

-1-

Mr. Ehrlich asked if the Police Department have a man in Kent County.
Chief Walls said yes, we have a man on the Governors Strike Force. Mr.
Messick stated the Commissioners can detail a man to Governors Strike
Force but Minutes do not reflect this action and he can be recalled. Mr.
Ehrlich suggested he be recalled unless the Commissioners approve it.
Chief Walls asked if the Commissioners wanted him to go into the story
but Mr. Ehrlich said he has heard the story - this man is getting gas money,
drug money and so forth - it is not right for these things to be done
without our knowledge. Chief Walls explained it started in June of this
year. The City Manager and Police Chief of each municipality with a force
of at least 15 men were asked to participate - this is a pilot program with
men from Milford, Seaford, Laurel and Dover. They put city man in Laurel
or Dover and an unknown man here.

Mr. Hughes asked if we benefited on hourly basis - Chief Walls said they
put in many hours in town. Mr. Hartnett asked how long it will last -
Chief Walls explained it is a six month program under authority of the
Governor. Mr. Hughes asked when the six months is up - in January. Mr.
Hartnett said, we have sent a man to work under cover and we got other
undercover men in the city. Chief Walls explained that he went to meeting
in Dover on this with Mr. George Wilson. Mr. Hughes asked if Chief backs
the program - Chief Walls explained that yes, the man is gaining experience
for his department - further, they are working in Lewes and if 35 arrests
are made in Lewes, those persons will not be selling in Rehoboth. Mr.
Norman Calhoun remarked that he thinks it may be a good thing but the
Commissioners should not be put behind the eight-ball like this. Mr.
Hartnett agreed with this statement and added that the Commissioners do
intend to examine the program at the end of six months. Mr. Hartnett made
a motion to continue the program until the first of February, seconded by
Mr. Hughes.

Mr. Ehrlich stated the Chief has said they are fighting drugs but the
newspapers say they are fighting burglaries. We had burglaries in
Rehoboth Beach this summer but we have a man up there. We need our
police in July and he was sent out of town. Mrs. Howard asked if Lewes
gets this service without contributing anything - Chief Walls said they
have moved from Rehoboth to another area as they go where the action is.
Mr. Lower suggested that in the future Chief Walls get receipted letter
from City Manager on a communication of this sort.

Motion Carried - 5 Aye and 1 Nay

BUILDING INSPECTOR'S REPORT: Mr. Grindle reported the month of October:

| | |
|---|---|
| 9 residential additions and/or alterations | $19,800.00 |
| 1 restaurant addition and/or alteration | 10,000.00 |
| | 29,800.00 |

REQUEST FOR WAIVER OF SUB-DIVISION REQUIREMENT (Mr. Thomas Markey):
Mr. Markey said he is present to ask two things of the Commissioners. Is
there a possibility of selling Lot 3 where the house and garage are located?
Mr. Markey talked with City Solicitor John E. Messick, who opined it would
probably be possible with the condition that the owner hookup to water and
sewer systems as soon as installed. Mr. Markey accepted this condition and
agrees with it.

REHOB 002

Mr. Hughes made a motion that, with the condition that when water and sewer lines are installed Lot 3 house will immediately connect up, that Mr. Markey be allowed to market this house, seconded by Mrs. Howard.  Mr. Hartnett questioned if the Commissioners have the authority to do this?  Mr. Messick said yes, if the Planning Commission has no objection and Mr. Markey has talked to Chairman William R. Simpler who also stated that it must be hooked into water and sewer lines immediately upon installation.  Mr. Grindel remarked that it may be partitioning under Sub-Division Ordinance.  Mr. Messick after reviewing Sub-Division Ordinance, agreed that it should be a Partitioning Request and must be referred to Planning Commission.  Mr. Hughes withdrew his motion.  Mr. Messick stated the Partitioning Request will be referred to Planning Commission as they have the authority to approve it and report the action taken to the Commissioners.

Mr. Markey stated that each Commissioner has been supplied with a letter and a legal memo explaining his position.  He believes there is a clear right of only the Commissioners having the power to waive sidewalks and curbs.  He asked this of Planning Commission two times (July 8 - they took the position that it is up to the Commissioners and August 18 - they said only the Commissioners have the right to waive any provisions.)  Therefore, at this time he is asking a waiver of sidewalks and curbs in the 2½ acres plot with nine lots south of Silver Lake.

Mr. George Wilson asked Mr. Milton Fraser, Planning Commission member, if the Planning Commission had considered making conditions, the Minutes indicate it was referred to Commissioners.  Mr. Fraser stated that they do not have authority to make any waivers.  Mr. Markey added that August 18th, it was discussed but they were not disposed to make a recommendation.  Mr. Messick said in both meetings the Planning Commission said to abide by the Sub-division Ordinance.

