## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS and CITIZENS FOR REHOBOTH BEACH, a political committee,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF REHOBOTH BEACH, DELAWARE and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 05 – 514 KAJ |

## DEFENDANTS' ANSWER AND OPPOSITION TO PLAINTIFFS'
## MOTION FOR CONTEMPT

COMES NOW the City of Rehoboth Beach, Delaware ("City") and Gregory Ferrese ("Ferrese"), by and through Counsel, Daniel A. Griffith, Esquire, and hereby answer and oppose Plaintiffs' *Motion for Sanctions* as follows, to wit:

1.      The bases upon which Plaintiffs claim the City and Ferrese have violated the May 26, 2006, *Stipulated Consent Judgment and Order* (D.I. # 72), may be summarized as:

        A.      "Although the Order required the City to adopt a new ordinance by July 15, 2006, the City did not meet this deadline.  Rather, it was not until after plaintiffs advised the City that they would file a motion for contempt if the City did not comply with the Order that the City adopted City Ordinance § 74-17 . . . ."  (Plaintiffs' *Motion for Contempt* ["*Motion*"] at 4);

        B.      "Rather than eliminating selective enforcement of Section 74-16, Section 74-17 codifies it." (*Motion* at 5);

C.    "Defendants also have violated the Order by failing to pay plaintiffs $2,001.00.  Plaintiffs have asked for these funds, but defendants have not responded in any manner to the requests." (*Motion* at 6).

2.    Concerning the payment of the $2,001.00, attached hereto as Exhibit A is Counsel's August 14, 2006, correspondence to Plaintiffs' Counsel asking:  "Please let me know at your earliest convenience the identity of the person (to whom) the check should be made payable." (Exhibit A hereto).  To date, Plaintiffs have not responded to that necessary inquiry in order to have payment issue.

3.    Concerning Plaintiffs' allegations relating to the enactment of the "New Ordinance" itself, attached hereto as Exhibit B is the *Affidavit of Glenn C. Mandalas*, the City Solicitor.

4.    Since the inception of this lawsuit, Eugene M. Lawson, Esquire, a Member of the Delaware Bar, (Bar I.D. No. 3516), has been communicating with the City and the City's Counsel, "on behalf of Bob Sokolove, Dave McCarthy and Bill Shields". (*See* Exhibit C hereto, being correspondence dated July 11, 2005, and July 13, 2005, from Mr. Lawson to City Manager Greg Ferrese).

5.    Although his appearance as counsel of record has not been entered, (*I.e.*, Court Docket, *passim*), Mr. Lawson corresponded with the City's Counsel and Plaintiffs' Counsel of Record, *inter alia* by e-mail dated July 27, 2005, "to confirm our understanding after the [preliminary injunction] hearing yesterday concerning the suggestion by Judge Jordan that we reach an accommodation on at least some of the issues regarding placement of signs," (Exhibit D hereto being Mr. Lawson's July 27, 2005, e-mail), and outlining a proposed course of action to

codify "objective criteria regarding sign placement for the sake of the candidates and the enforcers." (*Id.*).

6.     In his actions towards and communications with the City, Mr. Lawson has at all times represented that he speaks "on behalf of" Plaintiffs.

7.     At the City's invitation, Mr. Lawson was intimately involved with every step of the process followed by the City in its efforts to comply with the May 26, 2006, *Order*. (Exhibit B, *passim*).

5.     It was Mr. Lawson who proposed an ambitious comprehensive rewrite of the City's sign ordinance, and Mr. Lawson who waived any claim by Plaintiffs against the City for failure to meet that deadline through his direct participation in drafting both the Enforcement Directive enacted by the City on July 3, 2006, and subsequently Section 74-17, adopted by the City on September 18, 2006, which Plaintiffs now challenge.

6.     "Consent decrees are interpreted under ordinary contract law principles. See *Fox v. United States Dep't of Hous. & Urban Dev.*, 680 F.2d 315, 319 (3rd Cir. 1982) ('Although consent decrees are judicial acts, they have many of the attributes of contracts voluntarily undertaken.')." *Harris v. The City of Philadelphia*, 47 F.3d 1311, 1323 (3rd Cir. 1995) (further citations to the premise stated are omitted).

7.     The May 26, 2006, *Stipulated Consent Judgment and Order* (D.I. # 72), was drafted and entered into by Plaintiffs' and Defendants' Counsels prior to its entry as an *Order* of this Court, and the City's good faith compliance with its requirements should be interpreted under ordinary contract principles.

8.     As the Court noted in a lengthy footnote to its July 28, 2005, *Memorandum Order* attached as Exhibit A to Plaintiffs' *Motion*: "[T]he parties ought to be speaking to each other . . .

I hope that hearing one another in court and reading this Order will be of some assistance to the parties in setting aside any rancor associated with litigation, so that their shared interest in benefiting the City and its residents will predominate and they can cooperate in facilitating a fair election." (*Mem. Order*, July 28, 2006, at pg. 17 n.14).

