## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS and CITIZENS FOR REHOBOTH BEACH, a political committee,** | ) ) ) ) | |
| **Plaintiffs,** | ) ) | **Case No. 05 – 514-\*\*\*** |
| **v.** | ) ) ) | |
| **CITY OF REHOBOTH BEACH, DELAWARE and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

---

## DEFENDANTS' ANSWERING BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR COSTS AND ATTORNEYS' FEES

---

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

*/s/ Daniel A. Griffith*
DANIEL A. GRIFFITH, ESQ.
Delaware Bar I.D. No. 4209
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4300
*Counsel for Defendants*

Dated: October 15, 2007

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ....................................................................ii

I.    INTRODUCTION ........................................................................1

II.   STATEMENT OF FACTS .............................................................4

      A.  Plaintiffs' Reaction To The City's Removal of Campaign Signs ...............5

III.  PROCEDURAL HISTORY ............................................................7

      A.  July 21, 2005 (Filing Of Plaintiffs' Complaint) - July 26, 2005 (Preliminary

      Injunction Hearing)..................................................................7

      B.  Communications Between The Parties Following July 28, 2005 Memorandum

      Order ..................................................................................8

      C.  Plaintiffs' Litigation Conduct With Respect To Counsel Fees................10

IV.   LEGAL ARGUMENT ..................................................................15

      A.  In View Of The Nominal Compensatory Relief They Obtained, Plaintiffs Are Not

      Entitled To Any Counsel Fees As A Matter Of Law.......................................15

      B.  Even If This Court Were Inclined To Exercise Its Discretion To Award Counsel

      Fees, Any Award Of Counsel Fees In Favor Of Plaintiffs Should Be Greatly Reduced

      And/Or Minimal......................................................................18

          1.  Plaintiffs Are Not Entitled To Be Paid For Work On Non-meritorious Claims ..20

      C.  Plaintiffs Are Not Entitled To Payment For Duplicative Or Excessive  Work And

      Expenses ...............................................................................22

      D.   Particulars Of Plaintiffs' Attorneys' Billings.............................................24

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

## CASES

Allied Artist Pictures Corp. v. Barron, 413 A.2d. 876 (1980) (Del. Supr.)............................20

Benton v. Oregon Student Assistance Commission, 421 F. 3d. 901, (9th Cir. 2005).............15

Farrar v. Hobby, 506 U.S. 103, (1992)........................................................................ 15, 16, 17

Hensley v. Eckerhart, 461 U.S. 424, (1983) .......................................................... 16, 22, 23, 24

Hewitt v. Helms, 482 U.S. 755, (1987) ...................................................................................16

In re:  Diamond Shamrock Corp., Del. Ch. C.A. No. 8798, Slip. Op. at 12, Jacobs, V.C.

(Sept. 14, 1988) ................................................................................................................19

Rosen v. Chichano Milwaukee Corn, Del. Ch. No. 10526, Slip. Op. at 2, Chandler, C.C.

(Jan. 19, 1994) ................................................................................................................20

## STATUTES AND OTHER AUTHORITIES

42 U.S.C. §1983 ......................................................................................................................15

42 U.S.C. §1988 ......................................................................................................................15

City of Rehoboth Beach Ordinance §74-16...............................................................................4

Fed. R. Evid.  408  .................................................................................................................12

# I. __INTRODUCTION__

At the time this action was filed on July 21, 2005, the individual Plaintiffs were candidates for political office in the City of Rehoboth Beach, with an election three (3) weeks away, on August 13, 2005.  In their Complaint (and Request for Preliminary Injunctive Relief), Plaintiffs contended that the campaign signs they had erected were being removed by the City pursuant to an Ordinance which was unconstitutional on its face.  United States District Judge Jordan held a preliminary injunction hearing three (3) business days after Plaintiffs' Complaint was filed.  Following the preliminary injunction hearing, Judge Jordan *denied* Plaintiffs' application for preliminary injunction.  (See Judge Jordan's Memorandum Opinion, attached as Exhibit "A").  Judge Jordan concluded that "the Plaintiffs have failed to show a likelihood of success in challenging the Ordinance as facially unconstitutional…" (Exhibit "A", p. 13).  While Judge Jordan noted that the Plaintiffs would likely succeed on the claim that the Ordinance was unconstitutionally *applied* (See Exhibit "A", p. 16) he made very clear in his Opinion that Plaintiffs' application was being denied.  (Exhibit "A", p. 16-17).

Helpfully, Judge Jordan's written comments strongly suggested that his decision should be the end of the dispute, such that the parties should simply ensure a fair election and go their separate ways:

> As I mentioned to the parties at the close of the preliminary injunction hearing, the parties ought to be speaking to each other in an effort to appropriately maximize the opportunity for the voters of Rehoboth to be advised of the candidacies of those running in the August 13 election, including the Plaintiffs.  While preliminary injunctive relief has not been granted, I hope that hearing one another in Court and reading this Order will be of some assistance to the parties in setting aside any rancor associated with litigation, so that their shared interest in benefiting the City and its residents will predominate and they can cooperate in facilitating a fair election. (Exhibit "A", p. 17, n. 14).

The City had agreed prior to the injunction hearing and after Judge Jordan's Memorandum Order up through the August 13, 2005 election not to remove any of the Plaintiffs' campaign signs.

