**EXHIBIT "E"**

**1220 N. Market St., 5th Floor, P.O. Box 8888 · Wilmington, DE 19899-8888**
**(302) 552-4300 · Fax (302) 651-7905**

**Direct Dial: 302-552-4317**
**Email: dgriffith@mdwcg.com**

August 29, 2005

Todd Schiltz, Esquire
Wolf Block
Wilmington Trust Center
Suite 1001
1100 N. Market Street
Wilmington, DE 19801

    Re:    Robert Sokolove v. Rehoboth Beach
               Our File No: 20021-00101
               Case No: 05-514 KAJ

Dear Todd:

    Please accept this correspondence in response to your August 24, 2005 letter (which I received today) as well as the Notice to conduct Mr. Ferrese's deposition which was also dated August 24, 2005 (but which I also received today).[1] Please accept this letter in response.

    First, with respect to Mr. Ferrese's deposition, Fed. R. Civ. P.26 (d) provides, in part "…a party may not seek discovery from any source before the parties have conferred as required by Rule 26 (f)". During our August 23, 2005 teleconference, I inquired as to whether you and your co-counsel were prepared to discuss scheduling issues consistent with Rule 26 (f). At that time, you advised that either you nor your co-counsel were prepared to discuss the Rule 26 (f) issues at that time.

    Apparently, the following day you unilaterally scheduled Mr. Ferrese's deposition, without inquiring (either during our hour-long teleconference the night before or at any other time) as to my availability, Mr. Speakman's availability or Mr. Ferrese's availability on the date you choose for his deposition, September 15, 2005. As it is, both Mr. Speakman and I are unavailable and I have not checked with Mr. Ferrese.

    Following our Rule 26 (f) teleconference, I would appreciate it if you would advise me of potential dates you would like to take Mr. Ferrese's deposition and I will, of course, take the appropriate steps to have Mr.

---

[1] I received by e-mail from the Court a Certificate of Service concerning the Notice for Mr. Ferrese's deposition on of August 24, 2005, but neither the E-notice from the Court nor the Court's docket report actually provided the Notice or the date for which Mr. Ferrese's deposition was scheduled.

Todd Schultz, Esquire
August 29, 2005
Page 2

Ferrese available at the mutual convenience of all involved. Given (1) the absence of a scheduling order and (2) the fact that Mr. Ferrese testified at length on all relevant issues at the hearing about a month ago, I presume time is not of the essence with respect to his deposition. In fact, given the timing of the Notice and your reference to Mr. Ferrese's testimony in your August 24, 2005 letter, I presume that the Notice was unilaterally issued by your office for purposes of its impact on your settlement demand.

With respect to the more substantive issues in your August 24, 2005 letter, it appears that we have a fundamental disagreement on certain points. First of all, I believe that, conceptually, punitive damages are available to a successful §1983 claimant against an individual acting in his individual capacity only. Punitive damages are <u>not</u> available against either a municipality (such as the City of Rehoboth Beach) or an individual acting in his official capacity (such as Mr. Ferrese). I am uncertain how you could possibly establish that Mr. Ferrese was acting in his individual capacity at anytime. It remains our position that plaintiff's request for punitive damages as set forth in the Complaint (which includes the claim against the City) has no basis in law or fact under Fed. R. Civ. P. 11.

In terms of the merits of plaintiff's claim, it seems that plaintiff's settlement demand represents everything that the plaintiffs would receive if they had been successful (which they were not) at the preliminary injunction hearing, along with a demand for full counsel fees. In essence, notwithstanding (1) the denial of plaintiff's request for injunctive relief, (2) Judge Jordan's ruling concerning the constitutional validity of the ordinance at issue (which is obviously not likely to change regardless of how much the discovery is conducted) and (3) the fact that defendants did not remove <u>any</u> of plaintiff's political signs in the weeks leading up to the election; plaintiff's settlement demand seeks utter capitulation on the part of the defendants, i.e., virtually every form of relief to which plaintiffs would be entitled had they actually prevailed at the preliminary injunction hearing.

I am hopeful that I conveyed to you during our August 23, 2005 teleconference how difficult it is for defendants to accept plaintiffs' settlement proposal under the circumstances. Defendants prevailed at the preliminary injunction hearing and, in deference to Judge Jordan's statements concerning the enforcement of the ordinance, did not remove any of plaintiff's political signs following Judge Jordan's opinion. The election itself was eminently fair and resulted in a landslide against the plaintiffs. To pay plaintiffs' counsel fees (which I understand are approximately $60,000.00), amend the ordinance and/or sign a Stipulated Order essentially admitting unconstitutional enforcement of the ordinance, which seems to be of absolutely no benefit to the defense would only make sense if one were to accept the inevitability of plaintiff's not only prevailing at trial but also obtaining some form of relief and then having the Court determine that an award of counsel fees is appropriate.

Here, given the circumstances, this result is almost impossible. That is, it cannot reasonably be disputed that the election and it's results were fair and honest. Even if Judge Jordan's preliminary statements concerning the unconstitutional enforcement of the ordinance were to become a final verdict from a jury, it is impossible to conceive how a number of signs being down for a few days could have proximately resulted in any actual damages to the plaintiffs, i.e., the loss of an election, where 90 % of the eligible voters voted and plaintiffs lost the election in a landslide.

Todd Schultz, Esquire
August 29, 2005
Page 3

      In fact, even if the City were to voluntarily amend its ordinance or provide something in writing voluntarily concerning its intention to enforce the ordinance in a non-discriminatory manner, plaintiffs would have no right to an award of counsel fees. That is, even if plaintiffs could establish that this litigation was the catalyst for the City's changes that would not entitle the plaintiffs to counsel's fees.

      In sum, it is unfortunate that this litigation has become primarily about plaintiff's counsel fees for approximately $60,000.00. I am genuinely chagrined that the parties cannot mutually take away from Judge Jordan's Order that which we believe the Court intended: that the parties work together to ensure a fair election and then go their separate ways.

      Unfortunately, since it appears that this matter will proceed, we should have our Rule 26(f) conference as expeditiously as possible. If you wish to schedule Mr. Ferrese's deposition following the teleconference, we should not only discuss proposed dates for the deposition which are mutually convenient but also the proposed scope of questioning. On this latter point, Mr. Ferrese was already questioned by you under oath at length concerning may of the issues relevant to this litigation at the July 26, 2005 hearing. I do not believe plaintiffs are entitled to go over the same issues with Mr. Ferrese again, and I am frankly not sure that you're interested in covering the same ground all over again.

      Very truly yours,


DANIEL A. GRIFFITH


DAG/lar

cc:    Shawn Tucker, Esquire
        Gene Lawson, Esquire
        Walter Speakman, Jr., Esquire
\15_A\LIAB\DAG\CORR\303659\LAS\20021\00101