**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT SOKOLOVE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-514-KAJ |
| | ) | |
| CITY OF REHOBOTH BEACH, | ) | |
| DELAWARE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
THEIR MOTION FOR COSTS AND ATTORNEYS' FEES**

WOLF, BLOCK, SCHORR and
    SOLIS-COHEN LLP

Shawn P. Tucker (#3326)
Todd C. Schiltz (#3253)
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312

Attorneys for plaintiff
Citizens for Rehoboth Beach

November 16, 2007

BIFFERATO GENTILOTTI, LLC

Chase Brockstedt (#3815)
119 East 3rd Street
P.O. Box 90
Lewes, Delaware 19958
(302) 644.0302

Attorneys for plaintiffs
Robert Sokolove and David
McCarthy

## <u>TABLE OF CONTENTS</u>

**Page**

Table of Authorities ...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

ARGUMENT ................................................................................................................... 6

    I.       PLAINTIFFS' FEES ARE NOT BARRED AS A MATTER OF LAW ................ 6

    II.      PLAINTIFFS' FEE AWARD SHOULD NOT BE REDUCED ........................... 10

         A.     The Claims Were Meritorious When Filed ............................................... 11

         B.     The Fees Are Reasonable ......................................................................... 12

CONCLUSION .............................................................................................................. 16

# TABLE OF AUTHORITIES

Page(s)

CASES

Blum v. Stenson,
   465 U.S. 886 (1984).....................................................................................................12

Cadena v. Pacesetter Corp.,
   224 F.3d 1203 (10th Cir. 2000) ...................................................................................15

Central Delaware Branch of NAACP v. Dover,
   123 F.R.D. 85 (D. Del. 1988) .......................................................................................12

City of Riverside v. Rivera,
   477 U.S. 561 (1986).....................................................................................................15

Copeland v. Marshall,
   641 F.2d 880 (D.C. Cir. 1980)......................................................................................15

Doe v. Porter,
   188 F. Supp.2d 904 (E.D. Tenn. 2002).........................................................................8

Farrar v. Hobby,
   506 U.S. 103 (1992).................................................................................................6, 7, 9

Hensley v. Eckerhart,
   461 U.S. 424 (1983).............................................................................................6, 7, 11

Hopwood v. Texas,
   236 F.3d 256 (5th Cir. 2000) .........................................................................................8

Leblanc-Sternberg v. Fletcher,
   143 F.3d 748 (2d Cir. 1998)......................................................................................7, 8

O'Connor v. Huard,
   117 F.3d 12 (1st Cir. 1997)............................................................................................8

Riley v. City of Jackson,
   99 F.3d 757 (5th Cir. 1996) ...........................................................................................8

Robinson v. City of Edmond,
   160 F.3d 1275 (10th Cir. 1998) ............................................................................8, 9, 13

Steele v. Indus. Dev. Bd. of the Metro. Gov't of Nashville and Davidson County,
   117 F. Supp.2d 693 (M.D. Tenn. 2000),........................................................................8

**OTHER AUTHORITIES**

42 U.S.C.A. 1988.................................................................................................................1

2 Mary Francis Derfner & Arthur D. Wolf,
    *Court Awarded Attorney Fees,* (1997)....................................................................15

## PRELIMINARY STATEMENT

Defendants' Answering Brief In Opposition To Plaintiffs' Motion For Costs And Attorneys' Fees ("Answering Brief" or "AB") admits what has been clear all along: defendants expected plaintiffs to just give up after the August 13, 2005 election. (AB at 9 (defendants' August 17, 2005 letter "requested that Plaintiffs[] . . . simply walk away from the litigation")). Defendants expected plaintiffs to give up notwithstanding the fact Judge Jordan already had preliminarily determined that defendants enforced Section 74-16 in an unconstitutional and discriminatory manner (Ex. 3 at 14-16),[1] and, as defendants now admit, "the facts would not change and . . . Judge Jordan's findings in the preliminary injunction hearing would likely be finalized following a trial on the merits (i.e., that the sign ordinance . . . was enforced unconstitutionally) . . . ." (AB at 2-3. *See also* AB at 12 ("outcome . . . [of trial] was relatively certain"); AB at 19 ("essential factual and legal issues were resolved approximately five days after the filing of Plaintiffs' complaint")).

