**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| ROBERT SOKOLOVE, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 05-514-KAJ |
| | ) | |
| CITY OF REHOBOTH BEACH, | ) | |
| DELAWARE, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**COMPENDIUM OF EXHIBITS SUBMITTED IN SUPPORT
OF PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR COSTS AND ATTORNEYS' FEES**

WOLF, BLOCK, SCHORR and                    BIFFERATO GENTILOTTI, LLC
SOLIS-COHEN LLP


Todd C. Schiltz (#3253)                     Chase Brockstedt (#3815)
Shawn P. Tucker (#3326)                     119 East 3rd Street
1100 North Market Street, Suite 1001        P.O. Box 90
Wilmington, Delaware 19801                  Lewes, Delaware 19958
(302) 777-0312                              (302) 644-0302

*Attorneys for plaintiff*                    *Attorneys for plaintiffs*
*Citizens for Rehoboth Beach*                *Robert Sokolove, David*
                                             *McCarthy and William Shields*


November 16, 2007

# EXHIBIT 49

FILED
CLERK U.S. DISTRICT COURT
DISTRICT OF DELAWARE

# UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

2005 JUL 21  PM 3: 11

ROBERT SOKOLOVE, DAVID MCCARTHY,  )
WILLIAM SHIELDS, and CITIZENS FOR  )
REHOBOTH BEACH, a political action committee,)
                                   )
            Plaintiffs,            )
                                   )
    v.                             )       Case No.
                                   )
CITY OF REHOBOTH BEACH, DELAWARE,  )       0 5 - 5 1 4
and GREGORY FERRESE, individually and as  )
Manager of the City of Rehoboth Beach, Delaware, )
                                   )
            Defendants.            )

## VERIFIED COMPLAINT

Plaintiffs Robert Sokolove, David McCarthy and William Shields are candidates for

office in a August 13, 2005, election and bring this action to, among other things, enjoin and

preclude defendants City of Rehoboth Beach and Gregory Ferrese from violating plaintiffs'

constitutional right to free speech by impermissibly removing campaign signs erected by

plaintiffs. Defendants' conduct violates plaintiffs' rights under the First and Fourteenth

Amendments to the Constitution of the United States, the Civil Rights Act of 1971, 42 U.S.C.

§ 1983 and impermissibly seeks to interfere with the August 13 election.

## THE PARTIES

1.    Plaintiff Robert Sokolove is a citizen of the State of Delaware who resides at 4

Norfolk Street, Rehoboth Beach, DE 19971. Mr. Sokolove is a candidate for Mayor of the City

of Rehoboth Beach, Delaware in an August 13, 2005 election.

2.    Plaintiff David McCarthy is a citizen of the State of Delaware who resides at 30 Delaware Avenue, Rehoboth Beach, DE 19971.  Mr. McCarthy is a candidate for City Commissioner in the August 13, 2005 election.

3.    Plaintiff William Shields is a citizen of the State of Delaware who resides at 52 Maryland Avenue, Rehoboth Beach, DE 19971.  Mr. Shields is a candidate for City Commissioner in the August 13, 2005 election.

4.    Plaintiff Citizens for Rehoboth Beach is the political action committee which supports the individual plaintiffs' campaign efforts and other election related issues.

5.    Defendant the City of Rehoboth Beach, Delaware ("City") is a municipal corporation located in Sussex County, Delaware.  The City has scheduled an election for August 13, 2005.

6.    Defendant Gregory Ferrese is the City Manager of Rehoboth Beach, Delaware.

## JURISDICTION AND VENUE

7.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § § 1331, 1343(3), 2201 and 2202.

8.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391.