Mr. Messick said the Sub-division ordinance makes sidewalks discretionary by saying "where required" but says curbs "shall" be placed.  Mr. Hartnett suggested the Ordinance can be amended but not waived.  Mr. Markey said the Planning Commission has no right to waive any ordinance of the Commissioners.  Mr. Messick said that in this instance, they could have said sidewalks are not required.  Mr. Markey asked if the Commissioners would be disposed to handle waiver of sidewalks and Mr. Messick said it can be done as the Planning Commission said it is up to the Commissioners.  Mr. Hughes stated this is a small development consisting of nine lots on cul de sac and made a motion that Commissioners waive the requirement for sidewalks in this division, seconded by Mrs. Howard.

Motion Carried - 6 Aye

Mr. Hughes asked the procedure for handling the curbs?  Mr. Messick did not think the Commissioners can waive this but can amend the ordinance and then Planning Commission can waive the requirement under Su-division Ordinance.  Mr. Lower suggested that perhaps curbs might be a good idea to help water run-off, to create a dish-like effect.  The consulting engineer did not think this necessary as swale will carry off the storm water.  Mrs. Howard remarked that this waiver would fit the development into the neighborhood.  Mr. Hughes asked how road is paved - tar and chips.  Mr. Hughes asked the life expectancy of the street - a minimum of 10 years.  Mr. Wilson said the

-3-

*Commissioners can amend the ordinance to read "curbs may be installed where required" and Mr. Markey can go to the Planning Commission for a waiver. Mr. Markey asked if they will waive the curbs, is that the end? Mr. Messick replied that it is, in his opinion.*

*Mr. Hughes made a motion that Sub-division Ordinance, Section VI A - 4, be amended by inserting the words "as required" after curbs and before the words "shall be placed", seconded by Mrs. Howard.*

### Motion Carried - 4 Aye and 2 Nay

*Mr. Messick explained the Commissioners passed a motion at Meeting of February 15, 1974, to establish a policy of advertising for city employees and to set up a register of applicants. We have a resolution to amend the motion - that The City of Rehoboth Beach advertise for positions as they become available and establish a Register of applicants; such advertising to be accomplished whenever practical, as determined by the Commissioners of Rehoboth Beach. Mrs. Howard made the motion, seconded by Mr. Ehrlich.*

### Motion carried - 6 Aye

*Mr. Messick said we have had our ordinances codified and have had the new code under study. Mr. Hartnett made a motion to adopt the new code and amend where and when necessary, seconded by Mr. Lower*

### Motion carried - 6 Aye

*Mr. Messick stated the recently enacted ordinances should be sent to the Institute for insertion on December 15.*

*Mr. Messick stated the Commissioners have obtained prices to have the Charter printed to add to the Code Book. National Institute of Law Enforcement Officers will print the Charter for approximately $1500. to match the codified ordinances. Mr. Hartnett made a motion to approve this expenditure, seconded by Mr. Lower.*

### Motion carried - 6 Aye

*COMMITTEE REPORTS:*
*Street & Light Committee Chairman Miriam E. Howard reported the committee has been discussing the parking lot by Municipal Building - they recommend the lower end be filled in with dirt, which could be removed from the old dump. Mr. Hammond has said there are two abandoned wells by Dick Mitchell's property which could be filled in to serve as drainage system. However, Mr. Hughes and Mr. Hartnett stated this would not be allowed by Water Resources. Mr. Calhoun opined curb and drainage on Lake Avenue is needed. Mr. Hughes said a catch basin on Lake Avenue and at the end of parking lot is needed. Mrs. Howard stated the Committee recommends that some of the bright lights on the boardwalk be turned off to save energy and money.*

*Natural Resources & Environmental Control Chairman John Hughes reported there was a demostation of Barber beach rake on the beach, rake towed by city tractor. This beach rake is an excellent machine and Mr. Hughes recommended it be purchased in conjunction with a Massey Ferguson tractor with front end loader and backhoe. The price of the rake is $10,800. and tractor is approximately $12,500. for a total of $23,370. which has been appropriated. It will require considerable hours in the summer (average of 15 hours weekly with possibly 40 hours at the beginning).*

~4~

REHOB 004

Mr. Ehrlich asked if the tractor can be used for other purposes - Mr. Hughes stated it is adequate for our use and Floyd Tull, city mechanic, was a Massey Ferguson employee. We **have** one of these tractors already so would use the same parts. We will have to bid the tractor but recommend specs be written for Massey Ferguson. Mr. Hughes made a motion the Barber Surf Rake be purchased at a price of $10,800. without advertising for bids on the grounds that this is property that it is impractical to obtain on competitive bid, seconded by Mr. Hartnett.

Motion carried - 6 Aye

Mr. Hughes made a motion the City purchase a tractor with adequate power to tow beach rake - tractor with front-end loader and backhoe., seconded by Mr. Lower.

Motion carried - 6 Aye

Personnel Committee: Mrs. Howard made a motion that Jim Walsh be hired as full time employee with the title of General Repairs & Maintenance at salary of $120.00, seconded by Mr. Ehrlich.