9.     The City took the Court's comments to heart and sought Plaintiffs' active participation – through Mr. Lawson – in addressing the constitutional infirmities of the existing Ordinance Code § 74-16 through the Enforcement Directive that was adopted on July 3, 2006; and subsequently through a more comprehensive approach by refining and codifying the Enforcement Directive through enactment of Code § 74-17.  (Mandalas Affidavit, Exh. B, *passim*).

10.     Mr. Lawson even appeared at the September 28, 2006, Mayor & Commissioners' meeting at which the Ordinance enacting § 74-17 was introduced and his only comment was "that a comprehensive rewrite of the ordinance is better", (Mandalas Affidavit, Exhibit B hereto at Exhibit D, pg. 6 therein), without objecting to either the form or substance of the proposed and subsequently enacted Code § 74-17 itself.

11.     Mr. Lawson's original draft of the proposed ordinance that became Code § 74-17 even included the "grandfathered" or "legally non-conforming" provision, (Mandalas *Affidavit* at ¶16), to which Plaintiffs now object. (*Motion* at 5-6).

12.     Concerning Plaintiffs' claims within their *Motion* that Code § 74-17 amounts to a "codified discriminatory, selective enforcement mechanism" in violation of the *Consent Order*, (*Motion* at 7), the Court ruled in the July 26, 2005, *Memorandum Order* that § 74-16 was "content neutral" and it presented "a straightforward [case] of content-neutral restrictions on the time, place, and manner of expression." (*Mem. Ord.* at pg. 12).

13.    The specific enforcement infirmities addressed by the Court were that "the City

sometimes allows political signs on public rights-of-way." (*Mem. Ord.* at pp. 14-15).  Further,

the Court found that the "unwritten 'rules of thumb' that on the City's cognescenti know . . . . is

not a constitutionally valid way of doing business." (*Id.* at pp. 15-16).

14.    In addition to having participated in the drafting of the Enforcement Ordinance §

74-17 which they now challenge as being in violation of the *Consent Order*, Plaintiffs' *Motion*

omits pointing out that the provision excluding from enforcement "'*any private advertisement,*

*poster or sign on public property as of May 1, 2006*'", (*Motion* at 5, quoting § 74-17) (emphasis

as in original), is content neutral and gives notice as to those signs which will be deemed in

violation and subject to removal under the new Ordinance according to reasonable time, place

and manner restrictions.

15.    The May 1, 2006, enforcement date is content-neutral precisely because it is

temporal and makes no distinction as to the purpose or content for which the legally non-

conforming or "grandfathered" signs were erected or the message they convey.

16.    Under the contract principles by which the City's compliance with the May 26,

2006, *Consent Order* must be judged, the City acted in good faith, in concert with Plaintiffs'

Counsel Mr. Lawson, to comply with the terms of the *Order*.  Plaintiffs themselves did not

appear at the public hearings on the City's enactment of either the July 3rd Enforcement

Directive, nor the September 18th hearing on the Ordinance to enact Code § 74-17.  As concerns

the payment of the $2,001.00, the City's request for payment instructions has gone unanswered.

17.    *If* the City's good faith efforts to fulfill the *Consent Order*'s requirements are

lacking at this juncture, it is no basis for a finding of contempt.  Rather, any such infirmities the

Court may find are solely attributable to the City's reliance upon Plaintiffs themselves, and the

representations of their Counsel, that the steps being taken fulfilled both the spirit and intent of the May 26th *Consent Order* both as understood by the City and by Plaintiffs themselves.

18.     After full participation in the process through Mr. Lawson, and after actively creating the circumstances upon which the *Motion* is based, Plaintiffs may not now be heard to complain that the City's actions are contemptuous and worthy of the Court's censure.

19.     If the Court should find infirmities in the City's compliance with the May 26th *Consent Order*, the City stands ready to cure those deficiencies.  However this instant *Motion* comes as a complete surprise to the City given Mr. Lawson's affirmation of the City's efforts and actions, and in the absence of any communications from Plaintiffs to the contrary prior to receipt of the *Motion* itself.

WHEREFORE The City of Rehoboth Beach and Gregory Ferrese request this Honorable Court enter an Order denying Plaintiff's contempt prayer, and a determination that the City has shown good cause why it should not be held in contempt, along with an award of the City's and Ferrese's fees and costs incurred in defending the *Motion* when it is premised upon Defendants' good faith reliance upon Plaintiffs' representations.

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN


  */s/Daniel A. Griffith*
Daniel A. Griffith, Esquire (I.D. No. 4219)
1220 North Market Street, 5th Floor
P.O. Box 8888
Wilmington, DE 19899 – 8888
tel.: 302.552.4317
fax.: 302.651.7905
e-mail: dagriffith@mdwcg.com

*Counsel for The City of Rehoboth Beach and
Gregory Ferrese*

Dated: November 10, 2006