Notwithstanding that the case had been litigated for only three (3) business days (5 total days) before the preliminary injunction hearing and that their injunction request was *denied*, following the issuance of Judge Jordan's Memorandum Order, Plaintiffs advised the City that they expected the City to pay Plaintiffs' counsel fees, which at that point was approaching $60,000. This incredibly audacious position contravened both the spirit and letter of Judge Jordan's Memorandum Order. Beyond that, the astronomical figure of $60,000 for 3 business days (5 total days) of litigation was exponentially higher than the legal fees expended by the City, *which was successful in defending against plaintiffs' application.*

Unfortunately, from that point forward, in a fashion which defied the admonition in Judge Jordan's Memorandum Order, Plaintiffs pursued a course of over-litigation in a self-evident effort to drive up counsel fees and, hence, their leverage in settlement negotiations without affecting the substantive merits of the claims or defenses - the election was long over and any information developed concerning the sign-removal ordinance or practices had been developed in connection with preliminary injunction hearing. This course of over-litigation included splitting the representation of the Plaintiffs into multiple law firms, filing a Motion for Summary Judgment during the pendency of which Plaintiffs amended their initial pleadings and pursuing discovery which would not impact the substantive issues.

Conversely, recognizing that the facts would not change and that Judge Jordan's findings in the preliminary injunction hearing would likely be finalized following a trial on the merits (i.e., that the sign ordinance was not unconstitutional on its face but that it was enforced

unconstitutionally) and further recognizing that Plaintiffs had suffered no actual damages (given the inability to prove that the election was in any way impacted by these issues), the City engaged in efforts to resolve the litigation without having to undergo an extended course of litigation toward a rather obvious result.  Unfortunately, Plaintiffs' intractability on the counsel fee issue made an early resolution impossible.

Ultimately, the City crafted a proposal whereby the escalating litigation would stop and the counsel fee issue would be presented to the Court.  The City agreed to designate Plaintiffs as "prevailing parties" to get the issue on counsel fees before the Court and to pay nominal damages of $2001.  Having lost on the application they spent approximately $60,000 pursuing, having then expended exorbitant and unnecessary fees and costs over-litigating the case and then recovering nominal damages, Plaintiffs now seek the windfall of having their counsel fees borne by the City.  Because the relevant case law makes clear that Plaintiffs are not entitled to counsel fees under these circumstances, it is respectfully requested that Plaintiffs' application be denied and that this litigation be ended once and for all the manner in which Judge Jordan intended in July, 2005:  the parties going their separate ways, having given the voters of Rehoboth Beach a fair election.

## II.  **STATEMENT OF FACTS**

Plaintiff, Robert Sokolove, was a candidate in the City of Rehoboth Beach's August 13, 2005 mayoral election.  His opponent was Mayor Samuel Cooper, a fifteen (15) year incumbent. Co-plaintiffs David McCarthy and William Shields were candidates for City Commissioner in the August 13, 2005 election.

In advance of the August 13, 2005 election, the individual Plaintiffs had placed campaign signs throughout the City of Rehoboth Beach, in both public right-of-ways and on private property.

City of Rehoboth Beach Ordinance §74-16 provides that "no person shall keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the City".

Essentially, Ordinance §74-16 prohibits private signs on the City's public property. According to the City of Rehoboth Beach's Code Enforcement Officer, Alexander Walter Onizuk, the City of Rehoboth Beach removes all signs, not just political signs, that are improperly placed on the right-of-way or city property pursuant to Ordinance §74-16 (see transcript of deposition of Alexander Walker Onizuk, attached as Exhibit "B", at pp. 38-39, 42). "Nobody told me to remove any political signs.  They just told me to pick up signs".

Pursuant to the enforcement of §74-16, the City removed those campaign signs from the individual Plaintiffs which were placed on city property or the public right-of-way.  The City did not remove only Plaintiffs' signs - the City also removed campaign signs for incumbent Mayor Cooper.  (See Exhibit "B", p. 44).

Through July 19, 2005, the City removed a total of nineteen (19) signs for Plaintiff Sokolove and three (3) signs for Mayor Cooper.  According to Mr. Onizuk, on July 7, 2005, he

removed political campaign signs located in the public right-of-way. (Exhibit "B", p. 45). The public right-of-way includes land from the sidewalk to the curb where there is sidewalk, land between the curb and a continued line from a sidewalk where the sidewalk discontinues, and land between the street and back side of the utility pole. (See Exhibit "B", p. 16). The City did not remove any of the Plaintiffs' campaign signs from private property. (See Exhibit "B", pp. 84-85, 88-89, 92, 94). Mr. Onizuk testified repeatedly that only signs located in the right-of-way, whether they were signs for Mr. Sokolove or Mayor Cooper or non-political signs, were removed. Mr. Onizuk uniformly removes signs located in the right-of-way. (Exhibit "B", p. 102). Specifically, the City removes contractor signs that violate Ordinance §74-16 (Exhibit "B", p. 68 and p. 103). The City removes realty signs that violate Ordinance §74-16 (Exhibit "B", p. 72 and p. 103). The City removes auction signs that violate Ordinance §74-16 and rental signs that violate Ordinance §74-16 (Exhibit "B", p. 103).

### A.    Plaintiffs' Reaction To The City's Removal of Campaign Signs [1]

On July 9, 2005, one of the Plaintiff's political supporters, Mr. Joseph Hill, became aware of the City's removal of the campaign signs and of the removed signs being in the back of a city pick-up truck. Mr. Hill made a complaint to the City's police department, which was followed by a brief investigation by the Department. In connection with the investigation, Mr. Hill stated that the signs should have not been removed and that he had tried unsuccessfully to contact the City of Rehoboth Beach Manager, Gregory Ferese, to discuss the matter with him. Mr. Ferese advised the police "that the signs should not have been picked up, and he did not know why they

---

[1] The following facts in this section are taken directly – and practically verbatim – from Judge Jordan's July 28, 2005 Memorandum Order (Exhibit "A").

had been… he advised me to give Hill permission to remove the signs from the back of the vehicle". (Exhibit "A", p. 4).