Given that Judge Jordan's findings "would likely be finalized following a trial on the merits," on August 24, 2005, plaintiffs proposed a settlement providing for "rescission of [Section 74-16], a signed Stipulation from the City that it will enforce the new Ordinance in a non-discriminatory manner" and an agreement that defendants pay plaintiffs' attorney fees. (AB at 9 and Exhibit D to AB). As plaintiffs said in their settlement letter: "this is the most opportune time for defendants to resolve the matter because the alternative is to continue to litigate and, as a result, subject themselves unreasonably to ever increasing legal fees under 42 U.S.C.A. 1988." (Exhibit D to AB).

---

[1]    Unless otherwise indicated, references to "Ex. __" refer to exhibits submitted in the compendiums plaintiffs have submitted with their opening or reply brief in support of their motion for costs and fees.

Contending that "plaintiff's (sic) settlement demand seeks . . . virtually every form of relief to which plaintiffs would be entitled . . . ," defendants rejected the settlement proposal. (Exhibit E to AB). Litigation then continued over the course of several months with, among other things, plaintiffs pursuing relevant discovery -- including the minutes of the meeting where the City Commissioners adopted Section 74-16 which reflect that the ordinance is not supposed to be enforced as to political signs -- compelling defendants to provide responsive answers to discovery and filing a motion for partial summary judgment.

Plaintiffs would not have had to incur any of the fees associated with these and other activities if defendants had agreed to the settlement terms proposed by plaintiffs in August 2005. While defendants initially rejected these terms, in the end they settled this case on terms which mirror plaintiffs' August 2005 settlement proposal. The Consent Judgment (i) required defendants to adopt a new ordinance which clarified the manner in which Section 74-16 would be enforced, (ii) obligated defendants to enforce Section 74-16 and the new ordinance in a consistent, non-selective manner, and (iii) gave plaintiffs the right to file an application with the Court to recover their attorney fees.[2] Hence, any post August 2005 litigation activities occurred only because defendants refused to settle on terms on which they ultimately agreed to settle. Of course, during this time period plaintiffs incurred the majority of the costs and fees they now seek to recover.

---

[2]     Defendants correctly characterized these terms as giving plaintiffs "virtually every form of relief to which plaintiffs would [have] be[en] entitled" after a trial." (Exhibit E to AB). Defendants' statement in this regard is important because it expressly concedes that the relief plaintiffs were seeking herein was injunctive in nature -- putting an end to defendants' selective enforcement of Section 74-16 -- and not damages for injuries they suffered. Defendants make much of the fact plaintiffs did not recover significant monetary damages through this suit; however, as defendants' statement shows, plaintiffs did not obtain such relief because they were not seeking such relief.

In addition to ignoring the fact that their refusal to resolve this case only enhanced the legal fees, defendants ignore all the facts surrounding the merits of plaintiffs' claims. For example, they ignore the fact that: (i) Section 74-16 was not supposed to be enforced against political signs; (ii) they gave plaintiffs incorrect advice as to where signs could be erected; (iii) they did not enforce Section 74-16 in accordance with its terms and instead only selectively enforced the ordinance; (iv) the selective enforcement of Section 74-16 resulted in plaintiffs' signs being removed while other signs that violated Section 74-16 remained standing; (v) they acknowledged that plaintiffs' campaign signs "should not have been picked up, and [they] did not know why they had been;" (vi) they never responded to plaintiffs' pre-suit letters regarding the removal of their signs; (vii) they never advised plaintiffs or their counsel of the "rules of thumb" prior to the filing of this lawsuit notwithstanding the fact plaintiffs' counsel sought to avoid filing suit by obtaining clarification as to where signs could be erected; (viii) the Court preliminarily determined that they violated plaintiffs' constitutional rights by selectively enforcing Section 74-16; (ix) they were advised by their own counsel that they most likely would lose the case and they responded by saying they were not concerned about the merits but only the extent of an attorney fee award; (x) they admitted numerous commercial signs that remained standing after the issuance of the July 28 opinion violated Section 74-16, and yet these signs still were not removed; (xi) the Consent Judgment the parties entered gave plaintiffs all the relief they were seeking in the case; and (xii) defendants' failure to adhere to the Consent Judgment resulted in further unnecessary proceedings before the Court. (*See* Plaintiffs' Opening Brief In Support Of their Motion For Costs And Attorneys' Fees ("Opening Brief" or "OB") at 1-21).[3]