## DEFENDANTS REMOVE PLAINTIFFS' CAMPAIGN SIGNS

9.    In early July, 2005, the individual plaintiffs and their representatives erected campaign signs in the City.  The signs were approximately 2 feet by 2 feet, notified prospective voters that the individual plaintiffs were running for office with slogans such as "Sokolove for Mayor" and sought the voters' support on election day.  Prior to erecting the signs, plaintiffs'

representatives contacted Mr. Ferrese and were advised that they could place their signs on any public property in the City except in the newly renovated street scape. Mr. Ferrese further advised plaintiffs' representatives that the City would not remove signs from public property. In total, approximately 100 campaign signs were erected in the City.

10.    The campaign signs were placed on the private property of the individual plaintiffs and their supporters as well as on public property and rights-of-way adjacent to streets and sidewalks. The signs erected on public property and rights-of-way were placed near the signs of other candidates in the August 13 election, including Samuel Cooper, the current Mayor of Rehoboth Beach. The City has allowed numerous other signs, including its own convention center sign promoting commercial activities in the center as well as signs for other candidates, commercial establishments, community organizations, and neighborhoods, to be erected and maintained in the public rights-of-way.

11.    On or about the early morning of July 9, 2005, representatives of the City's Building and Licensing department removed a significant number of plaintiffs' campaign signs. Plaintiffs' signs were singled out for removal as other candidates' campaign signs, including those of incumbent Mayor Cooper, and other commercial/community signs which were next to plaintiffs' signs on the public rights-of-way, were not removed by the City's Building and Licensing department.

12.    Within hours of their removal, Joseph Hill, a supporter of the individual plaintiffs and Citizens for Rehoboth Beach, was notified that the removed campaign signs were in a vehicle owned by the City's Building and Licensing department and that the vehicle was parked

at that department's office. He contacted City police to investigate the matter. In relevant part, the investigating officer's report provides:

> On 7/09/05 at approx. 1120 hrs. I was dispatched to the parking lot by the Building and Licensing office in reference to a complaint of political campaign sign placed in the back of a City of Rehoboth Beach vehicle belonging to the Building and Licensing office.
>
> Upon arrival, I contacted Joe Hill. He advised that the signs should not have been picked up. He advised that he had already tried to speak with the city manager, Greg Ferrese; however, he was busy. I advised him that I would speak to Mr. Ferrese about the matter. Hill advised that he was going to take pictures of the signs in the back of the vehicle.
>
> I spoke with Mr. Ferese at approximately 1130 hrs., and he advised that the signs should not have been picked up, and he did not know why they had been. I had taken two Polaroid photos of the signs that were in the back of the vehicle, and Mr. Ferrese held on to them.

(Copy of police report attached as Exhibit A).

13.    Two or three hours after his campaign signs were discovered in a Building and Licensing vehicle, plaintiff Robert Sokolove retrieved his signs and replaced them in the community. Like before, he placed his campaign signs on private property and in the rights-of-way adjacent to streets and sidewalks. Mr. Sokolove placed one of his signs in a flower pot that is owned and maintained by the restaurant he owns and operates in the City.

14.    Before midnight on July 9, 2005, plaintiffs' campaign signs, including the sign in the flower pot in front of Mr. Sokolove's restaurant, had again been removed. Mr. Sokolove's valet parking attendants advised him that an employee of the City's Building and Licensing department had removed the signs. Mr. Sokolove immediately went to the Building and Licensing department where he found A. Walter Onizuk, a department employee, who said that Mr. Ferrese, acting through Dave Murphy, the head of the City's Building and Licensing department, had directed Mr. Onizuk to remove the signs.

## DEFENDANTS APPRAISED PLAINTIFFS THEY COULD BE FINED AND CONFIRM THAT THEY WILL CONTINUE TO REMOVE PLAINTIFFS' CAMPAIGN SIGNS

15.     Following the second removal of their signs, plaintiffs contacted their attorneys about the matter. On July 11, 2005, plaintiffs' counsel wrote the City Manager (with a copy to the City Solicitor) requesting that the photographs of the removed signs taken by the police be returned to the investigation file. On July 13, 2005, having received no confirmation of the return of the photographs and after learning that Mr. Ferrese had ordered City employees to remove all of plaintiffs' campaign signs from public property despite his prior advice to the contrary, plaintiffs' counsel again wrote the City Manager (with a copy to the City Solicitor) asking for an explanation of why plaintiffs' campaign signs were removed and advising defendants that such removal violates the United States Constitution. Counsel's letter requested a response from defendants, but defendants have yet to respond to the July 13, 2005 letter.