Motion carried - 6 Aye

Mrs. Howard made a motion that Kathy Donaway be hired on full time basis at present salary - Mr. Lower moved this be tabled temporarily.

Mrs. Howard made a motion that Earl McGlotten, temporary employee of the Sewer Department, be hired as permanent, full-time employee, seconded by Mr. Lower.

Motion carried - 6 Aye

Mrs. Howard made a motion that Floyd Tull be detached from Maintenance Dept. and be made City Mechanic at salary of $175. weekly. The reason for this is the high cost of repairing city vehicles (the Police Dept. vehicles cost $5000. for six months alone). Mr. Wilson added that Mr. Joseph has said Mr. Tull might be busy 40 hours a week on this and in that case, he will need an assistant but no one is available. Mr. Tull will be using $3000. of his own tools but would like the city to buy a jack for $750., seconded by Mr. Hartnett.

Motion carried - 6 Aye

Convention Hall Committee Chairman William V. Ehrlich reported that in the Police Dept. the men with experience are answering the telephone. Mr. Ehrlich suggested that we get retired persons to answer the phone and get the men on the street. We would not have to hire cadets and so many summer police. Chief Walls said he has discussed this with Mr. Wilson and they figure we possibly can hire four people to work 20 hours a week. Mr. Ehrlich opined it might not cost anything because by getting four sergeants on the street we can forgo eight summer police and the cadets on the phone. It would be preferable to hire retired persons with police experience.

-5-

REHOB 005

*Water & Sewer Committee Chairman John Hughes reported the test well has been drilled at Breezewood. The site is promising with 1500 G.P.M. yield. We want a first class well with **high** grade components for an estimated price of $20,000, but we do not need the well immediately. There is no way to protect our rights to that well field except to get a permit which is good for one year. We can put in well without pump, etc and that will hold the site for us. Mr. Hughes suggested we put a well in next year's budget - he asked Natural Resources to call if anyone applies for a well in this immediate area. Mr. Messick suggested it be put in writing that we intend to drill well and to notify us if any other applications are received. Mr. Hughes asked Mr. Messick to write this letter.*

*Mr. Grindle has drawn a plan of the Martin's Lawn drainage line. The storm water runs into box with high pressure. The opinion of the Committee is that, by bypassing two basins, we can improve the line. Mr. Hammond can do the work for $500. by using the plan and common sense. The second pump for Martin's Lawn will be installed on Monday. We will elevate controls above ground. Mr. Hughes would like approval to make improvements in Martin's Lawn drain with Mr. Grindle's plan. Mr. Lower made a* motion *to approve this, seconded by Mr. Hartnett.*

*Motion carried - 6 Aye*

*Mr. Hughes reported on meeting with Mr. Neeson, Albright & Friel, and Mr. William Kuhn, contractor, re Wastewater Treatment Plant. The plant is within one week of completion. There are several over-runs amounting to about $5000.00. Sussex County representative attended the meeting and have given tentative approval. We need approval for over-runs but there is a contingency fund of $25,000. Mr. Hughes made a* motion *that this expenditure be approved, following County approval, seconded by Mr. Hartnett.*

*Motion carried - 6 Aye*

*Mr. Hughes reported the Fire Dept. is preparing list of hydrants to be converted to National Thread. They recommend the work start with Rehoboth Avenue. We will contact Mr. Herb Brown, Dover Plumbing Supply, to see what they can supply as there are six different kinds of hydrants.*

*Mr. Hughes reported there has been a holdup on fluoridation. He has asked Mr. Neeson to meet with the State to inspect our system to see what will pass State approval. This will cost $175. in engineering fees. Mr. Hartnett said to go ahead with it.*

*Mr. Hughes will attend a Facilities Training Seminar in Dover on the 26th. The list of defects of the water and sewer departments have been greatly improved. Mr. Lower added that after three years, the water main loop has been installed at the school in 2½ days. Things are progressing!*

*Mr. Wilson stated that without a city manager and with the Mayor sick, the cooperation and help he has received has been tremendous. Mr. Hartnett said the Commissioners owe Mr. Wilson a vote of thanks also.*

*Mr. Ehrlich referred back to the Police Dept. and the hiring of retired persons to man the telephone: should we do this on one shift or two shifts? Mr. Lower requested that upper most consideration be given to citizens of Rehoboth Beach.*

-6-

REHOB 006

Mr. Wilson said the Charter states that residents of Rehoboth Beach be given first consideration but if we can find some retired policemen they **will be** familiar with police procedure and law - there is a great deal of unused vacation time and if we can put a man on the desk now, let's do so. Chief Walls suggested we start with two men and see what hours are best. Mr. Ehrlich made a motion to hire two part time men to work the Police Dept. desk for six month trial period, seconded by Mrs. Howard.

Motion carried -- 6 Aye

Mr. Messick reported he had prepared for each Commissioner a piece of legislation for discussion at Workshop of December 2nd.