Later that same day, Mr. Sokolove, having recovered the signs, placed them once more at various locations in the City. Late that evening, however, Mr. Onizuk again removed some of the signs. Mr. Sokolove went to Mr. Onizuk and demanded an explanation. According to a report later filed by Officer Banks of the Rehoboth Police, Mr. Sokolove, who is an attorney, accused Mr. Onizuk of having "committed a felony federal law by removing the signs". Officer Banks noted that Mr. Sokolove had said the same thing to him. At some point, the Plaintiffs also suggested that, by removing the signs, Mr. Onizuk was guilty of theft under state law. (Exhibit "A", p. 4).

Shortly thereafter, on July 12, 2005, Mr. Sokolove and Officer Banks had a further conversation stemming from the allegations of theft. According to Officer Banks, Mr. Sokolove became argumentative, insisting he was permitted under the First Amendment to put his signs anywhere and that the City's property rights ended at the edge of the street, as opposed to including rights-of-way over the curb, the sidewalks, and grassy areas between the curbs and sidewalks. Officer Banks advised Mr. Sokolove later that day that no further investigation of the theft charges would be made, that he had learned that the State Attorney General's Office would not prosecute that charge and that, from the Police Department's perspective, the case was effectively closed. (Exhibit "A", p. 5).

At or about that same time, the Plaintiffs retained counsel and promptly sent letters demanding explanation for the City's removal of the signs and threatening "civil and criminal liability against the perpetrators". (Exhibit "A", p. 5). Someone from the City communicated to

the Plaintiffs that the City was relying on City Ordinance §74-16, as the basis for removing the signs.

As Judge Jordan eloquently put it:

> Perhaps because of the fast-approaching election day, or the failure of the principals to actually speak to each other, or the remarkably rapid rise in the temperature of the rhetoric thrown about by those involved in the dispute, no resolution of the sign placement issue was seriously discussed before suit was filed. Instead, as promised in their second letter to the City, the Plaintiffs proceeded to Court. (Exhibit "A", pp. 5-6).

## III.  PROCEDURAL HISTORY

**A.      July 21, 2005 (Filing Of Plaintiffs' Complaint) - July 26, 2005 (Preliminary Injunction Hearing)**

Plaintiffs' Complaint concentrated almost exclusively on the allegation that Ordinance §74-16 is facially unconstitutional.  On the date the Complaint was filed, Judge Jordan conducted an *ex parte* teleconference with Plaintiffs' counsel and scheduled the case for a preliminary injunction hearing on Tuesday, July 26, 2005.

Judge Jordan ordered that the parties proceed with limited discovery on an expedited basis (Friday through Monday) before the Tuesday hearing.  The parties exchanged documents and took a few limited depositions during this timeframe.  Somehow, Plaintiffs contend that they generated almost $60,000 in legal fees and costs up to that point.

Following the hearing, by Memorandum Order dated July 28, 2005, Judge Jordan denied the application for preliminary injunction.  The Judge concluded that Plaintiffs had failed to demonstrate a reasonable likelihood of success on the merits with respect to the facial validity of the Ordinance.  While the Judge mentioned that Plaintiffs had a likelihood of success concerning the *enforcement* of the Ordinance, he denied the relief requested by the Plaintiffs.  (See Exhibit "A").

Judge Jordan's Memorandum Order was issued approximately two and a half weeks before the election. As such, Judge Jordan sent a very clear message to the parties about going their separate ways with respect to the litigation and ensuring a fair election:

> As I mentioned to the parties at the close of the preliminary injunction hearing, the parties ought to be speaking to each other in an effort to appropriately maximize the opportunity for the voters of Rehoboth to be advised of the candidacies of those running in the August 13 election, including the Plaintiffs. While preliminary injunctive relief has not been granted, I hope that hearing one another in Court in reading this Order will be some assistance to the parties in setting aside any rancor associated with litigation, so that their shared interest in benefiting the City and its residents will predominate and they can cooperate in facilitating a fair election. (See Exhibit "A", p. 17).

**B.      Communications Between The Parties Following July 28, 2005 Memorandum Order**

In the spirit of Judge Jordan's comments, notwithstanding the denial of Plaintiffs' application, the City did not remove *any* campaign signs from that point through the August 13, 2005 election. In contrast, heedless of Judge Jordan's message about the parties walking away from litigation, and ignoring the fact that all of the relief they requested in their application was denied by Judge Jordan, the Plaintiffs requested that the City bear the burden of their legal fees, in the amount approaching $60,000.

Given that (1) the Plaintiffs were unsuccessful in their application; and (2) $60,000 for four days of litigation was exorbitant, especially in relation to the City's legal fees, which were a fraction of that amount (notwithstanding that the City had prevailed to that point) the City declined to simply write Plaintiffs a check. Rather, the City understood Judge Jordan's comments to be an admonition to *both* parties to put the voters' interests above their own. Plaintiffs did not see it that way and continued to demand the payment of their counsel fees. By correspondence dated August 17, 2005, the City's counsel forwarded the City's Answer to

Plaintiffs' Verified Complaint to Plaintiffs' Counsel. (See Exhibit "C"). The City's counsel first noted that the original Verified Complaint appeared to be moot or obsolete given that circumstances had changed since the August 13, 2005 election concerning the Plaintiffs' candidacy. More specifically and importantly, however, the City's counsel requested that Plaintiffs' counsel, in the spirit and according to the letter of Judge Jordan's Memorandum Order, simply walk away from litigation:

> …It would seem to me that a reasonable interpretation of the message inherent in Judge Jordan's Order was that, while Plaintiffs were not entitled to the relief sought, there could be some exposure to the City in the future if the City did not ensure that it's Ordinance was applied properly with respect to Plaintiffs' political signs between the date of the Order (July 28) and the August 13 election. Since the City did not remove <u>any</u> political signs between July 26 and the August 13, 2005 election, it seems that Judge Jordan contemplated that the parties would simply go their separate ways and bear their own expenses.