---

[3]     Unfortunately, defendants have ignored the impropriety of their conduct and refused to face the facts throughout the merits portion of the case. They continue that approach in this phase of the suit. For example, defendants contend that plaintiffs claims were not

Rather than address the merits or the fact that their conduct enhanced plaintiffs' costs and fees, defendants' Answering Brief approaches the case like it came to an end once the election was over. This is not the case. Plaintiffs complained about defendants' selective enforcement of Section 74-16. Prior to the election, plaintiffs focused on the selective enforcement demonstrated by the removal of only certain (i.e., plaintiffs') political signs and the non-removal of other commercial signs which violated the ordinance. Defendants' selective enforcement continued after the election as they failed to remove numerous commercial signs, some of which remained standing for months, notwithstanding the fact that they violated Section 74-16, and that plaintiffs identified the signs as violating the ordinance. Hence, this suit was neither just about the election nor was it rendered moot by the election, a conclusion made clear by the fact defendants never sought to dismiss the suit on mootness grounds.

Although this case was about more than defendants' treatment of plaintiffs' political signs during the 2005 municipal election, defendants argue that plaintiffs should either have given up or sat on their hands and done nothing once the Court issued its July 28, 2005 opinion. This is nonsensical. Plaintiffs had a valid claim that the Court had preliminarily determined would be successful after trial. Why plaintiffs should abandon such a claim, forego further discovery

---

meritorious when filed. (AB at 21). Given Judge Jordan's finding that plaintiffs had proven on a preliminary basis that defendants' selective enforcement of Section 74-16 violated plaintiffs' constitutional rights, this argument is specious. Likewise, defendants' repeated contention that the principal relief plaintiffs sought was a declaration that Section 74-16 was facially invalid is simply false. Plaintiffs' complaint contained one subparagraph complaining that the ordinance was unconstitutional on its face and three subparagraphs complaining about its selective enforcement. (Ex. 49 at ¶ 27). The memorandum plaintiffs submitted in support of preliminary injunctive relief contained detailed arguments on both points, favoring neither. (Ex. 50). When Judge Jordan asked whether plaintiffs thought their selective enforcement or facial invalidity argument was stronger, plaintiffs responded that both were equally strong. (Ex. 51).

which supports their claim or refrain from pursing summary judgment on the claim (and possibly avoid trial altogether) is anything but logical.[4]

What is clear is that if defendants wanted to stop plaintiffs from incurring any additional costs and fees, they had the means of doing so by recognizing the inevitable outcome of this suit and settling on the terms plaintiffs proposed in August 2005. Although defendants elected not to take advantage of their ability to cut off their fee liability for months, ultimately they did take this step, but only after plaintiffs had incurred thousands of dollars in additional costs and fees.

Faced with the possibility of now having to pay these very fees, defendants seek to blame plaintiffs for doing nothing more than pursuing their claims. Again, it was plaintiffs' diligent pursuit which forced defendants to rescind Section 74-16 as written, to adopt a new Section 74-16 which spells out when signs violate the ordinance and to enter into a Consent Judgment which obligates them to enforce the new Section 74-16 in a consistent, non-selective manner. Neither the effort to protect one of our most sacred constitutional rights nor the fees that had to be incurred to reach this result should be discounted. Indeed, as demonstrated below, none of the arguments defendants have advanced justifies limiting plaintiffs' fee award.