16.     Plaintiffs did speak to Officer Scott O'Bier of the City's police department about replacing the twice-removed signs. Officer O'Bier appraised plaintiffs that if they did replace signs in an area the City considered improper, such persons could be fined up to $500.

17.     Prior to commencing this suit, counsel for plaintiffs again contacted the City to determine if the City intended to remove any campaign sign plaintiffs replaced. Counsel for the City indicated that City Ordinance § 74-16 gave the City the right to remove plaintiffs' campaign signs from the public rights-of-way and that if such signs were replaced, they would be removed.

18.     City Ordinance § 74-16 provides that "No person shall, keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city."

19.     On City streets with curbs and sidewalks, the City owns the real property between the curb and the far side of the sidewalk. With respect to City streets without curbs and sidewalks, the City owns the real property extending at least 20 feet back from the edge of the street. Defendants removed several of plaintiffs' campaign signs which had been placed in the City's property while leaving in place other campaign, commercial and community signs erected in the same area.

20.     Historically, the City has not attempted to enforce § 74-16 with respect to campaign signs and has not removed such signs from City property and rights-of-way in the past.

## PLAINTIFFS ARE FACED WITH IRREPARABLE HARM

21.     The election is scheduled to occur on August 13, 2005. An five-term, 15 year tenured, established incumbent currently holds the seat that plaintiff Sokolove hopes to win in the election. An appointee of the Mayor, the Planning Commission Chairman, is one of the candidates the other individual plaintiffs are running against. To establish name recognition and overcome voter bias favoring incumbents, the individual plaintiffs have to make their names known in the community. Given the nature of the offices in dispute, campaign signs are the only economically reasonable and rationale means of gaining name recognition.

22.     If plaintiffs are not permitted to erect their signs and if defendants are not enjoined from removing plaintiffs' campaign signs, plaintiffs will suffer irreparable harm by being precluded from gaining name recognition and exercising their right to Free Speech. A fully informed, knowledgeable electorate is necessary to the proper functioning of a democratic society. To avoid imposing irreparable injury on plaintiffs and to avoid having less than fully

informed and unknowledgeable voters, defendants must be enjoined from any further attempts to remove the plaintiffs' campaign signs.

23.    Plaintiffs have no adequate remedy at law.

## COUNT I
## VIOLATION OF CONSTITUTIONAL RIGHTS

24.    Plaintiffs restate and reallege each of the foregoing paragraphs as if fully set forth herein.

25.    Plaintiffs right to engage in free speech, including the right to erect campaign signs in the City, is protected by the First Amendment to the Constitution of the United States of America.

26.    Defendants are bound by the Fourteenth Amendment to the Constitution of the United States of America to uphold the First Amendment to the Constitution of the United States of America.

27.    Defendants have deprived plaintiffs of their right to engage in free speech by activities including, but not limited to:

(a)    adopting City Ordinance § 74-16, a Constitutionally invalid ordinance which impermissibly restricts plaintiffs' right to engage in free speech;

(b)    removing plaintiffs' campaign signs from private property located within the City;

(c)    removing plaintiffs' campaign signs from public rights-of-way located within the City;

(d)    enforcing City Ordinance § 74-16 in a Constitutionally impermissible and discriminatory manner; and

(e)    threatening plaintiffs with unlawful citation and fines for placing campaign signs in the City.

28.    Plaintiffs have advised defendants that they are violating plaintiffs' rights. Defendants have failed to cease their unlawful conduct and stated their intent to continue to violate plaintiffs' rights.