Mr. Messick asked if the Commissioners want to act on General CATV request for rate increase. Mr. Hughes made a motion the CATV rate increase be granted with the following provisions; that those contracts on record before the date of January 1, 1975 be carried on at existing rate and our approval becomes effective January 1, 1975, seconded by Mr. Hartnett.

Motion Carried - 3 Aye and 2 Nay and 1 Abstention

Mr. Wilson stated that he realizes that a lot of people in Rehoboth are on fixed income and cannot afford this $1.00 but a business cannot stay in business without a profit. Mr. Hartnett stated that he too did not like it but in these inflated times no one can operate a business and lose money - further, the Commissioners should not be asked to pass on this as it should be up to P.S.C. Mrs. Howard added that she has had many complaints about the service. Mr. Hartnett added that he is concerned about this also -- this company is better than in Dover -- we can contact CATV if the complaints continue.

Mr. Messick said he has sent for the Arlington County noise ordinance and will send copies when received.

CORRESPONDENCE:

Mr. Messick read Petition received complaining about the noise at Fran O'Briens Beach House. Mr. Messick dictated letter today - Mr. Lower suggested it be mailed to tax address. Chief Walls check the noise level with decibel meters but noise did not exceed limit of 77 decibels. Mr. Hughes told Chief Walls to keep the patrol car with flasher at the site when crowd breaks up. It was suggested the building needs acoustical treatment. Mr. Hughes read from an existing ordinance, city unreasonable noise" and "plainly audible". Mr. Messick suggested the Police Dept. test the effectiveness of this ordinance.

Thank you letter from Fire Company for the $5000. to kick off the building fund.

-7-

REHOB 007

Letter received from Natural Resources & Environmental **Control** re inspection tour by **E.P.A.** and State of the Waste Treatment Facilities on the 20th of November.

O. E. D. rescheduled meeting will be November 25, 1974 at 7:30 P.M. in Council Chambers in Georgetown.

Notice received of Facilities Planning Seminar November 26th.

Delmarva Drilling Co. estimated price to install degasifier. Mr. Hughes reported this is a complex job and hard to define for specifications.  Can we award contract without bid under exigency demands?  It was decided the job should be placed on bid.

Invoice from Robert M. Hoyt & Co. in the amount of $1,122.00 for services rendered.  Mr. Lower made a _motion_ this invoice be approved, seconded by Mr. Hughes.

                    Motion carried - 6 Aye

Meeting adjourned at 11:00 P.M.

                              Respectively submitted


                              JOHN H. HUGHES
                              Secretary

mf

## ADOPTING ORDINANCE

AN ORDINANCE TO ADOPT A MUNICIPAL CODE OF REHOBOTH BEACH, DELAWARE, 1974, AND REPEALING ANY INCONSISTENT ORDINANCES THEREWITH.

BE IT ORDAINED by the Commissioners of Rehoboth Beach, in Session met, in the manner following, to wit:

Section 1. The Municipal Code of Rehoboth Beach, Delaware, consisting of fifteen (15) Chapters which is attached hereto and made a part of this Ordinance as though fully set out herein, be and the same is hereby adopted.

Section 2. Any Ordinance inconsistent with the provisions of The Municipal Code of Rehoboth Beach, Delaware, 1974, be and the same is hereby repealed to the extent of such inconsistency, except for any amendments thereto which have been adopted since April 1, 1974.

Adopted: November 8, 1974.

# PREFACE

This Code is the 1974 Revision, and the codification of all ordinances of a general and permanent nature that were deemed advisable to be included. The Charter of the City, adopted December 20, 1963 as Chapter 197, Volume 54, of the Laws of Delaware, as amended, is included in this volume.

Special ordinances dealing with only a portion of the inhabitants of the City rather than all of them, or relating to special or limited purposes, such as ordinances levying special assessments, paving, vacating or opening specified streets, providing for bond issues and other single purpose ordinances are not included herein.

The ordinances contained in this Code were classified according to subject matter, obsolete and conflicting provisions were eliminated and the remainder edited and, in many instances, substantially revised.

To facilitate usage, the Code Chapters are arranged in alphabetical order and numbered consecutively by Arabic numerals. Each Chapter is preceded by a Chapter Table of Contents which designates the material included within the Chapter. The general index, which appears at the end of the Code will serve as an accurate aid in locating specific provisions within the Code. Where appropriate, the Chapters have been subdivided into Articles, Divisions and Sections. Catchlines precede each of the various Code subdivisions. These Catchlines indicate in capsule form the contents of each subdivision.

The legislative history appearing at the end of each Section in the Code will enable the user to readily ascertain the Ordinance from which the new Section has been derived.

Each Code Section number consists of two component parts separated by a dash. The figure before the dash refers to the Chapter number and the figure after the dash refers to the position of the Section within the Chapter. Accordingly Section 10-12 indicates the tenth Chapter and the twelfth Section within that Chapter. In addition, a uniform system of designating sub-classifications of Sections has been utilized throughout.