> Under the circumstances, I would appreciate your reflection upon the above and contacting me concerning Plaintiffs' amenability to having this matter dismissed without prejudice to Plaintiffs' right to re-file in the event that Plaintiffs believe that the Ordinance is being applied improperly. (See Exhibit "C").

Unfortunately, in response to this olive branch, Plaintiffs' counsel wrote a letter dated August 24, 2005 demanding rescission of the Ordinance, a signed Stipulation from the City that it will enforce the new Ordinance in a non-discriminatory manner and "Defendants agree to pay Plaintiffs' attorneys' fees". (See Exhibit "D"). Plaintiffs' attorneys' fees at that point - with almost no litigation - were approximately $60,000.

By correspondence dated August 29, 2005, defense counsel responded to Plaintiffs' counsel's letter. In relevant part, the City's counsel stated:

> In terms of the merits of Plaintiffs' claim, it seems that Plaintiffs' settlement demand represents everything that the Plaintiffs would receive if they had been successful (which they were not) at the preliminary injunction hearing, along with a

9

demand for full counsel fees. In essence, notwithstanding (1) the denial of Plaintiffs' request for injunctive relief, (2) Judge Jordan's ruling concerning the Constitutional validity of the Ordinance at issue (which is obviously not likely to change regardless of how much discovery is conducted) and (3) the fact that Defendants did not remove any of Plaintiffs' political signs in the weeks leading up to the election; Plaintiffs' settlement demand seeks utter capitulation on the part of Defendants, i.e., virtually every form of relief to which Plaintiffs would be entitled had they actually prevailed at the preliminary injunction hearing.

I am hopeful that I conveyed to you during our August 23, 2005 teleconference how difficult it is for Defendants to accept Plaintiffs' settlement proposal under the circumstances. Defendants prevailed at the preliminary injunction hearing and, in deference to Judge Jordan's statements concerning the enforcement of the Ordinance, did not remove any of Plaintiffs' political signs following Judge Jordan's Opinion. The election itself was eminently fair and resulted in a landslide against the Plaintiffs. To pay Plaintiffs' counsel fees (which I understand are approximately $60,000), amend the Ordinance and/or sign a Stipulated Order essentially admitting unconstitutional enforcement of the Ordinance, which seems to be of absolutely no benefit to the defense, would only make sense if one were to accept the inevitability of Plaintiffs not only prevailing at trial but also obtaining some form of relief and then having the Court determine that an award of counsel fees is appropriate. ...

In sum, it is unfortunate that this litigation has become primarily about Plaintiffs" counsel fees for approximately $60,000. I am genuinely chagrined that the parties cannot mutually take away from Judge Jordan's Order that which we believe the Court intended: that the parties work together to ensure a fair election and then go their separate ways. (See Exhibit "E").

Unfortunately, but predictability and as forecast in this letter, the litigation became purely and exclusively about Plaintiffs' recovery of their counsel fees.

## C.      Plaintiffs' Litigation Conduct With Respect To Counsel Fees

Once it was apparent that the City would not simply capitulate to the City's payment of their counsel fees, the Plaintiffs undertook a course of conduct which can be appropriately described as "over-litigation". That is, as their first formal action following the issuance of

Judge Jordan's Memorandum Order, Plaintiffs filed a Motion for Summary Judgment. Bizarrely, however, Plaintiffs also filed an Amended Complaint simultaneously with the dispositive motion. While that clearly-premature application was pending, the parties appeared for a somewhat expedited mediation before Magistrate Thynge on December 8, 2005. Somehow, between Judge Jordan's July 28, 2005 Memorandum Opinion and Mediation, Plaintiffs' counsel fees rose from $60,000 to approximately $97,000 despite the fact that no discovery had taken place. While Plaintiffs might argue that they filed a summary judgment motion (and generated fees of over $35,000 in connection with that application) the thrust of the Motion for Summary Judgment was virtually identical to that of Plaintiffs' Preliminary Injunction Brief five months earlier.

In any event, by this point, while the parties were still in the pleadings stages (i.e., no discovery having been conducted or sought), Plaintiffs had managed to generate almost $100,000 in counsel fees <u>in a case with absolutely zero compensatory damages</u>. Based on this background, Mediation was predictably unsuccessful.

Following the unsuccessful Mediation, Plaintiffs served, and the City responded to, Requests for Admissions. [2] Following the Request for Admissions, the parties began to undertake an effort to conduct depositions. However, it was apparent that the only real issue was Plaintiffs' counsel fees. More specifically, there would be no discovery which would shed light on (1) the plain language of the Ordinance at issue; or (2) the manner in which the City enforced

---

[2] Plaintiffs challenge the timing of Defendants' responses. Attached as Exhibit "F" is a mid-December 2005 exchange of e-mails between counsel concerning the responsiveness of the City's answers. Beyond the substance of the communications, the messages are noteworthy for their tenor. The City's counsel wrote: I hope that the level of rancor between our respective clients does not affect how you and I treat each other. I am not sure that there is anything to be gained by "taking the gloves off" in our dealings with each other…In short, this does not seem to be the type of issue on which to engage in significant, time-consuming and expensive procedural debate…I do not think it would be a productive use of our time or the court's time to seek a judicial intervention on this point, although Plaintiffs are certainly entitled to move to have Requests (almost all of which have been admitted substantively in our Responses) deemed admitted on a procedural basis…Todd, I just believe that this is a rather unproductive exercise. Again, I am hopeful that we can move past a lot of the acrimony". (See Exhibit "F").

the Ordinance, beyond what was developed in connection with the preliminary injunction hearing. Thus, the parties were simply killing time awaiting a trial on undisputed facts with an outcome (as forecast by Judge Jordan) which was relatively certain. In view of this procedural posture, the City's counsel made a good-faith effort to short-cut this process and get to the heart of the only real issue:  whether Plaintiffs would be entitled to counsel fees. Specifically, by correspondence dated January 13, 2006, the City's counsel wrote to Plaintiffs' counsel:

> It was apparent in our initial discussions, following Judge Jordan's Opinion of July 26, 2005, continued to be apparent during the course of the Mediation and remains apparent today, that the central impediment to resolving this case is a purely legal issue: whether and to what extent Plaintiffs may be entitled to recover their counsel fees under 42 U.S.C. §1988. I have a proposal that may be worthwhile in resolving this point.
>
> What follows is a purely hypothetical scenario and not intended to express any view concerning the relative merits of our position. Moreover, what follows is truly for settlement purposes and is not to be deemed evidentiary pursuant to Fed. R. Evid. 408.
>
> I believe that you and I (at least at the Mediation) seem to agree that the following scenario is possible, probable or even inevitable:
>
>> 1.    While the Ordinance at issue is not facially unconstitutional, it was enforced in an unconstitutional fashion by the City of Rehoboth Beach in advance of the August 13, 2005 elections. Thus, we can presume for purposes of this proposal that Plaintiffs will be able to establish that a Constitutional violation occurred.
>>
>> 2.    While Plaintiffs may prove that a Constitutional violation occurred, Plaintiffs may not be able to prove that the Constitutional violation was the proximate cause of the election results.
>>
>> 3.    In the absence of any actual damages, i.e., (a Constitutional violation without proximate cause), the court will still award nominal damages to Plaintiffs.

> 4. The establishment of the Constitutional violation and the entitlement to nominal damages will allow the court, if it is so inclined, to exercise its discretion to award counsel fees to the Plaintiffs.
>
> If this scenario plays out, the real dispute between our clients is whether the court will, in fact, exercise its discretion to award counsel fees. Your clients believe that the court will award counsel fees under the circumstances and my clients believe that the absence of proximate cause and/or actual damages mean that the court will likely not award counsel fees.
>
> Rather than to consume time and expense litigating what will ultimately be this precise legal issue, I propose that we submit the issue for resolution to Judge Jordan upon the facts which are stipulated for purposes of his ruling. That is, we propose the foregoing four (4) paragraphs as "stipulations" to Judge Jordan for purposes of seeking his advisory ruling on whether counsel fees would be awarded under the circumstances. Obviously, Judge Jordan's advisory ruling would likely resolve the case.
>
> I would appreciate you contacting me in order to flush this out a little further and to discuss your client's amenability to this proposal. (See Exhibit "G").

Following this proposal by City's counsel, the parties began negotiations concerning the way to posture the matter procedurally for the submission of the "counsel fee issue" to be submitted to the court. While the parties agreed that the idea of a "request for advisory ruling" was impractical, the parties continued to work together to figure out a way that the "counsel fee issue" could be presented to the court.

Plaintiffs believed that whatever formal agreement was executed had to be termed a "judgment" and had to designate the Plaintiffs as "prevailing parties" *just to get the "counsel fee issue" to be considered by the court.* That is, Plaintiffs were concerned that in the absence of such language in the parties' agreement, the court would simply decline to consider a counsel fee application. The City granted Plaintiffs' request to term the agreement a "judgment" and

designate Plaintiffs as "prevailing parties" in an effort to avoid further litigation on irrelevant points and get the "counsel fee issue" before this court.

Parenthetically, during these negotiations, Plaintiffs were pressing for the deposition of a city representative. It was the City's belief that enough time and expense had already been consumed following Judge Jordan's Memorandum Order but the City did agree to produce the City Manager as its designated representative. For some reason, Plaintiffs have characterized their pressing for Mr. Ferese's deposition as a catalyst in the parties' ultimate agreement. This assertion is completely belied by the January 13, 2006 letter (Exhibit "G") making clear that the City proposed what ultimately became the parties' agreement well before the scheduling and postponement of Mr. Ferese's deposition. It is apparent that Plaintiffs' reference to the postponements of Mr. Ferese's deposition as an incentive for the City to enter into the resolution is a *post facto* justification for the needless time they spent pushing and "preparing" for the deposition.

Also parenthetically, notwithstanding the absence of any factual issues, the evidence of any conflicts of interest between the Plaintiffs and the single issue between the parties during the course of the litigation, for some reason (which the defense submits is to transparently multiply their counsel fees), Plaintiffs decided to add another law firm to their representation. Thus, during the course of the litigation, while one firm represented all of four Plaintiffs at the inception of the litigation, the representation of the Plaintiffs was split by the adding of a new law firm when the counsel fee issue could not be resolved immediately. No explanation for this dual representation has ever been offered and it is undisputed that the addition of new counsel for the Plaintiffs (in addition to, not in place of, prior counsel) exponentially increased Plaintiffs' counsel fees.

# IV.  LEGAL ARGUMENT

## A.    In View Of The Nominal Compensatory Relief They Obtained, Plaintiffs Are Not Entitled To Any Counsel Fees As A Matter Of Law

In an action brought pursuant to 42 U.S.C. §1983, "the court, in its discretion, may allow the prevailing party other than the United States, a reasonable attorney's fee as part of the costs…" 42 U.S.C. §1988(b).  A §1983 plaintiff who receives a nominal damage award is a prevailing party for purposes of §1988.  See *Farrar v. Hobby*, 506 U.S. 103, 112, 121 L. Ed. 2d. 494, 113 S. Ct. 566 (1992).  That does not, however, mean that such a plaintiff is necessarily entitled to an award of fees.  See *Farrar,* 506 U.S. at 144 (explaining that the "nature of a nominal damages award…does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under §1988"):  See also *Benton v. Oregon Student Assistance Commission, et al*, 421 F. 3d. 901, 904 (9th Cir. 2005).