---

[4]    Defendants suggest that plaintiffs' additional discovery efforts -- which was limited to serving requests for production of documents, interrogatories, requests for admission and preparing for Mr. Ferrese's deposition -- were unnecessary. This suggestion fails to acknowledge that it was these efforts which resulted in the production of the minutes of the meeting where the City commissioners adopted Section 74-16, a documents which shows that Section 74-16 was not to be enforced against political signs, and defendants' admission that numerous commercial signs which remained standing after the issuance of the July 28, 2005 opinion were private signs erected on public property and/or right of way and, therefore, violated Section 74-16. This later admission came only after plaintiffs were forced to file a motion to compel when defendants failed to provide responsive answers.

**ARGUMENT**

## I.    PLAINTIFFS' FEES ARE NOT BARRED AS A MATTER OF LAW

Although the Consent Judgment gave plaintiffs all the relief they could have obtained through trial on the selective enforcement claim, defendants cite the Supreme Court's opinion in *Farrar v. Hobby*, 506 U.S. 103 (1992), and contend that plaintiffs should recover no fee here because (i) the Consent Judgment awards plaintiffs only $2,001.00, an amount defendants characterize as nominal damages, and (ii) as plaintiffs recovered only nominal damages, the only reasonable fee is no fee at all.   Defendants' argument misreads *Farrar* and ignores other applicable Supreme Court precedent.

At the outset, the issue is not whether or not plaintiffs have recovered substantial compensatory damages.  Rather, as stated in *Farrar*, "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  506 U.S. at 114 (quoting *Hensley v. Eckerhart*, 461 U.S. 424 (1983)).

In the case at bar, plaintiffs achieved overwhelming success in the lawsuit.  The purpose of the lawsuit was to put an end to defendants' selective enforcement of Section 74-16.  That result was achieved only through the execution of the Consent Judgment and defendants' replacement of old Section 74-16 with a new Section 74-16 that clarifies when signs will and will not be removed from public property, when signs will and will not be removed from public right-of-way, and defendants' agreement to enforce the new ordinance in a consistent, non-selective manner.  (OB at 17-21; Exs. 43, 47).

The fact plaintiffs sought compensatory damages and recovered $2,001.00 does not mean they did not achieve significant success on their claims.  The $2,001.00 covered (if not exceeded) the actual damages plaintiffs suffered as a result of defendants' selective enforcement of Section 74-16 and plaintiffs' resulting loss of relatively inexpensive campaign signs.  Moreover, the fact

that plaintiffs characterize the $2,001.00 as nominal does not impact plaintiffs' ability to recover their costs and fees. Indeed, even if plaintiffs had recovered no compensatory damages, the fact they altered the parties' legal relationship and obtained substantial success on the claims -- by causing defendants to amend Section 74-16 and by obtaining significant injunctive relief in the form of an order requiring defendants to enforce Section 74-16 in a consistent, non-selective manner -- justifies a fee award. As stated in *Hensley v. Eckerhart*, 461 U.S. 424 (1983), "a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on *all hours reasonably expended* if the relief obtained justified that expenditure of attorney time." *Id*. at 435 n.11 (emphasis added). *See also Farrar*, 506 U.S. at 114 ("Once civil rights litigation materially alters the legal relationship between the parties, 'the degree of the plaintiff's overall success goes to the reasonableness' of a fee award . . ." and "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'") (citing *Hensley*).