## COUNT II
## VIOLATION OF 42 U.S.C. § 1983

29.    Plaintiffs restate and reallege each of the foregoing paragraphs as if fully set forth herein.

30.    On information and belief, the City adopted a policy to remove plaintiffs' campaign signs from property located within the City.

31.    Mr. Ferrese acted in his capacity as the manager of the City and instructed employees of the Building and Licensing department to remove plaintiffs' campaign signs.

32.    Plaintiffs' were deprived of their constitutional right to free speech as a result of the City's policy and Mr. Ferrese's implementation thereof.

WHEREFORE, plaintiffs respectfully request that the Court enter an order:

(a)    temporarily, preliminarily and permanently enjoining defendants from unlawfully removing plaintiffs' campaign signs from private property located in the City or from public rights-of-way located in the City;

(b)    temporarily, preliminarily and permanently enjoining defendants from prohibiting, restricting or otherwise restraining plaintiffs from gaining name recognition in connection with the August 13 election;

(c)    requiring defendants to return to plaintiffs any of plaintiffs' campaign signs that defendants removed from any property located within the City;

(d)    awarding plaintiffs damages in an amount to be determined at trial;

(e)    awarding plaintiffs punitive damages in an amount to be determined at trial;

(f)    awarding plaintiffs their attorneys and expert fees and costs; and

(g)    awarding such other relief as the Court deems just and appropriate.

_____
Shawn P. Tucker, Esq. (#3326)
Todd C. Schiltz. Esq. (#3253)
Wolf Block Schorr and Solis-Cohen LLP
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312
Attorneys for Plaintiffs

## VERIFICATION

I, Robert Sokolove, having been duly sworn according to law, verify that I have reviewed the attached Verified Complaint and that the facts set forth in the Verified Complaint are true and correct to the best of my knowledge, information and belief.

_____
Robert Sokolove

Sworn and Subscribed before me
this 21st day of July, 2005

_____
Notary Public

**MARY ANN SOCKRITER**
**Notary Public - State of Delaware**
**My Comm. Expires Feb. 13, 2006**

# EXHIBIT 50

UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT SOKOLOVE, DAVID MCCARTHY, WILLIAM SHIELDS, and CITIZENS FOR REHOBOTH BEACH, a political action committee, | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CITY OF REHOBOTH BEACH, DELAWARE, and GREGORY FERRESE, individually and as Manager of the City of Rehoboth Beach, Delaware, | ) ) ) ) |
| Defendants. | ) ) |

Case No.

05 - 514

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

The facts supporting plaintiffs' motion are set forth in the Verified Complaint filed contemporaneously herewith and in the affidavits attached hereto as Exhibits 1, 2, 3 and 4. In sum:

- The City of Rehoboth, Delaware ("City") has scheduled a municipal election for August 13, 2005 and the individual plaintiffs are running for Mayor and two City Commissioner seats. (Verified Comp. ¶ 1, 2, 3, 5).

- To gain name recognition, the plaintiffs decided to erect campaign signs. (Verified Comp. ¶ 9, 21).

- Gregory Ferrese, the City Manager, advised representatives of plaintiffs that they could erect political campaign signs on all public property in the City except for areas where there had been recent plantings. (Verified Comp. ¶ 9; Cargnino Aff. ¶ 7).

- Mr. Ferrese further advised plaintiffs' representatives that the City would not remove campaign signs posted in public areas. (Cargnino Aff. ¶ 6).

- Relying on these representations, plaintiffs erected approximately 100 campaign signs in the City. The signs were placed on private and public property. (Verified Comp. ¶ 9).

- Within hours of erecting the signs, City employees removed many of plaintiffs' campaign signs from private and public property. Plaintiffs campaign signs were the only signs removed. Campaign signs for other candidates, including each of the plaintiffs' opponents, as well as many other commercial and community signs were not removed by the City. (Verified Comp. ¶ 9-12; Hill Aff. ¶ 5, Exs. A - R).