New material may be inserted in the Code without disturbing the existing numbering scheme by using a decimal system of numbering. For instance, if three new Sections logically should be placed between Sections 10-12 and 10-13, such new Sections could be designated Sections 10-12.1, 10-12.2 and 10-12.3, respectively. New Chapters may be included by the addition of a capital letter after the Chapter number. If the new Chapter is to be included between Chapter 18 and Chapter 19, it would be designated Chapter 18A.

By using the decimal system, new Articles and Divisions also may be inserted in the Code between existing Articles and Divisions. If logic requires,

REHOB 010

new Articles and Divisions may be inserted at the end of the appropriate Chapter or Article, with the next sucessive number being assigned to the Article or Division.

The loose-leaf binder housing the Code facilitates the addition or removal of future ordinances and should serve as a convenient device for keeping the Code current.

Footnotes are contained throughout the Code in an effort to correlate related Code provisions, relevant Delaware State laws and reported court decisions.

The National Institute of Municipal Law Officers (NIMLO) wishes to express its appreciation for the cooperation of the officials and employees of the City of Rehoboth Beach during the preparation of the codification. Particular appreciation is due Bayard V. Coulter, City Manager, Lester F. Johnson, Mayor, and John E. Messick, City Solicitor, for their assistance during the progress of the codification.

This Code was prepared by NIMLO staff attorneys Barry A. Ponticelli and R. Colette McKenna under the direction of John E. Messick, City Solicitor of Rehoboth Beach.

General supervision in the preparation of this Code was by Charles S. Rhyne, General Counsel and Denis D. McKenna, Associate General Counsel.

MINUTES:    Regular Meeting of the Commissioners of Rehoboth Beach, Delaware
            August 11, 1995, 7:00 p.m., City Hall, Rehoboth Beach, Delaware

Mayor Cooper called the meeting to order at 7:00 p.m.
Mr. Hyde offered the Invocation, followed by the Pledge of Allegiance to the Flag.
The Secretary called the Roll.

PRESENT:    President                        Samuel R. Cooper, Mayor
            Vice President                   John F. Hyde
            Secretary                        Richard J. Darley
            Commissioner                     B A Cochran
            Commissioner                     John A. Salin
            Commissioner                     Warren H. MacDonald
            City Solicitor                   Walter Speakman
            City Manager                     Gregory Ferrese

ABSENT:     Commissioner                     Jan Konesey

**Correspondence**
The Secretary read letters from:
1. The Rehoboth Beach Public Library; Dee Bradley:  This letter asked for permission to erect a
4' x 8' sign in front of the reading garden to keep the public informed of the progress of the
campaign "The Next Chapter, A Library for the 21st Century".

2. Southern Delaware Choral Society, Elizabeth Hochholzer:  This letter asked for token support
of support for the World Premier of a major musical work being presented in April, 1996.

Miss Cochran asked what the City policy is regarding this?  Mayor Cooper noted that the City
once gave $5,000 per year to the YMCA and the Senior Center.  However, when Kimber Vought
was Mayor, it was decided that the City didn't want to fund the operating budgets, but would
possibly help with capital campaign.  The Commissioners gave to the Boy Scouts, the Little
League, and the Christmas Parade.

There was no desire to contribute to the Choral Society.

**Approval of Minutes**
Mr. Hyde made a *motion* to approve the minutes of the July 14 regular meeting, seconded by
Miss Cochran.

Motion carried -- "Aye"

**Report of the Police Department**
Chief Doyle reported for the month of July, 1995:

681 Arrests:  534 Traffic; 147 Criminal.  42 Cases were heard by the Alderman's Court #37.
Total fines collected in the amount of: $26,159.72.

REHOB 012

The restaurant application for Club Flamingo to be located at 137 Rehoboth Avenue was heard at a special meeting on July 31, 1995, and the request was denied.

The owner of 6 St. Michael's Place was notified that a new deck had been built without a building permit and was encroaching into the required side and rear yard setbacks. They have ten (10) days to apply for a variance or remove the deck.

The owner of 151 Henlopen Avenue was notified that the property had been illegally converted from two apartments into three apartments and that an inspection was required.

All businesses have been notified of their outstanding fees for the license year 1995-96 and to date, there are seven (7) remaining unpaid.

## Old Business
Chapter 3, Article 2, Regarding Signs
Mr. MacDonald reported on this matter. Mrs. Frederick agrees with most of the suggestions. Mr. Speakman thinks a hearing is needed. Mr. MacDonald thought it was just housekeeping and clarification to meet current practice.

Mr. MacDonald read the resolution and made a *motion* to adopt it, seconded by Mr. Salin.

Motion carried -- 6 Aye

Mr. Ferrese asked Mrs. Frederick if she has a sign log of pictures of all signs. Mrs. Frederick stated she does.

Mr. MacDonald asked if those pictures can be scanned into the main system. Mayor Cooper said yes.

Mr. MacDonald read the ordinance amending Chapter 3, Section 3-17.