Here, given the factual and procedural posture by which the parties agreed to submit the "counsel fee issue" to the court, the following matters are relevant for the court's consideration:

> 1.    The parties have agreed to have Plaintiffs considered "prevailing parties" and their agreement designated a "judgment" for purposes of getting the counsel fee issue before the court.  These provisions in the Stipulated Consent Judgment and Order are consistent with the City's counsel's January 13, 2006 letter to Plaintiffs' counsel advising the we "can presume for purposes of this proposal that Plaintiffs will be able to establish that a Constitutional violation occurred".  (See Exhibit "G").

> 2.    According to the Stipulated Consent Judgment and Order, Plaintiffs would be paid only $2001 in nominal compensatory damages.  This provision, also, is consistent with the City's counsel January 13, 2006 proposal noting that "Plaintiffs may not be able to prove that the Constitutional violation was the proximate cause of the election results" and that "…in the absence of any actual damages (i.e., a Constitutional violation without proximate cause), the court will still award nominal damages to the Plaintiffs".  (See Exhibit "G").

Thus, this matter is before the court on the agreement of the parties that the court may in its discretion, award counsel fees to the Plaintiffs as they are prevailing parties but, importantly, prevailing parties who will be unable to prove that Defendants' conduct was the proximate cause of any compensatory damages to the Plaintiffs.   That is, Plaintiffs were awarded nominal damages and the record makes clear that these nominal damages were based upon Plaintiffs' inability to prove that Defendants' conduct was the proximate cause of any compensatory damages to them.

Under this scenario, i.e., where Plaintiffs establish a Constitutional violation but are awarded only nominal damages because of their inability to prove an essential element to recover greater compensatory damages, courts have held that <u>no counsel fees should be awarded under</u> <u>42 U.S.C. §1988</u>.

In *Farrar v. Hobby*, 506 U.S. 103, 112, 121 L. Ed. 2d. 494, 113, S. Ct. 566 (1992), the United States Supreme Court concluded that a plaintiff who was awarded only nominal damages may be considered a "prevailing party" for purposes of an award of counsel fees under 42 U.S.C. §1988.   As the Supreme Court explained, 'the most critical factor' in determining the reasonableness of a fee award is the "degree of success obtained".   *Farrar*, 506 U.S. at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436, 76 L. Ed. 2d. 40, 103, S. Ct. 1933 (1983).   "In a civil rights suit for damages…the awarding of nominal damages highlights the plaintiff's failure to prove actual, compensable injury".   *Farrar*, 506 U.S. at 115.   In light of the nominal damages award, the Supreme Court concluded that the litigation in *Farrar* accomplished little beyond giving petitioners 'the moral satisfaction of knowing that a federal court (their) rights had been violated' in some unspecified way", *Farrar*, 506 U.S. at 114, quoting *Hewitt v. Helms*, 482 U.S. 755, 762, 96 L. Ed. 2d. 654, 107 S. Ct. 2672 (1987).   Affirming the Court of Appeals'

decision reversing the District Court's award of fees, the Supreme Court explained the effect that the nominal award in the Stipulated Consent Judgment and Order should have on the counsel fee issue:  given their "failure to prove an essential element of (their) claim for monetary relief (i.e., proximate cause of any compensatory damages), *Farrar* instructs that "the only reasonable fee is usually no fee at all".  *Farrar*, 506 U.S. at 115.

The context of the litigation also makes clear that the nominal damages support the conclusion that no counsel fees should be awarded. Plaintiffs filed this action essentially as a First Amendment challenge to the facial validity of the City's Sign-Removal Ordinance, §74-16. Plaintiffs' efforts were concentrated on attempting to establish that the Ordinance was a content-based restriction on free speech and therefore unconstitutional.  This was the central issue of the briefing and hearing before Judge Jordan (which generated the ponderous of Plaintiffs'' counsel fees).  This issue was squarely against the Plaintiffs.

Given their lack of success on their central argument, Plaintiffs concentrated on the City's *enforcement* of the Sign Ordinance.  However, given their inability to prove that the City's enforcement of the Ordinance had anything to do with the election results, Plaintiffs' central Constitutional claim (concerning the facial validity of the Ordinance) and compensatory damages claim (for monetary relief) were gutted at the very start of the case.  Unfortunately, because Plaintiffs had poured so much of their efforts into these unsuccessful claims, they have attempted to use their nominal success on the "enforcement" issue to try to bootstrap their argument that their counsel fees should be paid.  The United States Supreme Court has ruled to the contrary.

The intra-litigation communications between the parties and the terms of the Stipulated Judgment and Order make abundantly clear that Plaintiffs accepted a nominal monetary award of

$2001 because they would be unable to prove any compensatory damages whatsoever given the absence of any proximate cause between the City's conduct and any damages incurred by the Plaintiffs.  Under these circumstances, the following language from *Farrar* is directly on point:

> In some circumstances, even a plaintiff who formally "prevails" under §1988 should receive no attorney's fees at all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is often such a prevailing party.  As we have held, a nominal damages award does render a plaintiff a prevailing party by allowing him to vindicate his "absolute" right to procedural due process through enforcement of a judgment against the defendant.  (citation omitted).  In a civil rights suit for damages, however, the awarding of nominal damages also highlights the plaintiff's failure to prove actual, compensable injury.  (citation omitted).  Whatever the Constitutional basis for substantive liability, damages awarded in a §1983 action "must always be designed '*to compensate injuries'* caused by the (Constitutional) deprivation".  (citation omitted).  When a plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief (citation omitted), the only reasonable fee is usually no fee at all.  …(F)ee awards under §1988 were never intended to "produce windfalls to attorneys".  (citation omitted).  *Farrar*, at 115.