The significance of altering a defendant's conduct and obtaining injunctive relief was recognized in *Leblanc-Sternberg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998). There, plaintiffs proved that the defendant village was incorporated with the intentional purpose of excluding orthodox Jews and obtained relief from the defendants in the form of $1.00 in damages, injunctive relief prohibiting the village from further discrimination on the bases of religion and an amendment to the village zoning code. *Id*. at 757. In overturning the trial court's denial of a fee award and directing that plaintiffs be awarded fees based on a lodestar (hours times rate) calculation, the Second Circuit held that "where both monetary and equitable relief have been pursued, the size of the monetary recovery is not necessarily the proper measure of the plaintiff's success." *Id*. at 758. Quoting *Hensley*, the court further stated that "a plaintiff who failed to

recover damages but obtained injunctive relief… may recover a fee award based on all hours reasonably expanded if the relief obtained justified that expenditure of attorney time." *Id.*

The Fifth Circuit reached a similar result in *Hopwood v. Texas*, 236 F.3d 256 (5th Cir. 2000), where the plaintiffs successfully challenged a law school's preference for minority students in its admissions policy.  Although the plaintiffs achieved their goal of dismantling all forms of racial preference in the admissions process, the plaintiffs obtained only limited monetary relief.  In rejecting the defendants' argument that plaintiffs should not recover their costs or fees because they obtained no direct relief, the Fifth Circuit noted that an award of costs and fees (in an amount in excess of $760,000) was particularly appropriate because the law school changed its discriminatory admissions policy as a result of the litigation.  *Id.* at 278.

Numerous other courts have awarded attorney's fees to plaintiffs who recover nominal damages but also procure injunctive relief.  *Robinson v. City of Edmond*, 160 F.3d 1275, 1282-83 (10th Cir. 1998) (holding that district court improperly reduced award of attorneys' fees when plaintiff recovered nominal damages of $1 against each defendant but also obtained a permanent injunction against the city's use of a Latin cross on the city's official seal); *O'Connor v. Huard*, 117 F.3d 12, 17-18 (1st Cir. 1997) (affirming substantial fee award to plaintiff who received nominal damages and injunctive relief);  *Riley v. City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996) (holding that plaintiffs achieved more than a technical victory when they received nominal damages and most of the injunctive relief they had sought); *Doe v. Porter*, 188 F. Supp.2d 904, 915 (E.D. Tenn. 2002) (awarding plaintiffs nominal damages of $1 and attorneys' fees in § 1983 action after granting plaintiffs an injunction and a declaratory judgment); *Steele v. Indus. Dev. Bd. of the Metro. Gov't of Nashville and Davidson County*, 117 F. Supp.2d 693, 734-35 (M.D. Tenn. 2000), *rev'd on other grounds* (allowing attorneys' fees to plaintiffs who obtained only $1

in nominal damages but succeeded in permanently enjoining the municipality from issuing tax exempt bonds to benefit a university affiliated with the Church of Christ or for the benefit of any other religious institution).

This is not a case, such as *Farrar*, where the plaintiff dropped claims for declaratory and injunctive relief and only sought relief in the form of substantial compensatory damages ($17 million in *Farrar*) and was awarded just nominal damages.[5]  Rather, plaintiffs altered the rules governing when signs can be removed from public property and right-of-way and sought and obtained injunctive relief which ensures that free speech is protected City-wide for all constituents.  These undisputed facts make this case analogous to *Hopwood*, *Leblanc-Sternberg*,

---

[5]     In *Farrar*, the overwhelming disparity between what was sought and what was obtained resulted in the Court denying the plaintiff's request for costs and attorneys' fees.  The Supreme Court reached this result because the plaintiff failed to prove an essential element of his claim for monetary relief and in order to protect against a windfall benefiting his counsel. *Farrar*, 506 U.S. at 115.  Here, plaintiffs did not seek extensive monetary relief and thus the recovery of $2,001.00 does not indicate a failure to prove an element of their claim.  They simply were not seeking extensive compensatory damages.  Likewise, given the significant change in the parties' legal relationship -- plaintiffs now have a court order they can seek to enforce if defendants fail to enforce new Section 74-16 in a consistent manner -- and given the injunctive relief that was obtained, awarding plaintiffs their requested fees and costs will not confer a windfall on plaintiffs' counsel.