- Shortly after their removal, the signs were located in a City owned vehicle. The police officer investigating the removal spoke to Mr. Ferrese and was advised that the campaign signs should not have been removed by the City. (Verified Comp. ¶ 13-14).

- Plaintiffs immediately replaced some of their campaign signs. Within hours of this replacement, the City had again removed plaintiffs' campaign signs from public property. Again, the campaign signs of other candidates and other general commercial signs were not removed from public property. (Verified Comp. ¶ 13-14; Hill Aff. ¶ 5, Exs. A - R).

- When plaintiffs asked the City employee who told him to remove the signs, plaintiffs were advised that Mr. Ferrese had given the instruction. (Verified Comp. ¶ 14).

- The August 13 election is just days away. The City has advised plaintiffs that any campaign signs they erect on public property will be removed. (Verified Comp. ¶ 17).

Defendants rely on a constitutionally invalid City ordinance and their discriminatory enforcement thereof as support for their contention that the City can remove plaintiffs' campaign signs. As set forth below, such reliance is misplaced and a temporary restraining order must issue to stop any further violations of plaintiffs' constitutional rights.

## I.    The Applicable Standard

A district court must consider four factors when ruling on a motion for temporary injunctive relief: (1) the likelihood that the applicant will prevail on the merits; (2) the extent of irreparable injury to the applicant as a result of the conduct complained of; (3) the extent of irreparable harm to the defendant if temporary injunctive relief is granted; and (4) the public interest.  Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578, 586 (3d Cir. 2002).  Here, each factor weighs in favor of granting the requested relief.

## II.    City Ordinance § 74-16 Is Facially Invalid And Has Been Applied In An Unconstitutional Manner

City Ordinance § 74-16 ("Ordinance") provides that "No person shall, keep, maintain or post any private advertisement, poster or sign upon or on any beach or strand or public boardwalk, park, sidewalk, street or other public property or way within the limits of the city." Defendants contend the Ordinance permits them to remove plaintiffs' campaign signs. Defendants are incorrect.

### A.    Freedom Of Speech

The First Amendment provides: "Congress shall make no law . . . abridging the freedom of speech, or of the press . . . ." U.S. Const. amend. I. "[S]igns are a form of expression protected by the Free Speech Clause . . . . " City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994).

Pursuant to the Fourteenth Amendment, city ordinances are subject to the First Amendment's limitation on governmental authority. Lovell v. Griffin, 303 U.S. 444, 450 (1938).

Notwithstanding the foregoing, cities can adopt ordinances regulating the exercise of speech. When a city exercises this authority, the issue becomes whether the ordinance is constitutional. The constitutional analysis of a free speech restriction begins with a determination of whether the ordinance is content-neutral or content-based. Rappa v. New Castle County, 18 F.3d 1043, 1053 (3d Cir. 1994).

**B.    The Ordinance Is Content-Based**

An ordinance is content-neutral if its language does not permit one party's views to be preferred at the expense of another's. White House Vigil for the ERA Comm. v. Clark, 746 F.2d 1518, 1527 (D.C. Cir. 1984). Thus, if an ordinance differentiates between speakers for reasons unrelated to why it was adopted, the ordinance is content-based. Whitton v. City of Gladstone, 54 F.3d 1400, 1407 (8th Cir. 1995).

The Ordinance is content based as it differentiates between speakers and permits one party's views to be expressed at the expense of another. Specifically, the Ordinance precludes "private" advertisements, posters or signs on public property or rights-of-way within the City while implicitly permitting public - i.e., governmental - advertisements, posters and signs. Thus, while the City is free to erect whatever sign it may desire on public property and rights-of-way -

e.g., "Rehoboth - Where Good Government Reigns" - private citizens have no such right.[1]

Favoring governmental speech over private speech in this manner renders the Ordinance a

content-based regulation.  City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 429

(1993) (ordinance which prohibited distribution of commercial handbills (materials distributed

by one type of speaker) but permitted distribution of newspapers (materials distributed by a

different type of speaker) was content-based); Metromedia, Inc. v. City of San Diego, 453 U.S.