Mayor Cooper asked that the word park be added.

Mr. MacDonald made a *motion* to adopt the ordinance as amended, seconded by Mr. Hyde.

Miss Cochran asked if this includes political signs? Mayor Cooper stated that the City can't prohibit them unless they are obstructing the view, etc. It is freedom of speech.

The question was called on the motion.

Motion carried -- 6 Aye

Deauville Beach Lease Agreement
Mr. MacDonald reported that the resolution would authorize the signing of the lease and authorize the Mayor and City Manager to work with the Division of Parks and Recreation. Mr. MacDonald then read the resolution.

Ordinance No. 895-1
Adopted August 11, 1995

### AN ORDINANCE TO AMEND CHAPTER 3 OF THE MUNICIPAL CODE OF REHOBOTH BEACH, DELAWARE, 1974, RELATING TO SIGNS

BE IT ORDAINED by the Commissioners of Rehoboth Beach, in session met, in the manner following to wit:

Section 1.  Chapter 3, Sec. 3-17, Municipal Code of Rehoboth Beach, Delaware, 1974 as amended be and the same is hereby further amended by adding a new subparagraph (a)(2) to read as follows:

(2)  *Sign* shall mean and include the definitions of the term as set forth in Chapter 19, Sec. 19-71, of this Code.

Section 2.  Chapter 3, Sec. 3-18, Municipal Code of Rehoboth Beach, Delaware, 1974 as amended be and the same is hereby further amended by deleting said section in its entirety and by substituting in lieu thereof a new section 3-18 to read as follows:

Sec. 3-18. Posting signs on public property prohibited.

No person shall keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the City.

Section 3.  Chapter 3, Sec. 3-19, Sec. 3-21, and Sec. 3-22, Municipal Code of Rehoboth Beach, Delaware, 1974 as amended be and the same is hereby further amended by deleting said sections in their entirety.

rehord.sign

**Sec. 3-15. Hours of distribution.**

No person shall distribute or deposit any commercial or noncommercial handbills daily from 8:00 p.m. to 8:00 a.m. of the following morning.

**Sec. 3-16. (Reserved)[1]**

## ARTICLE 2. SIGNS.[2]

**Sec. 3-17. Definition.**

(a) As used in this Article:

(1) *Sidewalk* shall mean and include that area from the edge of the sidewalk adjoining the abutting owner to the curbline of the abutting street.

(2) *Sign* shall mean and include the definitions of the term as set forth in Chapter 19, Sec. 19-71, of this Code.

(Ord. No. 1, § 4, 6/14/1963; amended Ord. No. 895-1, § 1, 8/11/1995.)

**Sec. 3-18. Posting signs on public property prohibited.**

No person shall keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city.

(Ord. No. 895-1,[3] § 2, 8/11/1995.)

---

[1]  Editor's Note: Former Section 3-16, Commercial distributors of handbills; license required, was repealed 8-10-1984 by Ord. No. 884-3.

[2]  Charter reference: As to power of city to regulate signs, see § 29a(10).
Cross reference: As to regulation of signs in Zoning Ordinance, see Ch. 19, Article 7, of this Code.

[3]  Editor's Note: This ordinance also repealed former Sec. 3-18, Projecting signs prohibited, adopted 6-14-1963 as Ord. No. 1, §4.

REHOB 015

### § 74-12. Commercial handbills; names of printer and distributor required.

All commercial handbills which are distributed, deposited, scattered, handed out or circulated in any place or under any circumstances shall have printed on the corner, front or back thereof, the following information:

A.  The name and address of the person who printed, wrote, compiled or manufactured such handbill.

B.  The name and address of the person who caused such handbill to be distributed.

### § 74-13. Distribution of handbills prohibited where premises properly posted.

No person shall throw, deposit or distribute any commercial or noncommercial handbill upon any private premises if requested by anyone thereon not to do so or if there is placed on such premises in a conspicuous position near the entrance thereto a sign bearing the words "No Trespassing," "No Peddlers or Agents," "No Advertisement" or any similar notice indicating in any manner that the occupants of such premises do not desire to be annoyed or to have their right to privacy disturbed or to have any such handbills left upon their premises.

### § 74-14. Hours of distribution.

No person shall distribute or deposit any commercial or noncommercial handbills daily from 8:00 p.m. to 8:00 a.m. of the following morning.[2]

## ARTICLE II
### Signs
### [Amended 8-11-1995 by Ord. No. 895-1]

### § 74-15. Definitions.

As used in this article, the following terms shall have the meanings indicated:

SIDEWALK — Includes that area from the edge of the sidewalk adjoining the abutting owner to the curbline of the abutting street.

SIGN — Includes the definitions of the term as set forth in Chapter 270, Zoning, § 270-4, of this Code.

### § 74-16. Posting signs on public property prohibited.

No person shall keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city.