Here, Plaintiffs damages award was, by any measure, nominal.  An award of counsel fees would be precisely the form of "windfall" which the Supreme Court has advised against.  Under the circumstances, consistent with the spirit and letter of both of Judge Jordan's July 26, 2005 Memorandum Order and the United States Supreme Court's decisions addressing this issue, it is respectfully requested that this Honorable Court exercise its discretion to deny Plaintiffs' application for counsel fees in its entirety.

**B.    Even If This Court Were Inclined To Exercise Its Discretion To Award Counsel Fees, Any Award Of Counsel Fees In Favor Of Plaintiffs Should Be Greatly Reduced And/Or Minimal**

It is undisputed that the court has the discretion to award reasonable counsel fees in view of the parties' agreement that Plaintiffs may be considered "prevailing parties" for purposes of 42 U.S. §1988.  As set forth above, I., (supra) Defendants urge that this Court exercise its discretion

to award no fees at all as it is authorized and we would submit, compelled, to do pursuant to *Farrar* and its progeny. However, if the Court is inclined to permit an award of counsel fees, any such award should be based on work that was: (1) related to claims which were ultimately meritorious; (2) caused a benefit in the litigation; (3) documented without vague, block-billing descriptions; and (4) not duplicative and/or excessive. That is, the Court should consider the work the attorneys performed to achieve the benefit and the amount and value of attorney time required for that purpose, taking into account the experience of counsel and the nature of the case. *In re: Diamond Shamrock Corp.*, Del. Ch. C.A. No. 8798, Slip. Op. at 12, Jacobs, V.C. (Sept. 14, 1988).

Here, Plaintiffs' primary counsel, Wolf, Block, Schorr & Solis Cohen, LLP (Wolf Block) seeks the payment of an astronomical $140,000 in counsel fees and costs. Plaintiffs' co-counsel, Chase Brockstedt, Esquire, seeks the payment of an additional $30,000, bringing Plaintiffs' fees and costs to an incredible $180,000 in a case where almost no discovery was conducted and the essential factual and legal issues were resolved approximately five days after the filing of Plaintiffs' Complaint. Plaintiffs' counsel bears the burden of proving the $180,000 fees requested are reasonable. As illustrated below, Plaintiffs' counsel are unable to bear this burden. To the contrary, their submissions only further demonstrate the exorbitance of their request.

Specifically, a review of Plaintiffs' billing records reveals vast amounts of block-billed time devoted to multiple vaguely-described activities (such as 7.2 hours for "legal research TRO preparation update client"). The records also reflect grossly excessive time entries (i.e., massive blocks of time by multiple attorneys to review identical issues).

These submissions do not provide a basis for an award of the requested counsel fees. The vague, excessive and, at times, indecipherable entries make it impossible to distinguish between

time reasonably spent on arguably meritorious claims and time spent on non-meritorious claims. A specific description of the time spent is critical to a proper determination concerning the reasonableness of that time. In view of the inadequacy of the entries submitted by Plaintiffs despite their burden of proof (and in view of the unreasonableness of the fees submitted), the Court should resolve every doubt against Plaintiffs.

1. **Plaintiffs Are Not Entitled To Be Paid For Work On Non-meritorious Claims**

The Court cannot award fees and expenses unless Plaintiffs first demonstrate that their claims were meritorious when filed. *Rosen v. Chichano Milwaukee Corn*, Del. Ch. No. 10526, Slip. Op. at 2, Chandler, C.C. (Jan. 19, 1994). The mere filing of a Complaint and an ultimate resolution does not justify an award of fees. The relevant time by which to assess the merit of a particular claim is the time of filing. As stated in *Allied Artist Pictures Corp. v. Barron*, 413 A.2d. 876 (1980) (Del. Supr.) "The question of merit for the purposes of compensation is properly determined as of the commencement of the lawsuit and not by developments thereafter which could not have been known in the exercise of reasonable diligence at the time of filing". Thus, for each item for which they seek reimbursement, Plaintiffs must demonstrate whether the fee or expense was incurred in connection with the claim that was meritorious when filed.

Here, Plaintiffs' Complaint was initially filed January 21, 2005. The primary relief they sought at that time (an injunction based upon a declaration that Ordinance 74-16 violated the First Amendment since it was content-based and restricted free speech) has never been obtained. Significant research, preparation, brief-drafting, argument (and, consequently, counsel fees) were expended in pursuit of this non-meritorious claim. Judge Jordan ruled squarely against the Plaintiffs on this claim. By their own admission, Plaintiffs expended approximately $60,000 in pursuit of their preliminary injunction application *which was denied*.

In addition, since Judge Jordan's ruling was in the context of a preliminary injunction, Plaintiffs took the position after the ruling that the issue of the statute's facial validity remained at issue and continued to pursue it even after Judge Jordan's ruling. In addition, given Judge Jordan's ruling in connection with his July 26, 2005 Memorandum Order, Plaintiffs' Complaint was rendered moot (and, hence, non-meritorious), requiring the filing of an Amended Complaint. Respectfully, all counsel fees and expenses incurred prior to the filing of the Amended Complaint were in pursuit of a non-meritorious claims. Specifically, the original Complaint, filed three weeks prior to the August 13, 2005 election, was designed to impact the City's obligations in advance of the election. Judge Jordan's denial of the relief requested in the original Complaint (through which Plaintiffs expended $60,000 in counsel fees) was denied. Thus, any counsel fees expended prior to the filing of Plaintiffs' Amended Complaint were clearly and obviously expended in pursuit of non-meritorious claims and therefore not recoverable.