If this case is viewed as the equivalent to *Farrar*, then litigants who seek and obtain equitable relief will have a difficult, if not impossible time, pursuing violations of their civil rights.  Litigation is expensive and civil rights litigation is no different.  Plaintiffs in civil rights suits often have limited resources, although the rights they seek to protect are fundamental ones.  If plaintiffs who seek to protect such rights through equitable relief cannot look to Section 1988 to recover their fees when they obtain that relief, then such plaintiffs will find it difficult, if not impossible, to retain counsel to represent them, even when they have meritorious claims. *See Robinson*, 160 F.3d at 1281.  Congress did not create a barrier of this nature and imposing such a barrier is not appropriate or justified under Section 1988.  *See Farrar*, 506 U.S. at 122 (O'Connor, J., concurring) (Section 1988 "is a tool that ensures the vindication of important rights, even when large sums of money are not at stake, by making attorneys fees available under a private attorney general theory.")

*Robinson*, *O'Connor*, *Riley*, *Doe* and *Steele* where costs and attorneys' fees were awarded notwithstanding the relatively low damage award.

In sum, the degree of success and the fact these costs and fees had to be incurred to obtain this relief justify an award of fees in full.  Indeed, the record and Answering Brief make clear that if plaintiffs had not pursued the matter with diligence, defendants never would have done anything to alter their unconstitutional, selective enforcement practices.  They just wanted the matter to go away.  The fact plaintiffs did not give up and, instead, continued to fight and to seek the relief they obtained, including, but not limited to, a relatively low amount of compensatory damages, is not a basis to deny or reduce their request for an award of their costs and attorneys' fees.

## II.     PLAINTIFFS' FEE AWARD SHOULD NOT BE REDUCED

Defendants also argue that if plaintiffs are entitled to some fee, they should not recover all the fees they requested.  Defendants' argument ignores their own fee-enhancing conduct and for this reason alone should be rejected.  As demonstrated above and in the Opening Brief, it was defendants' conduct in incorrectly advising plaintiffs where signs could be erected and failing to respond to plaintiffs' resolution efforts which precluded this matter from being resolved prior to the filing of suit.  It was likewise defendants' conduct which precluded this matter from being resolved expeditiously once the Court issued its July 28, 2005 opinion.  Conduct of this nature should not be condoned through a reduction in plaintiffs' fee award, it should be discouraged by an award of all fees.

Rather than address their own conduct, defendants contend plaintiffs' fees should be cut because (i) the claims were not meritorious when filed, and (ii) counsel's time entries purportedly contain block billing, vague descriptions and are excessive.  (AB at 18-25).  None of defendants' contentions is accurate or justifies a reduction of the fee award.

A.    The Claims Were Meritorious When Filed

Plaintiffs claims were clearly meritorious when filed.  Plaintiffs' raised two issues in their complaint:  that the ordinance was facially invalid and that it had been selectively, and thus improperly, enforced.[6]   Although Judge Jordan preliminarily rejected the facial invalidity argument, he ruled preliminarily in plaintiffs' favor on the selective enforcement claim.[7]  This ruling belies defendants' assertion that "all counsel fees and expenses incurred prior to the filing of the Amended Complaint were in pursuit of a (sic) non-meritorious claims." (AB at 21).[8]

Notably, the selective enforcement claim drove the fees in this case both prior to and after the issuance of the July 28 opinion.  A claim of this nature requires the development of a factual record while the facial invalidity argument is a legal issue that does not.  To develop that record prior to the preliminary injunction hearing, plaintiffs propounded written discovery and

---

[6]    Plaintiffs ignore the later issue and repeatedly and incorrectly assert that the thrust of plaintiffs' complaint is the facial invalidity claim.  This is incorrect.  (*See* footnote 3).

[7]    The fact that plaintiffs were not successful on their facial invalidity claim does not justify a reduction in the fees requested.  As explained by the Supreme Court:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.  Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified.  In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.  Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters.

*Hensley*, 461 U.S. at 435 (citation omitted).