490, 513-17 (1981) (ordinance which afforded purveyors of commercial speech a greater degree

of protection than purveyors of non-commercial speech was a content-based restriction).

### C.    The Ordinance Neither Serves A Compelling Interest Nor Is It Narrowly Drawn

When, as in this case, an ordinance is content-based, a city is required to show that the

ordinance is necessary to serve a compelling interest and that it is narrowly drawn to achieve that

end.  Rappa, 18 F.3d at 1053.  Content-based restrictions are presumptively invalid and,

accordingly, courts apply the strictest scrutiny when determining whether this test has been met.

R.A.V. v. City of St. Paul, Minnesota, 505 U.S. 377, 382 (1992) ("Content based restrictions are

presumptively invalid"); Ward v. Rock Against Racism, 491 U.S. 781, 798 n. 6 (1989) ("content

based restrictions on political speech 'must be subject to the most exacting scrutiny'") (citation

---

[1]    The City has placed its own signs and advertisements, some of which are simply commercial in nature, throughout the City.  (Hill Aff. Ex. G (City sign located in middle of Rehoboth Avenue advertising City Convention Center and upcoming event at the center).  The City clearly does not believe the Ordinance limits its ability to erect signs and advertisements.

omitted); Burson v. Freeman, 504 U.S. 191, 211 (1992) ("it is the rare case . . . in which a law survives strict scrutiny").

## 1.    The Ordinance Does Not Serve A Compelling Purpose

The Ordinance precludes private speech while at the same time permitting governmental speech, a standard which contravenes the First Amendment's fundamental objective of ensuring that government does not enact laws which preclude private citizens from speaking out against the government.  There is no interest, let alone a compelling interest, which justifies such a scheme.

The City likely will contend that it has an interest in managing traffic and maintaining its aesthetic quality and that the Ordinance was adopted to meet these objectives.  Interests of this nature do not meet the compelling interest standard.  Whitton, 54 F.3d at 1408 ("a municipality's asserted interests in traffic safety and aesthetics, while significant, have never been held to be compelling").  Moreover, if the City was truly interested in such objectives, then it should have adopted an ordinance which precludes all signs - both private and public - from City property and rights-of-way and would not have chosen to place its own signs in such areas.  Lawson v. City of Kankakee, 81 F. Supp.2d 930, 934 (C.D.Ill. 2000) ("If the City were so worried that signs on terraces looked bad, it would not have chosen to place a sign there itself").  The City has neither adopted an all encompassing ordinance nor acted in a manner which demonstrates it has an interest in promoting these ideals.  (Hill Aff. ¶ 5, Exs. A – R).  Rather, the City has determined what it considers to be acceptable or appropriate signage and then now seeks to exclude the rest. The City has no interest which justifies this content-based approach.

### 2.    The Ordinance Is Not Narrowly Tailored

If, as the City is likely to contend, it adopted the Ordinance out of concerns regarding traffic and aesthetics, the Ordinance is in no manner narrowly tailored. Instead of addressing the concern with a fine stroke - e.g., limiting the size or number of signs, requiring that they be made from certain materials, designs or colors, requiring the removal of signs if they fall into disrepair, etc. - the Ordinance paints with a broad brush - prohibiting any private citizen from erecting any sign at all. Such an approach renders the Ordinance unconstitutional.[2]

### D.    The Ordinance Has Been Enforced In A Discriminatory Fashion

Assuming, arguendo, that the Ordinance is not a facially unconstitutional content-based restriction on speech, defendants still must be enjoined because the Ordinance has been applied in a discriminatory fashion.