Editor's Note: Former § 3-16, Commercial distributors of handbills; license required, which immediately followed this section, was repealed 8-10-1984 by Ord. No. 884-3.

7405

# Exhibit "C"

# Exhibit "C"

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| **ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS and CITIZENS FOR REHOBOTH BEACH, a political committee,**<br><br>Plaintiffs,<br><br>v.<br><br>**CITY OF REHOBOTH BEACH, DELAWARE and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware,**<br><br>Defendants. | **Case No. 05 - 514** |

## DEFENDANTS' RESPONSES TO PLAINTIFFS' FIRST REQUEST FOR ADMISSIONS

Defendants, City of Rehoboth Beach, Delaware and Gregory Ferrese, by and through their counsel, Marshall, Dennehey, Warner, Coleman & Goggin, pursuant to the Federal Rule of Civil Procedure hereby respond to Plaintiffs' Request for Admissions as follows:

1.    Admit that the Ordinance prohibits individuals and entities from erecting private signs on public property or public right of way located within the limits of the City.

RESPONSE:   After reasonable investigation, Answering Defendants are unable to admit or deny this Request for Admission inasmuch as it seeks a legal conclusion. In addition, the terms of the Ordinance speak for themselves and require no admission or denial concerning what they say.

2.    Admit that signs erected by the City currently are located on public property or public right-of-way located with the limits of the City.

RESPONSE:   Admitted.

3.    Admit that the sign for the Convention Center located in the middle of Rehoboth Avenue is located on public property or right-of-way.

RESPONSE:  Admitted.

4.    Admit that advertisements for private events have been displayed on the convention center sign located in the middle of Rehoboth Avenue.

RESPONSE:  Admitted.

5.    Admit that on or about July 9, 2005 representatives of the City removed plaintiffs' campaign signs from public property or right-of-way  located within the limits of the City.\

RESPONSE:  Admitted.

6.    Admit that the Ordinance is the only statute, code ordinance, regulation which you contend authorized representatives of the City to remove plaintiffs' campaign signs.

RESPONSE:  Admitted in part.  Denied in part.  It is admitted that Defendants removed plaintiffs' campaign signs pursuant to the Ordinance at issue.  It is denied that the Ordinance is the only legal authority concerning Defendants' removal of Plaintiffs' campaign signs.

7.    Admit that within the limits of the City there are in excess of 30 signs for the "Art League" attached to street sign poles.

RESPONSE:   It is admitted that within the limits of city there are numerous signs for the "Art League" attached to street sign poles, although Defendants are unaware of the exact number of these signs.

8.    Admit that the street sign poles to which the "Art League" signs are attached are located on public property or right of way within the limits of the City.

RESPONSE:  Admitted.

9.    Admit that the Village Improvement Association sign shown in Exhibit L to the Second Affirmative of Robert Sokolove is located on public property or right-of-way within the limits of the City.

RESPONSE:  Answering Defendants cannot vouch for the authenticity or accuracy of the photograph referenced in this Request inasmuch as Answering Defendants did not take the photograph.  Nevertheless, Defendants admit that the area shown in the photograph appears to be located on public property or right-of-way within the limits of the city.

10.    Admit that the Oak Grove Trailer Park sign shown in Exhibit C to the Second Affidavit of Robert Sokolove is located on public property or right-of-way within the limits of the City.

RESPONSE:  Answering Defendants cannot vouch for the authenticity or accuracy of the photograph referenced in this Request inasmuch as Answering Defendants did not take the photograph.  Nevertheless, Defendants admit that the area shown in the photograph appears to be located on public property or right-of-way within the limits of the city.

11.    Admit that the signs shown on Exhibits D through K of the Second Affidavit of Robert Sokolove are located on public property or right-of- way within the limits of the City.

RESPONSE:  Answering Defendants cannot vouch for the authenticity or accuracy of the photograph referenced in this Request inasmuch as Answering Defendants did not take the photograph.  Nevertheless, Defendants admit that the area shown in the photograph appears to be located on public property or right-of-way within the limits of the city.

12.    Admit that the signs shown on Exhibits 1 through 13 of the Affidavit of Scott W. Sterl are located on public property or right of way within the limits of the City.

RESPONSE:  Answering Defendants cannot vouch for the authenticity or accuracy of

the photograph referenced in this Request inasmuch as Answering Defendants did not take the

photograph.  Nevertheless, Defendants admit that the area shown in the photograph appears to be

located on public property or right-of-way within the limits of the city.