By the same token, since not one fact or legal determination changed from Judge Jordan's July 25, 2005 Memorandum Order up until the present, nothing Plaintiffs did in the way of discovery advanced their position at all. To the contrary, as is made clear from the very first communications from the City's counsel following the issuance of Judge Jordan's Memorandum Order, the parties recognized that there was one discreet and singular issue (i.e., Plaintiffs' counsel fees) which required resolution. No amount of discovery pursued by the Plaintiffs was going to change that. Nevertheless, Plaintiffs embarked upon a course of litigation conduct self-evidently designed to drive up counsel fees and improve their position on issues that were not significantly in dispute (i.e., the content of the Ordinance and the City's enforcement of the Ordinance). Thus, it cannot reasonably be stated that any of Plaintiffs' counsel fees were

expended in the pursuit of meritorious claims after Judge Jordan's July, 2005 ruling. At the very least, Plaintiffs have made no effort to distinguish the counsel fees expended on the meritorious claims versus non-meritorious claims.

### C. Plaintiffs Are Not Entitled To Payment For Duplicative Or Excessive Work And Expenses

"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate…the party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the District Court may reduce the award accordingly". *Hensley v. Eckerhart, supra.*, 461, U.S. 424, 433 (1983). By this language, the Supreme Court adopted the loadstar methodology as the initial step in determining the "reasonableness" of a fee application.

"The District Court also should exclude from this initial fee calculation hours that were not 'reasonably expended'…cases may be over staffed, and the skill and experience of lawyers vary widely". *Hensley*, 424, U.S. at 434.

It is noted on this point that, in Plaintiffs' submissions in support of their attorney's fee application, a total of **8 timekeepers** from the Wolf Block firm combined to bill time on this matter. (See Affidavit of Todd Schiltz, Esquire). (Based on the hourly rates of all of the timekeepers) multiplied by the number of timekeepers, if each of the 8 timekeepers spent only 1 hour apiece on this litigation, the total would be almost the exact amount the Plaintiffs received in actual damages claimed. In fact, Plaintiffs seek an award of counsel fees which represents 90 times (900%) of their actual monetary recovery. This illustrates the extent to which Plaintiffs over staffed this matter and over litigated this case.

"Counsel for the prevailing parties should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission 'in the private sector,' 'billing judgment' is an important component in a fee setting. It is no less important here. Hours that are not properly billed to one's *client* also are not properly to one's *adversary* pursuant to statutory authority'". *Hensley*, 461 U.S. at 434 (emphasis as in original). A simple review of Plaintiffs' fee submission makes clear that Plaintiffs appear to have made little or no effort to exercise any "billing judgment" whatsoever in their petition for fees.

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the District Court to adjust the fee upward or downward, including the important factor of the 'results obtained'. This factor is particularly crucial where plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed. First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making the fee award". *Hensley,* 461 U.S. at 434. For the reasons set forth above, it is respectfully submitted that Plaintiffs fail to meet the threshold showing as to either of these two categories of analysis supporting any substantial fee award approaching its application.

"If…a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount…Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever consciences counsel tried the case with devotion and skill. Again, the most critical factor is the degree of success obtained". *Hensley*, 461 U.S. at

436.  As noted elsewhere in this submission, Plaintiffs' "success" was not improved or enhanced at all through the conduct of counsel as reflected in the fees.

Moreover, with respect to the documentation supporting the fee claimed, the Supreme Court ruled: "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended in hourly rates.  The applicant should exercise 'billing judgment' with respect to hours worked…and should maintain billing time records in a manner that will enable a review in court to identify distinct claims".  *Hensley*, 461 U.S. at 437. In a footnote, the Supreme Court explained further: "plaintiffs' counsel, of course, is not required to record in great detail how each minute of his time was expended.  But at least counsel should identify the general subject matter of his time expenditures".  *Id.*  at n.12

Plaintiffs' fee application fails in every one of these requirements as set forth above.

**D.      Particulars Of Plaintiffs' Attorneys' Billings**

Especially in light of the above, as well as the timing of the billing in relation to the "meritoriousnees" of Plaintiffs' counsel's arguments, several individual entries accentuate the point here.  Some of the most potent entries are as follows:

7/18/05, 7/19/05 and 7/20/05-same timekeeper, same task, 15 hours, $5100

8/25/05 and 8/26/05-same timekeeper, same task (primary task, grouped with others), 3.4 hours, $1156

9/6/05, 9/7/05, 9/8/05, 9/9/05-same timekeeper, same task, 10.2 hours, $3468

10/18/05- prepare documents for e-filing/efiled documents, 2.5 hours, $212.50

10/21/05 and 10/24/05-same timekeeper, same task, 2.0 hours, $680

11/9/05, 11/10/05 and 11/11/05-same timekeeper, same task (primary task grouped with others), 13.2 hours, $3102

4/6/06, 4/7/06 and 4/18/06-two timekeepers, same task (primary task, grouped with others), 14.5 hours, $3208

3/13/07-"memorandum re prevailing party an award of attorney's fees.  ", 4.5 hours, $1237.50

4/13/07, 4/24/07 and 4/25/07-same timekeeper, same task (primary task, grouped with others), 11.5 hours, $3910

The above examples, while only examples, demonstrate the variety of problematic aspects to Plaintiffs'' counsel's billing.  They include, but are not limited to, duplicate tasks billing by multiple timekeepers, potentially excessive billing, and vague descriptions/inflated billing in relation to written entry.  As mentioned, these entries need to be evaluated not solely on their face, as laid out above, but also in relation to the "meritoriousness" of Plaintiffs' arguments.  Taking all of these considerations together, the unreasonable and excessive fees awards sought by Plaintiffs should be significantly reduced, as evidence by the enumerated examples.

## CONCLUSION

For all of the foregoing reasons, it is respectfully, requested that this Honorable Court deny Plaintiffs' Motion for Costs and Attorneys' Fees as a matter of law.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

*/s/ Daniel A. Griffith    DE ID No. 4209*
DANIEL A. GRIFFITH, ESQ.
1220 N. Market Street
P.O. Box 8888
Wilmington, DE 19899-8888
(302) 552-4300
*Counsel for Defendants*

Dated: October 15, 2007