[8]    It is not clear how plaintiffs can make this statement and in the same brief state that "the facts would not change and . . . Judge Jordan's findings in the preliminary injunction hearing would likely be finalized following a trial on the merits (i.e., that the sign ordinance . . . was enforced unconstitutionally) . . . ."  (AB at 2-3).

participated in five depositions over a period over a four day period.[9]  In comparison, the related facial invalidity argument was a purely legal issue which did not require the development of facts.  Moreover, all of the post-June 28, 2005 activity that was unrelated to settlement or enforcement of the Consent Judgment related to the selective enforcement claim because the facial invalidity claim could be presented without the need for further factual or legal development.

### B.    The Fees Are Reasonable

Defendants do not dispute that the reasonableness of plaintiffs' fees should be measured using the lodestar method -- hours expended multiplied by a reasonable hourly rate.  (OB at 23).  Nor do they contend that the rates charged by plaintiffs' counsel are excessive or beyond that prevailing in the community.  (OB at 23-24).  Rather, the only arguments defendants make relate to the extent of time spent on the claims and alleged improper block billing and vague time entries.  None of these arguments has merit.

Without citing to any authority, the Answering Brief attempts to put numerous burdens on plaintiffs to justify the amount of time spent litigating this matter.  Defendants' lack of citations is not surprising given that it is the party challenging the application who must "present specific evidence challenging the reasonableness of the  . . . time expended."  *Central Delaware Branch of NAACP v. Dover*, 123 F.R.D. 85, 88 (D. Del. 1988) (citing *Blum v. Stenson*, 465 U.S.

---

[9]    These efforts belie defendants' contention that by December 2006 plaintiffs' fees and costs were approximately $100,000 even though "no discovery ha[d] been conducted or sought."  (AB at 11).

886, 892 (1984)).[10]  Defendants have completely failed to meet their burden here.  Indeed, other than identifying a few examples of what they believe constitute excessive time  (AB at 24-25), defendants present no "specific evidence challenging the reasonableness of the . . . time expended."  *Id*.  This is insufficient.

Defendants' failure to meet their burden is particularly clear given the facts in this case. During a nine day period in July 2005, plaintiffs' counsel had to investigate the facts, conduct legal research to support the claims, draft the verified complaint, prepare numerous affidavits, prepare papers in support of plaintiffs' request for preliminary injunctive relief, propound and respond to written discovery requests, prepare for depositions, take or defend five depositions, review the deposition transcripts, prepare for a preliminary injunction hearing before the Court, and attend and present evidence at a full day hearing before the Court on a preliminary injunction application.  The fees and expenses associated with this activity amount to $58,625.00.  Given the amount of work performed, the time expended during this period was not excessive or unreasonable.

Likewise, the post July 28, 2005 time was not excessive or unreasonable.  Rather, plaintiffs' counsel did what litigators do to pursue claims.  They:  (i) filed an amended complaint, (ii) reviewed the answer and affirmative defenses raised by defendants; (iii) researched the legal

---

[10]     As explained by the Court in *Robinson*:

> To determine the reasonableness of a fee request, a court must begin by calculating the so-called "lodestar amount" of a fee, and a claimant is entitled to the presumption that this lodestar amount reflects a "reasonable" fee. The lodestar calculation is the product of the number of attorney hours "reasonably expended" and a "reasonable hourly rate."  "Once an applicant for a fee has carried the burden of showing that the claimed rate and number of hours are reasonable, the resulting product is presumed to be a reasonable fee as contemplated by Section 1988."

160 F.3d at 1281 (citations omitted).

issues arising from the affirmative defenses; (iv) drafted written discovery requests; (v) reviewed responses to written discovery requests; (vi) communicated with defense counsel regarding incomplete responses to discovery requests; (vii) drafted a motion to compel incomplete discovery requests; (viii) participated in a hearing on the motion to compel; (ix) drafted an opening brief in support of the motion for partial summary judgment; (x) reviewed the answering brief in opposition to the motion for partial summary judgment; (xi) drafted a reply brief in support of a motion for partial summary judgment; (xii) prepared for and participated in mediation with Judge Thynge on two occasions; (xiii) prepared for depositions; (xiv) developed settlement strategies; (xv) participated in settlement conferences; (xvi) drafted the Consent Judgment; and (xvii) moved to enforce the Consent Judgment when defendants failed to adhere to its terms. None of these activities was improper or inappropriate and the mere fact that the costs and fees for this portion of the case exceed $100,000 does not mean that the time spent on these activities was unreasonable. If defendants had settled earlier, the vast majority of the time spent on these activities would not have been incurred.[11]