The City removed plaintiffs' campaign signs from private and public property located within the City. The City removed these signs notwithstanding the fact Mr. Ferrese advised

---

[2]    Defendants most likely will contend that Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789 (1984) where the Supreme Court held that an ordinance prohibiting the posting of signs on public property was not unconstitutional controls this case. Defendants are incorrect. The ordinance in Vincent precluded anyone from erecting signs on certain public property whereas the Ordinance only restricts the activities of "private" parties. This distinction is meaningful as it renders the Ordinance content-based, whereas the ordinance in Vincent was content neutral. 466 U.S. at 804 ("The text of the ordinance is neutral . . . ."). Moreover, unlike in Vincent where the ordinance at issue was applied in an even handed manner, id., the City has selectively enforced the Ordinance just against plaintiffs.

plaintiffs' representatives that they could erect signs on virtually any City property and that such signs would not be removed. (Verified Comp. ¶ 9; Cargnino Aff. ¶ 6, 7). The removal of plaintiffs' campaign signs is even more surprising given that historically the City has not enforced the Ordinance. As set forth in the affidavit of Joseph Hill, the City did not remove his campaign signs in 2002 even though he erected such signs on public property and, except for one occasion, the City has never removed any of the thousands of realty signs Mr. Hill has erected on public property over the past forty years. (Hill Aff. ¶ 3, 4).

While the foregoing facts render the City's recent, selective enforcement of the Ordinance unconstitutional, the record demonstrates the City has engaged in even worse selective enforcement of the Ordinance. Specifically, while plaintiffs' campaign signs were removed from public property, other signs which violate the Ordinance were left standing. Examples include: (i) the campaign signs of incumbent Mayor Cooper, plaintiff Sokolove's opponent in the upcoming election; (ii) campaign signs of other candidates supported by the current City administration; (iii) commercial signs advertising, among other things, real property for sale, work performed by contractors and the City's own convention center; (iv) promotional signs for various community organizations; and (v) signs identifying the names of various neighborhoods within the City. (Hill Aff. ¶ 5, Exs. A - R). All of these signs violate the Ordinance yet none were removed by the City. (Hill Aff. ¶ 5, 6, Exs. A - R). Selective enforcement of this nature is not constitutional. Lawson, 81 F. Supp. 2d at 935-36 (city engaged in unconstitutional selective enforcement of ordinance when it removed plaintiff's sign from public property but left standing signs of realtors and churches located in same area).

### III.    Plaintiffs Are Suffering Irreparable Harm

Plaintiffs have lost their First Amendment right to disseminate their campaign signs. This loss constitutes irreparable injury. <u>Elrod v. Burns</u>, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").  Plaintiffs' irreparable harm is only heightened by the fact the August 13 election is just days away and, thus, the City's conduct has prevented the plaintiffs from carrying out their campaign strategies.

### IV.    Defendants Will Suffer No Irreparable Harm If Injunctive Relief Is Granted

Plaintiffs temporary restraining order seeks to preclude defendants from removing plaintiffs' campaign signs from private and public property within the City.  Precluding defendants from engaging in such activity will not impose any harm, let alone any irreparable harm, on defendants.

### V.    The Public Interest Weighs In Favor Of An Injunction

The electorate has an interest in being fully informed and knowledgeable about candidates for office.  See <u>Eu v. San Francisco County Democratic Central Committee</u>, 489 U.S. 214, 228 (1989) ("State has a legitimate interest in fostering an informed electorate").  Unless the defendants are enjoined, the electorate may not have an opportunity to know the individual plaintiffs are running for office, let alone what their positions are on the pertinent issues.

The public also has an interest is seeing that constitutional violations are remedied.  <u>Doe v. Miller</u>, 216 F.R.D. 462, 471 (S.D. Iowa 2003) ("it is always in the public interest to prevent a violation of a party's constitutional rights") (citations omitted).  Plaintiffs have been denied their

right to engage in free speech and unless defendants are enjoined, plaintiffs' circumstances will not change.