                              MARSHALL, DENNEHEY, WARNER,
                              COLEMAN & GOGGIN


                    BY:    /s/ Daniel A. Griffith, Esquire
                           DANIEL A. GRIFFITH, ESQUIRE
                           DE ID # 4209
                           1220 N. Market St., 5th Floor
                           P.O. Box 8888
                           Wilmington, DE  19899-8888
                           *Attorney for Defendants,*
                           City of Rehoboth Beach and
                           Gregory Ferrese


DATED: December 13, 2005

\15_A\LIAB\DAGRIFFITH\SLPG\322891\LAREFNER\20021\00101

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS and CITIZENS FOR REHOBOTH BEACH, a political committee, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF REHOBOTH BEACH, DELAWARE and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware, <br><br> Defendants. | Case No. 05 - 514 |

### NOTICE AND CERTIFICATE OF SERVICE

I, **DANIEL A. GRIFFITH**, hereby certify that on this ___13th___ day of ___December___, 2005,

caused two (2) copies of the foregoing **DEFENDANTS' RESPONSES TO PLAINTIFFS'**

**FIRST REQUEST FOR ADMISSIONS**, to be served via E-File and by Fax on counsel for the

parties at the following address:

Shawn Tucker, Esquire
Duane Morris LLP
1100 North Market Street, Suite 1200
Wilmington, DE 19801-1246

Eugene McKinley, Jr., Esq.
Fletcher, Heald & Hildreth, PLC
1300 North Market Street, 11th Fl.
Arlington, VA 22209

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _/s/ Daniel A. Griffith_____
     DANIEL A. GRIFFITH, ESQUIRE
     I.D. No. 4209
     1220 N. Market St., 5th Floor
     P.O. Box 8888
     Wilmington, DE 19899-8888
     (302) 552-4317

DATED: December 13, 2005
\15_ALLIAB\DAGRIFFITH\SLFG\322894\LAREFNER\15000\15000

# Exhibit "D"

# Exhibit "D"

## Griffith, Dan A.

**From:** Griffith, Dan A.
**Sent:** Wednesday, December 14, 2005 9:52 AM
**To:** 'Schiltz, Todd C.'
**Subject:** RE: Response To Request For Admissions

Todd:

I hope that the level of rancor between our respective clients does not affect how you and I treat each other. I'm not sure there is anything to be gained by "taking the gloves off" in our dealings with each other.

With respect to Plaintiffs' Requests for Admissions, I would make the following observations:

1. Plaintiffs' Amended Complaint was filed November 3 and Plaintiffs' Requests for Admissions were filed the next day. FRCP 36 provides that a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the Complaint. We can probably debate whether that means the original Complaint or the Amended Complaint, although in this case it would more appropriately refer to the Amended Complaint because (a) the Amended Complaint was filed before an Answer was filed and logic would seem to dictate that defendants be permitted to answer the Complaint before responding to Requests for Admissions; and (b) the only Requests that are really not unequivocally admitted are those based on the photographs in Mr. Sokolove's Second Affidavit, relating to the Amended Complaint, i.e., the "continuing violations". Therefore, while conceding that there is room for debate on the issue, the Requests may have been prematurely served and/or timely answered under FRCP 36.

2. Even if the Responses were late by a few days, it is inconceivable how Plaintiffs have been prejudiced by this slight delay given the substance of the responses and the absence of any activity on the part of the plaintiffs in reliance upon any "admissions" in those few days.

3. There doesn't seem to be any issue in the Responses that is worth extended debate on the nature and quality of the Responses. The factual matters concerning removal of the signs have essentially been admitted in straightforward fashion. The only qualifications to any admission are matters outside the personal knowledge of defendants - i.e., because defendants did not take the photos - and even these Responses admit that the photos appear to show areas which constitute public property or a public right of way.

In short, this does not seem to be the type of issue on which to engage in significant, time-consuming and expensive procedural debate. As set forth above, (paragraph #1) we contend that the Requests were premature under FRCP 36 and/or that the Responses were timely (i.e., within 45 days of service). I do not think it would be a productive use of our time or the court's time to seek a judicial intervention on this point, although plaintiffs are certainly entitled to move to have the Requests (almost all of which have been admitted substantively in our Responses) deemed admitted on a procedural basis.

Todd, I just believe that this is a rather unproductive exercise. Again, I'm hopeful that we can move past a lot of the acrimony.

Dan

---

**From:** Schiltz, Todd C. [mailto:TSchiltz@WOLFBLOCK.com]
**Sent:** Tuesday, December 13, 2005 5:17 PM
**To:** Griffith, Dan A.
**Subject:** Response To Request For Admissions

Dan,

I received defendants' responses to plaintiffs' first requests for admission which you sent over earlier today.  As you are aware, defendants did not respond to the outstanding requests for admission within 30 days and there was no agreement or court order extending the time to respond.  As a result, all of the requests are deemed admitted.  FRCP 36(a).

Plaintiffs will rely on these admissions going forward and through trial in this matter, notwithstanding defendants' efforts to belatedly object to and/or deny some of the the requests for admissions.

If defendants believe that plaintiffs should not be able to rely on these admissions and/or defendants intend to rely upon the objections or denials set forth in defendants' untimely response, then defendants must seek leave from the court.

Todd C. Schiltz
Wolf, Block, Schorr and Solis-Cohen LLP
1100 N. Market St., Suite 1001
Wilmington, DE 19801
ph:  (302) 777-0312
fax: (302) 778-7812