Defendants' suggestion that the fees should be cut because counsel recorded "vague time entries" is belied by counsels' bills. (Ex. 39 at Ex. A; Ex. 48). The bills accurately reflect the tasks completed and defendants' Answering Brief does not identify a single entry which is so vague that they cannot ascertain what counsel was doing. Defendant's "vague time entries" contention is a red herring.

---

[11]     In an apparent effort to suggest too much time was spent on this case, the Answering Brief identifies time entries on sequential dates and describes such entries as "same timekeeper, same task." (AB at 24-25). While defendants' suggestion that the time entries are identical is simply incorrect (*see* Ex. 39 at Ex. A), the point that seems lost on defendants is that sometimes tasks are spread out over more than one day and the mere fact legal research, brief drafting or any other activity is done on one day does not mean it is complete and that further attention is not required the next.

Defendants' "block billing" accusation fares no better.  Plaintiffs' counsel billed time on a daily basis and provided a detailed description of the tasks performed on each day.  Defendants cannot identify a rule of the Court or a case which requires that time be billed on a task by task or activity by activity basis.  To the contrary, block billing is not improper *per se* and given the extensive descriptions of counsel's daily activities (Ex. 39 at Ex. A; Ex. 48), it does not provide a basis to reduce plaintiffs' fee application here.  *See Cadena v. Pacesetter Corp.*, 224 F.3d 1203 (10th Cir. 2000) (refusing to reduce fee award based on block billing objection when time records were sufficiently detailed and allowed court to determine if time was reasonable).

There simply is no basis or reason to cut plaintiffs' fee award.  Neither the arguments rebutted above nor defendants' characterization of the fees as "astronomical" justifies a reduction.  The costs and fees are what they are because defendants failed to respond to constituents who were seeking instruction on how the City enforces Section 74-16, failed to settle this matter when this was the only sensible and reasonable thing to do and, instead, settled it on the same terms months later after thousands of dollars of additional fees had been incurred unnecessarily.  At bottom, defendants decided on more than one occasion not to take the steps necessary to eliminate or significantly reduce the costs and fees in this action.  Defendants, not plaintiffs, should suffer the consequences of those decisions.  *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (plurality opinion) ("'The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'") (quoting *Copeland v. Marshall*, 641 F.2d 880, 904 (D.C. Cir. 1980)); 2 Mary Francis Derfner & Arthur D. Wolf, *Court Awarded Attorney Fees,* ¶ 16.02[8][b] (1997) (discussing cases that have held "the vehemence or tenacity of the opposition will justify an increase in the amount of time

an attorney must necessarily--and therefore reasonably--spend in countering the opposition and winning the suit").

## CONCLUSION

For the foregoing reasons and for the reasons set forth in the Opening Brief, plaintiffs respectfully request that the Court enter an Order awarding them their costs and attorneys fees in full.


WOLF, BLOCK, SCHORR and          BIFFERATO GENTILOTTI, LLC
    SOLIS-COHEN LLP


/s/ Shawn P. Tucker                              /s/ Chase Brockstedt
Shawn P. Tucker (#3326)          Chase Brockstedt (#3815)
Todd C. Schiltz (#3253)          119 East 3d Street
1100 North Market Street, Suite 1001          P.O. Box 90
Wilmington, DE 19801          Lewes, DE 19958
(302) 777-0312          (302) 644-0302

Attorneys for plaintiff          Attorneys for plaintiffs
Citizens for Rehoboth Beach          Robert Sokolove and David
          McCarthy

November 16, 2007