## Conclusion

Plaintiffs have a reasonable likelihood of success on their claim the Ordinance is unconstitutional on its face and as applied to plaintiffs. Plaintiffs are suffering and will continue to suffer irreparable harm if a temporary restraining order is not issued. Defendants will suffer no irreparable harm is a restraining order does issue. The public interest weighs in favor of an injunction.

For the foregoing reasons, plaintiffs respectfully request that the Court enter an Order in the form attached hereto as Exhibit 5 temporarily restraining defendants from removing plaintiffs' campaign signs from private property, public property or public rights-of-way located within the City.

Shawn P. Tucker, Esq. (#3326)
Todd C. Schiltz. Esq. (#3253)
Wolf Block Schorr and Solis-Cohen LLP
1100 North Market Street, Suite 1001
Wilmington, DE 19801
(302) 777-0312
Attorneys for Plaintiffs

July 21, 2005

# EXHIBIT 51

1          IN THE UNITED STATES DISTRICT COURT

2          IN AND FOR THE DISTRICT OF DELAWARE

3                       - - -

4   ROBERT SOKOLOVE, DAVID McCARTHY,:     CIVIL ACTION
    WILLIAM SHIELDS, and CITIZENS    :
5   FOR REHOBOTH BEACH, a political :
    action subcommittee,             :
6                                    :
7              Plaintiffs,           :
                                     :
8          v                         :
                                     :
9   CITY OF REHOBOTH BEACH, and      :
    GREGORY FERESE, an individual    :
10  and as Manager of the City of    :
    Rehoboth Beach, Delaware,        :
11                                   :
               Defendants.           .   NO.  05-514  (KAJ)
12                      - - -

13                  Wilmington, Delaware
              Tuesday, July 26, 2005 at 10:00 a.m.
14              PRELIMINARY INJUNCTION HEARING

15                       - - -

16  BEFORE:      HONORABLE KENT A. JORDAN, U.S.D.C.J.

17                       - - -

18  APPEARANCES:

19          WOLF BLOCK SCHORR and SOLIS-COHEN, LLP
            BY:  TODD C. SCHILTZ, ESQ., and
20               SHAWN P. TUCKER, ESQ.

21               Counsel for Plaintiffs

22          OBERLY, JENNINGS & RHODUNDA, P.A.
            BY:  WILLIAM J. RHODUNDA, JR., ESQ.
23
                     and
24

25                       Brian P. Gaffigan
                         Registered Merit Reporter

1        THE COURT:  Okay.  Let's go ahead and have your

2   argument.  And I apologize right now if, for any reason, we

3   don't go through this, I may require you to stay and we come

4   back after I have my 2:30 proceeding, but I'm hoping that we

5   can get through.  We'll see.  Go ahead.

6        MR. SCHILTZ:  Your Honor, our application in our

7   oral argument we think is relatively short.  It follows the

8   legal memorandum we submitted at the outset of the case.

9   There are two arguments that we're going to make.  The first

10  is that the City Ordinance Section 74-16 is unconstitutional

11  on its face and, secondly, that it's been enforced in a

12  selective and discriminatory manner.

13        THE COURT:  As to the first point, let's hit

14  that.  You tell me, which is the one you think you pin most

15  of your hope on, if you had to rank them?

16        MR. SCHILTZ:  Your Honor, I'll be honest.  I

17  think the unconstitutional on its face argument is a very

18  strong argument.  The other argument is very strong as well.

19  The only issue is whether or not there has been some record

20  created that might dispute whether it's been selectively

21  enforced.

22        THE COURT:  Okay.  As to the unconstitutional on

23  its face argument, your opponent cites me to City of Los

24  Angeles vs. Taxpayers for Vincent, where, for aesthetic

25  purposes, the City ordinance banning bills on poles was